DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
MOLLY M. LENS (S.B. #283867)
mlens@omm.com
KRISTIN MACDONNELL (S.B. #307124)
kmacdonnell@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

JONATHAN D. HACKER (*pro hac vice*)
jhacker@omm.com
JOSHUA REVESZ (*pro hac vice*)
jrevesz@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorneys for Defendants*
*The Walt Disney Company, Lucasfilm Ltd.*
*LLC, and Huckleberry Industries (US) Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARANO,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, LUCASFILM LTD. LLC, and HUCKLEBERRY INDUSTRIES (US) INC.,<br><br>Defendants. | Case No. 2:24-cv-01009-SPG-SK<br><br>**DEFENDANTS THE WALT DISNEY COMPANY, LUCASFILM LTD. LLC, AND HUCKLEBERRY INDUSTRIES (US) INC.'S NOTICE OF MOTION AND MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND STAY OF PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 25, 2024<br>Time: 1:30 p.m.<br>Judge: Hon. Sherilyn Peace Garnett<br>Courtroom: 5C |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 25, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5C of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, Defendants The Walt Disney Company, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc. (collectively "Disney"), by and through their counsel, will and hereby do move this Court, pursuant to 28 U.S.C. § 1292(b), for an order certifying the Court's Order Denying Defendants' Motion To Dismiss (ECF No. 45) ("Order") for interlocutory appeal. Disney also moves the Court for a stay of proceedings pending consideration of its interlocutory appeal.

Disney makes this motion on the grounds that the Court's Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. In particular, the Court's Order decides fundamental First Amendment questions in a manner that conflicts or is in tension with decisions of other courts and that, if reversed on appeal, would narrow or resolve the remaining questions in this litigation. And a stay pending appeal would preserve the Court's and parties' resources from intrusive and needless discovery.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 16, 2024, when the parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other evidence and argument as may be properly received by the Court.

1

2

Dated: August 23, 2024

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**O'MELVENY & MYERS LLP**

By:  */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli
dpetrocelli@omm.com

*Attorney for Defendants The Walt Disney Company, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc.*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ............................................................................................................ 1

QUESTION TO BE CERTIFIED FOR APPEAL ..................................................... 2

ARGUMENT ............................................................................................................... 2

    I.    The Order Involves A Controlling Question Of Law ............................ 3

    II.    There is Substantial Ground for a Difference of Opinion .................... 3

        A.    Reasonable Jurists Could Conclude That The *Dale* Deference
            Standard Applies At The Pleading Stage ..................................... 5

        B.    Reasonable Jurists Could Conclude That The First Amendment
            Protects An Artistic Entity's Right To Consider An Actor's
            Public  "Off-The-Job" Speech In Making Casting Decisions ..... 7

        C.    Reasonable Jurists Could Reject The Order's Proposed
            Distinction Between State Control Over Speech Through
            Injunctive Relief And State Control Over Speech Through
            Monetary Liability ....................................................................... 9

        D.    Reasonable Jurists Could Conclude That First Amendment
            Protections For Expressive Entities Apply With Equal Force In
            The Employment Context .......................................................... 10

    III.    Appellate Review—And A Stay of Proceedings—would Materially
        Advance the Ultimate Termination of the Litigation .......................... 12

CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023) ...............................................................................4, 12

*Americans for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2012) .....................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................7

*Asis Internet Servs. v. Active Response Grp.*,
  2008 WL 4279695 (N.D. Cal. Sept. 16, 2008)...........................................15

*Beneker v. CBS Studios, Inc.*,
  No. 2:24-cv-1659-JFW-SSC (C.D. Cal. Aug. 14, 2024) ......................................4

*Boy Scouts of America v. Dale*,
  530 U.S. 640 (2000) .............................................................................*passim*

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992) .......................................................................................9

*Claybrooks v. American Broad. Cos.*,
  898 F. Supp. 2d 986 (M.D. Tenn. 2012) .........................................................4, 10

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010)...........................................................................3

*Green v. Miss United States of America*,
  52 F.4th 773 (9th Cir. 2022)...................................................................*passim*

*Green v. Miss United States of America, LLC*,
  533 F. Supp. 3d 978 (D. Or. 2021), *aff'd*, 52 F.4th 773 (9th Cir.
  2022)...............................................................................................................6

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
  515 U.S. 557 (1995) ...............................................................................10, 14

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022)........................................................................12

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
  625 F. Supp. 3d 971 (N.D. Cal. 2022)...........................................................13

Page(s)

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1982) ..................................................................3, 4, 12

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
  966 F. Supp. 2d 1031 (C.D. Cal. 2013) ................................................................12

*Moody v. NetChoice, LLC*,
  144 S. Ct. 2383 (2024) ........................................................................................4

*Moore v. Hadestown Broadway LLC*,
  __ F. Supp. 3d __, 2024 WL 989843 (S.D.N.Y. Mar. 7, 2024) .....................4, 10

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) .............................................................................................9

*Omni MedSci, Inc. v. Apple Inc.*,
  2020 WL 759514 (N.D. Cal. Feb. 14, 2020) ........................................................3

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) ...........................................................................15

*Plaskett v. Wormuth*,
  18 F.4th 1072 (9th Cir. 2021) ..............................................................................3

*Redgrave v. Boston Symphony Orchestra, Inc.*,
  855 F.2d 888 (1st Cir. 1988) ...........................................................................7, 8

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ...............................................................................4

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ...........................................................................................12

*Rowell v. Sony Pictures Television, Inc.*,
  2016 WL 10644537 (C.D. Cal. June 24, 2016) .....................................................4

*San Diego Bldg. Trades Council v. Garmon*,
  359 U.S. 236 (1959) .............................................................................................9

*Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*,
  2021 WL 945237 (C.D. Cal. Feb. 22, 2021) ......................................................15

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019) ................................................................11

*United States v. Adam Bros. Farming, Inc.*,
    369 F. Supp. 2d 1180 (C.D. Cal. 2004) ............................................. 13

**Statutes**

28 U.S.C. § 1292(b) .......................................................................*passim*

42 U.S.C. § 1981 .............................................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants The Walt Disney Company and its affiliates Lucasfilm Ltd. LLC and Huckleberry Industries (US) Inc. (collectively "Disney") respectfully submit this Memorandum of Points and Authorities in support of their Motion To Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and for a Stay of Proceedings.

### INTRODUCTION

The Ninth Circuit has "emphasized the importance of resolving First Amendment cases at the earliest possible junction." *Green v. Miss United States of America*, 52 F.4th 773, 800 (9th Cir. 2022). Consistent with that command, Disney respectfully requests that this Court certify for interlocutory appeal its Order denying Disney's motion to dismiss, so that the Ninth Circuit may "decid[e] a dispositive First Amendment issue that" could "avoid forcing the parties through unnecessary and protracted litigation." *Id.*

The requirements for interlocutory appeal under 28 U.S.C. § 1292(b) are readily satisfied here. The Court's Order denying Disney's motion to dismiss decides a "question of law"—whether the First Amendment protects Disney's right to choose who will express its artistic messages—that is "controlling of this litigation." Indeed, if the First Amendment applies at all, it protects not only against "unconstitutional" *liability*, but also against the burdens of "unnecessary litigation," which itself "chills speech." *Green*, 52 F.4th at 800 (emphasis omitted). In addition to ruling that Disney has no threshold, pleading-stage First Amendment defense against damages liability for its casting choices, the Court's Order resolves multiple related legal questions that are themselves of controlling significance in this case. Among those questions are: (1) whether a court must defer—including at the pleading stage—to an expressive entity's concern that associating its art with speech it deems offensive would impair its own expression; (2) whether an artistic entity has the right to consider an actor's "off-the-job political speech" when making casting decisions; (3) whether the First Amendment prohibits the use of state

power to control private speech through equitable relief, but allows the use of state power to control private speech through monetary liability; and (4) whether the First Amendment protections identified in cases like *Green* apply differently in the employment context.  And each of those questions presents reasonable grounds for disagreement, as shown by the conflicting approaches taken by jurists throughout the country on the issues.

Finally, resolving these threshold legal disputes would materially advance the ultimate termination of the litigation.  If the Ninth Circuit agrees that the First Amendment protects Disney's right to control its own casting decisions, that determination likely would compel dismissal of the complaint.  At a minimum, a Ninth Circuit decision addressing the issues identified above would clarify the scope of Disney's First Amendment rights and narrow the issues in dispute.  A threshold ruling by the Ninth Circuit also would obviate or minimize the discovery disputes Carano clearly intends to provoke through highly intrusive discovery demands for information—including from third-party employees and individuals—that is protected from government intrusion by the First Amendment.  It would therefore conserve judicial resources to permit an interlocutory appeal now (and to stay proceedings pending that appeal) so that Disney's threshold First Amendment defense can be resolved.

## QUESTION TO BE CERTIFIED FOR APPEAL

Whether the First Amendment right to free speech protects an artistic entity's right to control its own casting decisions by declining to express its art through actors who make widely-publicized statements that the entity deems offensive and harmful to its own artistic expression.

## ARGUMENT

Section 1292(b) "provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th

Cir. 1982).  Immediate appeal is appropriate under § 1292(b) if (1) the order presents "a controlling question of law" that (2) involves "substantial grounds for difference of opinion," where (3) "an immediate appeal may materially advance the ultimate termination of the litigation." *Id.* at 1026.

## I.    THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW

The Court's Order denying Disney's motion to dismiss presents a "question of law" that is "controlling" of this action.  "The adequacy of [Plaintiff's] claims under" Federal Rule of Civil Procedure 12(b)(6) "raises a question of law." *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021).  And "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.  The Court's Order easily satisfies that standard:  If Disney is correct that its First Amendment right to free speech provides an absolute threshold defense to this suit, then "reversal" of the Court's Order would "terminate the litigation." *Id.*; *see, e.g.*, *Omni MedSci, Inc. v. Apple Inc.*, 2020 WL 759514, at *1 (N.D. Cal. Feb. 14, 2020) (internal quotation marks omitted) ("[I]f the appellant's success on appeal would result in dismissal of the case, as is the case here, the appeal involves a 'controlling question of law.'").  At a minimum, resolution of the legal questions would likely affect the outcome by narrowing and clarifying the issues in dispute, as shown below. *See infra* at 12-13.

## II.    THERE IS SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  Courts find a substantial ground for difference of opinion when the "appeal 'involves an issue over which reasonable judges might differ.'" *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1028).

MEMORANDUM OF POINTS AND AUTHORITIES
2:24-CV-01009-SPG-SK

As the Court's Order makes very clear, this case presents fundamental constitutional questions in an area where the Supreme Court and Ninth Circuit are regularly issuing new precedents. *See* Order 12, 21-22 (discussing *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024); *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023); *Green*, 52 F.4th at 777). And, as the Order also recognizes, district courts across the country likewise have addressed numerous important cases that, like this one, involve an expressive entity seeking to assert the First Amendment as a defense to a generally applicable law invoked to challenge the entity's expressive choices. *See id.* at 17-19 (discussing *Moore v. Hadestown Broadway LLC*, __ F. Supp. 3d __, 2024 WL 989843 (S.D.N.Y. Mar. 7, 2024); *Rowell v. Sony Pictures Television, Inc.*, 2016 WL 10644537 (C.D. Cal. June 24, 2016); *Claybrooks v. American Broad. Cos.*, 898 F. Supp. 2d 986, 990 (M.D. Tenn. 2012)).[1]

Reasonable jurists could disagree on how these various precedents apply to the case at hand. As the Court's Order acknowledges, the basic framework of this case parallels other matters. Disney is indisputably an expressive entity. *See* Order 16. Disney accordingly asserts "a right of control over casting decisions" central to its artistic expression that would protect such decisions against damages liability imposed by the state. *Id.* at 16-17. This Court, like the court in *Rowell*, held that the expressive entity had no such right of control. The courts in *Claybrooks* and *Moore* reached the opposite conclusion.

These differing outcomes turn on fundamental legal questions, not just on the allegations in the specific cases. In particular, reasonable jurists could disagree with four critical aspects of the Order's legal analysis.

---

[1] Indeed, since the Court's Order was issued, another court in this District has ruled on a similar issue, but without any analysis, simply citing this Court's Order. *See Beneker v. CBS Studios, Inc.*, No. 2:24-cv-1659-JFW-SSC (C.D. Cal. Aug. 14, 2024) (ECF No. 60).

### A.    Reasonable Jurists Could Conclude That The *Dale* Deference Standard Applies At The Pleading Stage

To start, reasonable jurists could disagree with the Order's ruling that, at the pleading stage, courts are *not* required to "defer to Defendants' interpretation of whether their message would be impaired by its association with certain other speakers." Order 14-15 (internal quotation marks omitted); *see id.* at 17 n.6. According to the Order, deference to an artistic entity's judgment about how best to express its own message "is not the proper standard at a motion to dismiss stage." *Id.* at 15. But reasonable jurists could easily reach the opposition conclusion under *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000). In *Dale*, the Supreme Court stated *categorically*—without reference to the stage of the proceedings—that under the First Amendment courts must "give deference to an association's assertions regarding the nature of its expression," and also must "give deference to an association's view of what would impair its expression." *Id.* at 653.

Judge VanDyke's concurring opinion in *Green* confirms that reasonable jurists could conclude, contrary to this Court's ruling, that *Dale*'s deference standard applies to the entirety of a lawsuit, including the pleading stage. The proceeding in *Green* began as a motion to dismiss and was converted to summary judgment on only a limited issue of no relevance here. *See* 52 F.4th at 779 (majority opinion). For purposes of the First Amendment defense, only the complaint's allegations were relevant in *Green*. And in explaining why the case should not proceed, Judge VanDyke's concurring opinion expressly invoked *Dale*'s deference standard. *See* 52 F.4th at 805. His opinion thus makes clear that the deference standard applies at all stages of the litigation. His approach is confirmed by the district court decision affirmed in *Green*, which held that liability would impair the beauty pageant's expression based *not* on a developed summary judgment record of undisputed facts, but in reliance on the pageant's own motion to dismiss describing the pageant's

concerns with disruption of its message. *See Green v. Miss United States of America, LLC*, 533 F. Supp. 3d 978, 997 (D. Or. 2021), *aff'd*, 52 F.4th 773.

If the Ninth Circuit agrees with Judge VanDyke's analysis, the outcome in this case would be reversed. In Disney's view, casting decisions—especially for significant roles—are fundamental to its artistic expression, which is impaired when those decisions become associated with messages Disney does not want its art to convey. But rather than deferring to Disney's own views of how to control and express its own art, this Court credited *Carano's* speculation that Disney lacked any valid concerns about its artistic expression and acted only "to divert attention from criticisms of Defendants' business dealings and of Disney's CEO." Order 14 (citing Compl. ¶¶ 97-98). Notably, Carano herself did not even invoke that passing assertion in her complaint in opposing Disney's motion to dismiss. Even more significant, a court applying *Dale*'s deference standard would not credit Carano's speculative claims about Disney's interests over Disney's own stated concerns about protecting its artistic values. That is, if *Dale*'s deference standard applied, a court could not second-guess the statements—which Carano herself emphasizes in her complaint—that Disney declined to express its art through Carano because "she didn't align with Company values" of "respect," "decency," "integrity," and "inclusion." Compl. ¶ 34; *see id.* ¶ 31 (similar).[2] A court applying the *Dale* deference standard would instead credit Disney's stated concerns about its own artistic expressions. *See* 530 U.S. at 651.

This analysis, a reasonable jurist could hold, is consistent with the general rules that govern affirmative defenses at the motion-to-dismiss stage. Where—as in *Moore*, and as here—the complaint itself emphasizes the employer's speech-related

---

[2] For similar reasons, under the *Dale* deference rule, a court could not reject Disney's asserted interest in casting "public-facing actors for the purpose of promoting" these core values. Order 14.

concerns, a reasonable jurist could find that *Dale* requires deferring to those concerns, rather than crediting a plaintiff's contrary speculation.  Even outside the free speech context, a court is not required to accept the plaintiff's preferred inference at the pleading stage when the complaint itself sets forth "more likely explanations." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  Applying the *Dale* deference rule is simply an application of that holding.  A reasonable judge thus could conclude that even if a First Amendment free-speech defense applies "only when the plaintiff pleads itself out of court by admitting all the ingredients of an impenetrable defense," Order 8 (alterations adopted and internal quotation marks omitted), Carano's complaint on its face triggers the *Dale* deference standard, requiring dismissal of the case.

### B. Reasonable Jurists Could Conclude That The First Amendment Protects An Artistic Entity's Right To Consider An Actor's Public "Off-The-Job" Speech In Making Casting Decisions

Reasonable jurists also could disagree with the Order's holding that the First Amendment does not confer on expressive entities the right to dissociate with performers based on their "off-the-job political speech." Order 19.  The Court's Order concluded that, "in contrast to *Claybrooks* and *Moore*," Disney cannot invoke the First Amendment's free speech protections because Carano's complaint does not implicate "the message or content of *The Mandalorian*." *Id.*  But it plainly does. As *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888 (1st Cir. 1988), well illustrates, the message of any performative art cannot be decoupled from its major performers—a principle even more salient today, when so many performers develop their own strong public personalities through extensive online activity. The Court's contrary ruling misconstrues both scope of artistic expression and the First Amendment's limitations on state interference with such expression—or so a reasonable jurist could conclude.

The tension between the Court's order and the en banc First Circuit's discussion of the First Amendment interests in *Redgrave* underscores the reasonableness

MEMORANDUM OF POINTS AND AUTHORITIES
2:24-CV-01009-SPG-SK

of disagreement with this Court's analysis.  According to the *Redgrave* court, the Boston Symphony Orchestra likely had the right to dissociate from Vanessa Redgrave after her controversial off-the-job political speech created the risk that the orchestra's performance would "be compromised or ineffective." *Id.* at 905.  Nowhere did the court compare Redgrave's statements with the orchestra's "message" to determine whether it had a protected interest in choosing not to perform its music through her.  It is true that *Redgrave* is not binding.  Order 20.  But the principle it espouses is universal.  Were it not, and the First Amendment thus applied only when a performer's off-the-job statements connect directly to some specific message in the performance, then musical and theatrical companies could be required to perform their art even through directors or major actors who routinely engage in widely-publicized racist, misogynistic, homophobic, or anti-Semitic rants.  *Redgrave* simply recognizes that while such offensive statements may be protected by the First Amendment from punishment by the state, an expressive entity has its own First Amendment right to shield its expression from association with messages it deems offensive.

The Supreme Court in *Dale* recognized the same point.  The expressive entity there—the Boy Scouts—revoked Dale's membership *not* because of any on-the-job speech, but because he gave an "interview[] . . . about his advocacy" to a newspaper.  *Dale*, 530 U.S. at 645.  In affording First Amendment protection to that decision, the Court stressed that it did not matter whether Dale would "disseminat[e] views on sexual issues" while on the job.  *Id.* at 655.  "[T]he First Amendment protects the Boy Scouts' method of expression," the Court concluded, because the absence of on-the-job discussion of the relevant issues "does not negate the sincerity of [the Scouts'] belief" that its message would be undermined by Dale's presence withing Scouting ranks.  *Id.*

The conflict between this Court's analysis and the analysis in cases like *Dale* and *Redgrave* shows, at a minimum, that reasonable jurists can disagree over the

question whether a performing entity's right to free speech includes the right to consider an actor's "off-the-job" speech in deciding whether to cast that actor in a major performing role.

### C. Reasonable Jurists Could Reject The Order's Proposed Distinction Between State Control Over Speech Through Injunctive Relief And State Control Over Speech Through Monetary Liability

Reasonable jurists also could disagree with this Court's suggestion that First Amendment protections against state interference with casting decisions depend on the remedy sought.  According to the Order, even though the state may impose *monetary liability* on Disney for deciding not to cast Carano, an order *enjoining* Disney to cast her "could be deemed to impinge [Disney's] right to control creative content."  Order 19 (internal quotation marks omitted).  The Order does not explain why or how the First Amendment distinguishes between state regulation through equitable relief and state regulation through monetary liability, and other judges could reasonably reject that distinction.  Indeed, the Supreme Court has already repudiated the distinction in other contexts, repeatedly stating that "state regulation can be as effectively exerted through an award of damages as through some form of preventive relief," because the "obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)) (brackets omitted).

The Court has applied the same principle in the free-speech context, holding in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its progeny that the First Amendment bars monetary liability for certain defamation claims because the threat of such liability is likely to chill protected speech ex ante.  The *Sullivan* doctrine obviously does not apply only to injunctions that compel or prohibit certain expressive acts.  And neither should the First Amendment protections recognized in *Dale*, *Green*, and other similar cases.  As the *Moore* court put the point, it is the

"enforcement of anti-discrimination statutes" itself—not the particular remedy sought—that "would violate Defendant's First Amendment right to decide the message it wanted to express." 2024 WL 989843, at *20.

### D.    Reasonable Jurists Could Conclude That First Amendment Protections For Expressive Entities Apply With Equal Force In The Employment Context

Finally, reasonable judges could disagree with the Order's effort to distinguish leading cases, including *Dale*, *Green*, and *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 566 (1995), on the ground that they did not arise in the "employment context," Order 12; *see id.* at 21 (distinguishing instant case as an "employment lawsuit").

In fact, other courts have already rejected that distinction. Both *Moore* and *Claybrooks* arose in the employment context. *See Moore*, 2024 WL 989843, at *2 (addressing Title VII clams); *Claybrooks*, 898 F Supp. 2d at 990 (addressing 42 U.S.C. § 1981 claim). And the courts in both cases did not treat the employment context as different from other areas in which the First Amendment applies. *See Moore*, 2024 WL 989843, at *18 ("The decisions Hadestown makes about whom to cast for which roles—its employment decisions—are inherently expressive because they are tied to the story it intends to tell and its creative expression."); *Claybrooks*, 898 F. Supp. 2d at 1000 ("the First Amendment prevents the plaintiffs from . . . forcing the defendants to employ race-neutral criteria in their casting decisions"). Indeed, both of those courts relied on the non-employment precedents invoked here as the basis for their decisions. *See Moore*, 2024 WL 989843, at *17-20 (discussing *Hurley*); *Claybrooks*, 898 F. Supp. 2d at 993-96 (same). The Ninth Circuit could agree with *Moore* and *Claybrooks* and reject the Order's premise that First Amendment protections for expressive entities apply with less force—if at all—in the context of an employment lawsuit.

Relatedly, a reasonable judge could conclude—contrary to the Order's analysis—that there is no meaningful differences between Disney's asserted right as an

- 10 -

employer to cast the actors of its choice, and the beauty pageant's right in *Green* to cast the contestants of its choice. *See* 52 F.4th at 786. The Court's Order observes that, in *Green*, the plaintiff sought to impose liability for the casting decision under a public-accommodations law, whereas Carano seeks to impose liability under employment statutes. *See* Order 21. But the constitutional question in both scenarios is exactly the same: does an entertainment company have the right to decide who will be the major performers in its productions? If the answer is yes in the public-accommodations context, as *Green* held, a reasonable judge certainly could conclude that the same answer applies in the employment context.

Rejecting the "employment context" grounds for distinguishing case like *Dale* and *Green* would reverse the approach to First Amendment protections taken by the Order. According to the Order, to invoke a free-speech defense, Disney must "establish that enforcement of California's antidiscrimination law imposes burdens on [its] associational rights beyond those necessary to accomplish the State's legitimate purposes." Order 15 (internal quotation marks omitted). But the core premise of the *Dale*/*Green* cases is that, "[a]s compelling as the interest in preventing discriminatory conduct may be, speech is treated differently under the First Amendment." *Green*, 52 F.4th at 792 (quoting *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th Cir. 2019)). Accordingly, "while antidiscrimination laws are generally constitutional," that presumption does *not* apply to a specific "application" of the law that would "require[] speakers to alter their expressive content." *Id.* (quoting *Telescope Media*, 936 F.3d at 755) (internal quotation marks omitted and alterations adopted). Reasonable jurists thus could disagree with the Order's assumption that Disney has a special duty to prove that the burden on its expressive rights exceeds the state's legitimate interest in regulating the employment relationship. The very fact that the state would be imposing monetary liability on Disney *for its speech*—i.e., for its decision not to express its artistic performance through

Carano—is enough to establish an unconstitutional burden of Disney's expressive rights.[3]

\*     \*     \*     \*

As the foregoing discussion shows, there is at least a reasonable possibility that the Ninth Circuit could disagree with various key aspects of the Order's legal analysis. The second prong for interlocutory appeal is therefore satisfied.

## III. APPELLATE REVIEW—AND A STAY OF PROCEEDINGS—WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINA-TION OF THE LITIGATION

Finally, permitting an interlocutory appeal would materially advance the ultimate termination of the litigation. This prong "is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1027). Put differently, "[r]esolution of a question materially advances the termination of litigation if it 'facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later in order to save the courts and the litigants unnecessary trouble and expense.'" *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1045 (C.D. Cal. 2013) (quoting *United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004)).

That standard is satisfied here in several respects. Of course, "[i]f the Ninth Circuit reverses this Court," then "the case is resolved in its entirety." *In re Apple*

---

[3] The Court's Order cites *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), for the proposition that states may sometimes restrict the right to associate. Order 15-16. But the Supreme Court has explicitly distinguished *Jaycees'* analysis of the right to *associate* from the right to *free speech*. *See 303 Creative*, 600 U.S. at 600 n.6. As the Court has explained, "very different considerations come into play when a law is used to force individuals to toe the government's preferred line when speaking (or associating to express themselves) on matters of significance." *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES
2:24-CV-01009-SPG-SK

*Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 996 (N.D. Cal. 2022). But even if the Ninth Circuit were to affirm the Court's Order, interlocutory appeal would still be valuable in clarifying the legal principles governing this case. As the Court's Order recognizes, Disney's First Amendment defense is not going away, and the Court may be asked to adjudicate the question again "with a more developed factual record." Order 20. Understanding the Ninth Circuit's views on the decisive questions discussed above would streamline further legal proceedings before this Court.

Interlocutory appeal is also appropriate given the constitutional right that Disney asserts. In *Green*, the Ninth Circuit acknowledged "the importance of resolving First Amendment cases at the earliest possible junction." 52 F.4th at 800. "As recognized in *Sullivan* and countless other cases," the court explained, "the First Amendment's protections extend to not only unconstitutional laws, but also to unnecessary *litigation* that chills speech." *Id.* Accordingly, "deciding a dispositive First Amendment issue that will avoid forcing the parties through unnecessary and protracted litigation" is essential. *Id.* Interlocutory appeal would protect Disney's constitutional interest in avoiding costly, speech-chilling discovery proceedings.

The case for a pre-discovery appeal is strengthened by Carano's recent promise to engage in highly intrusive discovery into Disney's expressive choices. In the parties' Joint Rule 26(f) Report, Carano indicates that she will seek to depose numerous high-ranking Disney officials, including The Walt Disney Company's former chief executive officer, Lucasfilm's current president, and *The Mandalorian*'s showrunner. ECF No. 46, at 5. And not even a week after this Court entered its Order, Carano propounded on Disney nearly 80 interrogatories, document requests, and requests for admission (not even accounting for their various subparts), many of which strike at the heart of Disney's interest in controlling its expression. Carano has now also propounded burdensome third-party discovery against various entities, including Meta. *See* Petrocelli Decl. Ex. 2.

MEMORANDUM OF POINTS AND AUTHORITIES
2:24-CV-01009-SPG-SK

Among Carano's requests to Disney are demands that Disney describe its "values," and how it expresses, views, and enforces those values through its art. For example, Carano seeks to compel Disney to offer its views on whether and how social-media posts by other creative professionals "align with Defendants' values." Petrocelli Decl. Ex. 1, at 30 (RFAs 5-8). Such requests are an affront to Disney's First Amendment "right as a private speaker to shape its expression by speaking on one subject while remaining silent on another," and squarely implicate the prohibition against a court "reject[ing] a group's expressed values" merely because it "find[s] them internally inconsistent." *Dale*, 530 U.S. at 651; *see Hurley*, 515 U.S. at 558. Many other discovery requests seek similar protected expressive information. *See*, *e.g.*, Petrocelli Decl. Ex. 1, at 17 (RFP 22) (seeking documents concerning "Disney's then-CEO Bob Chapek's statement that Plaintiff and/or her statements 'didn't align with Company values'"); *id.* (RFP 23) (seeking documents concerning "Chapek's statement that Disney's values are 'values that are universal: values of respect, values of decency, values of integrity, and values of inclusion'"); *id.* (RFP 24) (seeking documents concerning "Defendants' diversity, equity, and inclusion programs and policies").

Carano also seeks "[a]ll Documents showing all political contributions made by Defendants, their officers, directors and employees, whether to individual candidates, political action committees, or political organizations such as the Democratic Party, Republican Party, ActBlue, or any other organization." Petrocelli Decl. Ex. 1, at 28 (RFP 58). That request, too, runs headlong into the First Amendment, which limits "[t]he compelled disclosure of political associations." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010); *see Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 611-12 (2012).

If litigation continues, the Court will be called upon to repeatedly decide the application of the First Amendment to various aspects of this dispute. It will also be asked to decide more quotidian discovery questions, like whether Carano may

MEMORANDUM OF POINTS AND AUTHORITIES
2:24-CV-01009-SPG-SK

permissibly seek "[a]ll Documents showing compensation for each actor in Seasons 1 and 2 of The Mandalorian." Petrocelli Decl. Ex. 1, at 25 (RFP 52).   In contrast, permitting an interlocutory appeal now—and allowing the constitutional issues to be fully ventilated and resolved before discovery commences—will eliminate or reduce the need for First Amendment-related discovery controversies.  It will therefore preserve the Court's resources and advance the ultimate termination of the litigation.

For the same reasons, the Court should stay proceedings if it certifies the Order for interlocutory appeal.  "When considering a stay pending appeal pursuant to § 1292(b), the Court has broad discretion to decide whether a stay is appropriate to 'promote economy of time and effort for itself, for counsel, and for litigants.'" *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *3-4 (N.D. Cal. Sept. 16, 2008); *see Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 2021 WL 945237, at *3 (C.D. Cal. Feb. 22, 2021) (internal quotation marks omitted) (stay appropriate to avoid "substantial, unrecoverable, and wasteful discovery").  As shown above, no discovery at all is appropriate if Disney is correct as to its threshold defense.  It follows that if interlocutory appeal is granted, a stay of the litigation would be appropriate.

## CONCLUSION

For the foregoing reasons, the Court should certify its Order Denying Defendant's Motion To Dismiss for interlocutory appeal under 28 U.S.C. § 1292(b). If the § 1292(b) certification is granted, the Court should stay proceedings pending resolution of the interlocutory appeal.

MEMORANDUM OF POINTS AND AUTHORITIES
2:24-CV-01009-SPG-SK

1

2 Dated: August 23, 2024                          **O'MELVENY & MYERS LLP**

3

4                                                 By:  */s/ Daniel M. Petrocelli*

5                                                 Daniel M. Petrocelli

6                                                 Daniel M. Petrocelli
                                                  dpetrocelli@omm.com
7                                                 Molly M. Lens
                                                  mlens@omm.com
8                                                 Kristin MacDonnell
                                                  kmacdonnell@omm.com
9                                                 1999 Avenue of the Stars, 8th Floor
10                                                Los Angeles, California  90067-6035
                                                  Telephone:  +1 310 553 6700
11                                                Facsimile:   +1 310 246 6779
12

13                                                Jonathan D. Hacker (*pro hac vice*)
                                                  jhacker@omm.com
14                                                Joshua Revesz (*pro hac vice*)
                                                  jrevesz@omm.com
15                                                1625 Eye Street NW
16                                                Washington, DC 20006
                                                  Telephone:  +1 202 383 5300
17                                                Facsimile:   +1 202 383 5414
18

19                                                *Attorneys for Defendants The Walt Disney Company, Lucasfilm Ltd. LLC, and Huck-*
20                                                *leberry Industries (US) Inc.*

21

22

23

24

25

26

27

28

- 16 -

1 | **CERTIFICATE OF COMPLIANCE**

2 |       The undersigned, counsel of record for Defendants The Walt Disney Com-

3 | pany, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc., certifies that this

4 | brief contains 4,788 words, which complies with the word limit of Local Rule 11-

5 | 6.1.

6

7 | Dated: August 23, 2024               **O'MELVENY & MYERS LLP**

8

9 |                                       By:  */s/ Daniel M. Petrocelli*

10 |                                    Daniel M. Petrocelli
   |     dpetrocelli@omm.com

11

12 |     *Attorney for Defendants The Walt Disney*

13 |     *Company, Lucasfilm Ltd. LLC, and Huck-*
   |     *leberry Industries (US) Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28