DONALD M. FALK (Cal. Bar #150256)
SCHAERR | JAFFE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 562-4942
Fax: (202) 776-0136
dfalk@schaerr-jaffe.com

EUGENE VOLOKH (Cal. Bar #194464)
SCHAERR | JAFFE LLP
385 Charles East Young Dr. East
Los Angeles, CA 90095
Tel: (310) 206-3926
evolokh@schaerr-jaffe.com

GENE C. SCHAERR (*pro hac vice*)
H. CHRISTOPHER BARTOLOMUCCI (*pro hac vice*)
EDWARD H. TRENT (*pro hac vice*)
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
gschaerr@schaerr-jaffe.com
cbartolomucci@schaerr-jaffe.com
etrent@schaerr-jaffe.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARANO,<br><br>               Plaintiff,<br><br>     v.<br><br>THE WALT DISNEY COMPANY, LUCASFILM LTD, LLC, and HUCKLEBERRY INDUSTRIES (US), INC.,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: 2:24-cv-01009-SPG-SK**<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND STAY OF PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES [DOC. 57]**<br><br>Date: September 25, 2024<br>Time: 1:30 p.m.<br>Judge: Hon. Sherilyn Peace Garnett<br>Courtroom: 5C |

1

## TABLE OF CONTENTS

2   TABLE OF AUTHORITIES ...................................................................... ii

3   INTRODUCTION .................................................................................... 1

4   LEGAL STANDARD ................................................................................ 2

5   ARGUMENT ........................................................................................... 2

6   I.    The Court's Order Denying Defendants' Motion to Dismiss Did

7         Not Decide a Controlling Question of Law. ................................. 4

8   II.   There is No Substantial Ground for Difference of Opinion on the

9         Merits of Defendants' First Amendment Defense at the Motion to

10        Dismiss Stage. ........................................................................... 4

11        A.    The *Dale* Deference Standard Requires Defendants to

12              Present Actual Facts to Support Their First Amendment

13              Claim. ............................................................................. 5

14        B.    *Redgrave* Does Not Support Defendants' Asserted Defense........... 7

15        C.    Defendants Misinterpret the Court's Order Regarding

16              Potential Relief for Their Violation of California Law. .................. 9

17        D.    Defendants Again Misinterpret the Court's Order Regarding

18              the Application of the First Amendment in the Employment

19              Context. ........................................................................... 10

20  III.  Interlocutory Review and a Stay of Proceedings Would

21        Substantially Delay Resolution of the Issues Presented by the

22        Complaint. ................................................................................ 11

23        A.    Immediate Appellate Review Would Not Resolve the Issues

24              in the Case. ..................................................................... 11

25        B.    A Stay of the Proceedings is Not Justified.................................... 11

26  CONCLUSION ........................................................................................ 13

27  CERTIFICATE OF COMPLIANCE........................................................ 15

28

i

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO CERTIFY
FOR INTERLOCUTORY APPEAL AND STAY PROCEEDINGS
2:24-CV-01009-SPG-SK

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ................................................................................5

*Ams. for Prosperity Found. v. Bonta,*
   594 U.S. 595 (2021) ..............................................................................13

*Associated Press v. NLRB,*
   301 U.S. 103 (1937) ................................................................................8

*Boy Scouts of America v. Dale,*
   530 U.S. 640 (2000) .................................................................. 5, 6, 10

*Cipollone v. Liggett Group, Inc.,*
   505 U.S. 504 (1992) ................................................................................9

*Claybrooks v. Am. Broad. Cos., Inc.,*
   898 F. Supp. 2d 986 (M.D. Tenn. 2012) ............................................10

*Cohen v. Cowles Media Co.,*
   501 U.S. 663 (1991) ................................................................................1

*Durnford v. MusclePharm Corp.,*
   907 F.3d 595 (9th Cir. 2018) ...............................................................14

*Green v. Miss United States of America, LLC,*
   52 F.4th 773 (9th Cir. 2022) ...................................................... 5, 6, 10

*Hishon v. King & Spalding,*
   467 U.S. 69 (1984) ..................................................................................1

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
   515 U.S. 557 (1995) ..............................................................................10

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union,*
   22 F.4th 1125 (9th Cir. 2022) ...........................................................2, 4

*In re Cement Antitrust Litig. (MDL No. 296),*
   673 F.2d 1020 (9th Cir. 1981) ...............................................................2

*McDermott v. Ampersand Publishing, LLC,*
   593 F.3d 950 (9th Cir. 2010) .................................................................8

*Moody v. NetChoice, LLC,*
   144 S. Ct. 2383 (2024) ...........................................................................4

*Moore v. Hadestown Broadway Limited Liability Co.,*
-- F. Supp. 3d --, No. 23-cv-4837 (LAP), 2024 WL 989843
(S.D.N.Y. Mar. 7, 2024) ...............................................................................7, 10

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964) ................................................................................9

*Passaic Daily News v. NLRB,*
736 F.2d 1543 (D.C. Cir. 1984) ..............................................................8

*Perry v. Schwarzenegger,*
591 F.3d 1147 (9th Cir. 2010) ...............................................................13

*Redgrave v. Boston Symphony Orchestra, Inc.,*
855 F.2d 888 (1st Cir. 1988) ...................................................................8

*Roberts v. U.S. Jaycees,*
468 U.S. 609 (1984) ................................................................................5

*Rowell v. Sony Pictures Television, Inc.,*
No. LA CV15-02442 JAK (AGRx), 2016 WL 10644537
(C.D. Cal. June 24, 2016).........................................................................7, 10

*SEC v. Criterion Wealth Mgmt. Ins. Servs., Inc.,*
No. 2:20-CV-01402-SPG-JEM, 2023 WL 2372062
(C.D. Cal. Feb. 1, 2023)...........................................................................2

*Tucker v. Faith Bible Chapel Int'l,*
36 F.4th 1021 (10th Cir. 2022) ...............................................................11

*U.S. Rubber Co. v. Wright,*
359 F.2d 784 (9th Cir. 1966)...................................................................2

**Statute**

28 U.S.C. § 1292(b) ........................................................................ 1, 2, 4

**Other Authorities**

Walter Savage Landor,
*Imaginary Conversations* (London, J.M. Dent & Co. 1891)...................1

Order Denying Defs.' Mot. to Dismiss,
*Beneker v. CBS Studios, Inc.,* No. 2:24-cv-01659-JFW-SSC
(C.D. Cal. Aug. 14, 2024), ECF No. 60.................................................7

# INTRODUCTION

"Delay in justice is injustice."  2 Walter Savage Landor, *Imaginary Conversations* 188 (London, J.M. Dent & Co. 1891).  Even so, Defendants, The Walt Disney Company, Lucasfilm Ltd., LLC, and Huckleberry Industries (US), Inc. (collectively, "Defendants") again seek relief and a delay from this Court based on a false premise—namely, that they are categorically immune from state anti-discrimination laws because they make expressive art.  Mot. 1.  Yet, as this Court found in denying their Motion to Dismiss based on the same argument, "[i]t is 'well-established' … that 'generally applicable laws do not offend the First Amendment simply because their enforcement' have incidental effects on speaker's First Amendment rights."  Order Denying Defs.' Mot. to Dismiss 10 n.5 ("Order") (Doc. 45) (quoting *Cohen v. Cowles Media Co.,* 501 U.S. 663, 669 (1991) (collecting cases)).  The Court also held that "[a] party's claim that application of a generally applicable law 'would infringe [its] constitutional rights of expression or association' must be supported by some *showing* that compliance with the law would somehow 'inhibit[]' its expressive association."  *Id.* at 13 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984)) (emphasis added).

Moreover, of particular pertinence to Defendants' current motion, this Court found that there were no facts (at least at this stage) to support their claim (1) "that Plaintiff's continued employment by Defendants would inhibit or intrude upon Defendants' rights to expressive association," *id.* at 14, (2) that Defendants "employ public-facing actors for the purpose of promoting the 'values of respect,' 'decency,' 'integrity,' or 'inclusion,'" *id.*, or (3) "that Plaintiff's 'presence as a prominent actor on *The Mandalorian* interfered with [Defendants'] choice not to produce a show associated with her beliefs," *id.* at 20.  Nothing has changed since then and, not surprisingly given the case's procedural posture, Defendants still do not offer any evidence to support their asserted First Amendment defense.  Because the Court's order rests on a dispute over the facts of the case—that is, what is alleged in the

Complaint versus what Disney simply asserts—the case is not proper for certification under 28 U.S.C. § 1292(b). Defendants' Motion to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Stay of Proceedings ("Mot." [Doc. 57]) should be denied.

## LEGAL STANDARD

As this Court has held, courts should grant certification under Section 1292(b) "only in exceptional situations in which allowing an appeal would avoid protracted and expensive litigation" and not "merely to provide review of difficult rulings in hard cases." *SEC v. Criterion Wealth Mgmt. Ins. Servs., Inc.*, No. 2:20-CV-01402-SPG-JEM, 2023 WL 2372062, at *1 (C.D. Cal. Feb. 1, 2023) (Garnett, J.) (first quoting *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981), then quoting *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam)). In evaluating a request for certification under 28 U.S.C. § 1292(b), moreover, the Ninth Circuit holds that the "certification requirements are (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate termination of the litigation." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026). Further, a "controlling question of law must be one of law—not fact …" *Id.* (quoting *In re Cement Antitrust Litig.,* 673 F.2d at 1026). And here, the Court's consistent reliance upon the *factual* disputes between the parties in denying Defendants' Motion to Dismiss means this Motion should likewise be denied. *See, e.g.*, Order 14, 20.

## ARGUMENT

The core of Defendants' argument concerns the question of "whether the First Amendment protects Disney's right to choose who will express its artistic message." Mot. 1. Yet no court has held that media employers have an absolute right to "exclude" actors because of their viewpoints—religious, political, or otherwise. As

this Court found, the First Amendment defense has only been applied to casting decisions in "certain, fact specific circumstances." Order 17. And those factual circumstances are not applicable here. Rather, under the allegations in the Complaint, there are no facts to suggest, let alone establish, that Defendants' actions were taken because Carano's speech undermined Defendants' speech or that Defendants ever made a casting decision because it did not want to "express its art through actors who made widely-publicized statements that the entity deems offensive and harmful to its own artistic expression." Mot. 2;[1] *see also* Order 14, 19. This makes Defendants' framing of the question they request be certified for appeal, Mot. 2, all the more improper as it misconstrues both the facts in the Complaint and the law applicable to their asserted First Amendment defense.

As this Court correctly found, Carano's Complaint does not itself establish "that Plaintiff's continued employment by Defendants would inhibit or intrude upon Defendants' rights to expressive association," *id*. at 14, and it "lacks allegations to support Defendants' assertion that Plaintiff's 'presence as a prominent actor on *The Mandalorian* interfered with [Defendants'] choice not to produce a show associated with her beliefs.'" *Id*. at 20 (quoting Defs.' Mot. to Dismiss at 19 ("MTD") [Doc. 33]). Indeed, when it came to establishing their affirmative defense at the motion to dismiss stage, "Defendants have not made such a showing," *id*. at 16, and thus their Motion to Dismiss was properly denied. Defendants' mere disagreement with this Court's findings does not create a basis for interlocutory appeal.

---

[1] In their Answer, Defendants admit they never made any public statement about any actor on *The Mandalorian* based on their personal social media posts other than Carano. Answer ¶ 177 (Doc. 58). And there is no evidence Defendants chose to fire an actor for political comments on social media until Carano. Indeed, Defendants had no issue with personal, political statements from others, just Carano, undermining their entire First Amendment defense. Compl. ¶¶ 106, 127-44 (Doc. 1).

3

I.    **The Court's Order Denying Defendants' Motion to Dismiss Did Not Decide a Controlling Question of Law.**

First, the Court's Order did not "decide" a controlling question of law. To be sure, Defendants claim their Motion to Dismiss was based exclusively on a controlling question of law, and that this Court decided that controlling question when it denied Defendants' motion. Mot. 3. But in ruling that Defendants do not enjoy an absolute First Amendment immunity from liability, the Court was not really "deciding" a legal question—it was simply applying settled First Amendment law already decided by higher courts. *See* Order 12-14, 21-22. And, in rejecting Defendants' argument that Carano's Complaint *itself* establishes Defendants' entitlement to absolute immunity, the Court was, again, not "deciding" a legal question, but simply applying settled First Amendment law to its analysis of the Complaint's factual allegations. *See id.* at 14-16, 21.

In short, the dispute over Defendants' assertion of its First Amendment defense is one of fact—specifically the lack of allegations in the complaint to support that defense and, given the procedural posture of the case, the lack of other evidence to support that defense. *See generally* Order 14, 20. Because the issues at this stage are factual rather than legal, certification is not appropriate under Section 1292(b). *See ICTSI Or.*, 22 F.4th at 1130.

II.   **There is No Substantial Ground for Difference of Opinion on the Merits of Defendants' First Amendment Defense at the Motion to Dismiss Stage.**

Second, there is no substantial ground for difference of opinion on the merits of Defendants' legal position. Here, Defendants rely on the fact that the Supreme Court and the Ninth Circuit "are regularly issuing new precedents." Mot. 4. Indeed, Defendants pointed out a new precedent in a Notice of Supplemental Authority (Doc. 43). But, of course, not all new precedent is applicable at this stage, as the Court correctly found as to the Supreme Court's recent decision in *Moody v. NetChoice, LLC,* 144 S. Ct. 2383 (2024). Order 22. The mere fact some future

4

opinion may have relevance to this case is not a reason to stay these proceedings or to certify the Court's Order denying Defendants' Motion to Dismiss for interlocutory appeal. And, as shown below, none of Defendants' other arguments establish a "substantial ground for difference of opinion" on the correctness of the Court's denial of Defendants' Motion to Dismiss.

### A. The *Dale* Deference Standard Requires Defendants to Present Actual Facts to Support Their First Amendment Claim.

First, according to Defendants, both *Boy Scouts of America v. Dale,* 530 U.S. 640 (2000), and *Green v. Miss United States of America, LLC,* 52 F.4th 773 (9th Cir. 2022), *reh'g en banc denied,* 61 F.4th 1095 (9th Cir. 2023), require dismissal of Carano's claim based exclusively on their assertion of harm to an unspecified message. Mot. 4-5. Yet, as the Court properly found, that is not the holding of either case. *See* Order 13-14, 21-22.[2]

Initially, and as demonstrated in Carano's Response to Defendants' Motion to Dismiss ("MTD Resp.") (Doc. 37 at 5-6, 12), Defendants never identify what message of theirs was undermined by Carano speaking her mind on important issues of the day. That failure will be fatal to their asserted defense and is as fatal to their current motion as it was to their Motion to Dismiss.

---

[2] While Defendants attempt to distinguish *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), by claiming that free speech rights are different than free association rights when "a law is used to force individuals to toe the government's preferred line when speaking (or associating to express themselves) on matters of significance," they again miss the point that this case has nothing to do with forcing Defendants to say or not say anything. *See* Mot. 12 n.3 (quoting *303 Creative LLC v. Elenis*, 600 U.S. 570, 600 n.6 (2023)). Rather, the issue here is similar to that in *Roberts*, namely the lack of any evidence that retaining Carano in *The Mandalorian* would create a "serious burden" on Defendants' right to free expression. 468 U.S. at 623, 626 (club failed to show "serious burdens" on expressive association by including women as full members); Order 13-14.

5

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL AND STAY PROCEEDINGS 2:24-CV-01009-SPG-SK

1    Regarding *Dale*, the Court correctly found it was not dispositive, at least at
2  this juncture.  In addition to noting the lack of facts to support Defendants' claim
3  "that they engage in expressive *association*," the Court also found that, "at this stage
4  in the litigation, the Court cannot conclude, as Defendants urge it to, that Plaintiff's
5  continued employment by Defendants would inhibit or intrude upon Defendants'
6  right to expressive association."  Order 14.  Indeed, the Supreme Court made it clear
7  "that an expressive association" cannot "erect a shield against antidiscrimination
8  laws simply by asserting that mere acceptance of a member from a particular group
9  would impair its message."  *Dale,* 530 U.S. at 653.  That is all Defendants offer here.

10    The *Dale* "deference standard" upon which Defendants claim to rely, and as
11  quoted in Judge VanDyke's concurring opinion in *Green*, merely states: "As we give
12  deference to an association's assertions regarding the nature of its expression, we
13  must also give deference to an association's view of what would impair its
14  expression."  *Green*, 52 F.4th at 805 (quoting *Dale*, 530 U.S. at 653) (VanDyke, J.,
15  concurring).  Following his citing of *Dale*, Judge VanDyke then reviewed the facts
16  of the case, including Miss USA's specific message and how including Green would
17  undermine that message.  *Id.* at 806-07.  Yet here, a factual analysis of Defendants'
18  assertion is not possible under the facts as they currently exist.  Of course, this does
19  not alter the Supreme Court's clear direction cited above that it takes more than a
20  mere assertion to support such a claim, but actual evidence must be presented,
21  something this Court properly found was (not surprisingly) lacking here.

22    The majority's holding in *Green* does not help Defendants either.  While in
23  *Green* there was no "daylight between speech and speaker," the Court here was
24  unable to reach such a conclusion based on the face of Carano's Complaint.  Order
25  21-22 (quoting *Green*, 52 F.4th at 781, 802-03).  Indeed, there is no evidence to
26  support Defendants' assertion that they had a message in *The Mandalorian* to
27  promote any particular "values" or that having Carano participate would undermine
28  its ability to communicate those values.  *Id.* at 14.  Accordingly, any "deference"

6

owed to Defendants' asserted message is not due when such an assertion is without any factual support.

Defendants' reliance (Mot. 4, 6, 10) on *Moore v. Hadestown Broadway Limited Liability Co.,* -- F. Supp. 3d --, No. 23-cv-4837 (LAP), 2024 WL 989843 (S.D.N.Y. Mar. 7, 2024), also misses the point. There, as this Court recognized, the court held there is no First Amendment protection for termination of an actor for otherwise protected conduct, as is the issue here. Order 18. Indeed, two other courts in this district have held likewise when evaluating similar claims on a motion to dismiss. *Rowell v. Sony Pictures Television, Inc.*, No. LA CV15-02442 JAK (AGRx), 2016 WL 10644537 (C.D. Cal. June 24, 2016), *aff'd*, 743 F. App'x 852 (9th Cir. 2018); Order Denying Defs.' Mot. to Dismiss at 2, *Beneker v. CBS Studios, Inc.*, No. 2:24-cv-01659-JFW-SSC (C.D. Cal. Aug. 14, 2024), ECF No. 60 (relying on this Court's July 24, 2024 Order). There is no basis for reasonable jurists to disagree on this point, which (again) makes the Court's decision inappropriate for certification for an interlocutory appeal.

**B.    *Redgrave* Does Not Support Defendants' Asserted Defense.**

Defendants next argue that this Court held "that the First Amendment does not confer on expressive entities the right to dissociate with performers based on their 'off-the-job political speech.'" Mot. 7. Defendants cite page 19 of the Court's Order,[3] but nowhere did the Court make such a broad statement of the law. Instead, the Court rightly noted that there are no facts to support Defendants' claims that Carano's off-the-job comments had any effect on their speech. Order 19, 20, 21.

---

[3] Defendants may be referencing the following sentence in the Court's Order: "Instead, Plaintiff contends that Defendants fired her in retaliation for off-the-job political speech after attempting to make her renounce those comments and 're-educate' her. (Compl. ¶¶ 30, 75, 77)." Order 19. The Court noted how this was the same as in *Rowell* and in *Moore*, neither of which found the First Amendment a bar to a retaliatory discharge claim. *Id.* at 18-19.

While Defendants again claim that Carano's comments "plainly" implicate "the message or content of *The Mandalorian*" (Mot. 7 (quoting Order at 19)), they again point to no evidence to support, let alone prove this assertion.

Defendants then point to *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888 (1st Cir. 1988), as a basis for reasonable jurists to disagree on the Court's holding. Mot. 7-8. Yet, as the Court made clear, not only is any discussion of First Amendment issues in *Redgrave* pure dicta (Order 20), but the opinion is of "little persuasive value at this stage of the litigation." *Id*. *Redgrave* simply does not support Defendants' argument that an entertainment company has an *absolute* right to terminate an actor for any off-the-job speech at the sole discretion of the entertainment company. As this Court noted, Defendants' theory would place no limits on who could avoid laws of general applicability prohibiting discrimination. Indeed, Defendants' theory is "tenuous, at best." Order 17 n.6.[4]

As Carano demonstrated in her Motion to Dismiss Response (at 6-8), moreover, the Supreme Court has foreclosed their blanket argument. In *Associated Press v. NLRB*, 301 U.S. 103 (1937), the Court held that the Associated Press ("AP") could not fire employees for their pro-union position as there was no showing that their pro-union position effected the AP's ability to publish the news as it saw fit. *Id.* at 132-33. Likewise, the D.C. Circuit Court of Appeals held the same in *Passaic Daily News v. NLRB*, 736 F.2d 1543, 1555-56 (D.C. Cir. 1984) (applying these principles to conclude that a newspaper lacked a First Amendment right to fire a columnist based on his off-duty union-related speech). And, as this Court noted, the Ninth Circuit's opinion in *McDermott v. Ampersand Publishing, LLC*, 593 F.3d 950, 953 (9th Cir. 2010), provides no support for Defendants' argument either. Order 22.

---

[4] For the reasons set out above, Defendants' reliance on *Dale* for this argument is likewise without merit.

8

1    Defendants' motion for certification for interlocutory appeal on this ground should
2    be denied.

3          **C.**      **Defendants Misinterpret the Court's Order Regarding Potential**
4                     **Relief for Their Violation of California Law.**

5          In their third ground for certification, Defendants claim that monetary
6    damages and potential injunctive relief both violate their First Amendment free
7    speech rights.  Mot. 9.  They again miss the point that they have failed to establish
8    *any* First Amendment right to terminate Carano for her off-duty speech under the
9    facts of Carano's Complaint.  While the Court noted that an order of possible
10   reinstatement, as authorized by the applicable statutes here, *may* not ultimately
11   "comport with the First Amendment," the Court properly concluded that such a
12   decision did not need to be reached at this stage.  Order 19.  Because the facts as
13   alleged do not support Defendants' First Amendment defense, any concern over
14   possible remedies is premature and not grounds to certify this case for interlocutory
15   appeal.

16         Defendants nevertheless point to two inapplicable Supreme Court decisions
17   in support of their argument.  First, they cite *Cipollone v. Liggett Group, Inc.*, 505
18   U.S. 504, 521 (1992), to argue that monetary damages are just as likely to modify
19   behavior as injunctive relief.  Mot. 9.  But *Cipollone* was not a First Amendment
20   case, but rather evaluated the preemption provision of the Public Health Cigarette
21   Smoking Act of 1969.  *Cipollone*, 505 U.S. at 521.

22         Defendants then reference *New York Times Co. v. Sullivan*, 376 U.S. 254
23   (1964), "and its progeny" to assert that monetary damages may also "chill speech."
24   Mot. 9.  Of course, *Sullivan* concerned liability for libel based on the newspaper's
25   publication about a public official.  376 U.S. at 256.  Yet here, Defendants offer no
26   basis for comparison to a newspaper.  Further, Defendants face liability here for
27   violations of a statute protecting against invidious discrimination, not First
28   Amendment protected speech.  Order 19 ("in contrast to *Claybrooks* and *Moore*,

1    Plaintiff's Complaint does not take issue with the message or content of *The*
2    *Mandalorian*").  Indeed, Defendants' reliance on *Moore* only disproves their point,
3    as *Moore* allowed a claim for retaliatory discharge to move forward over the
4    defendant's First Amendment objections.  2024 WL 989843, at *20-21; Order 18.
5    Defendants' argument is simply insufficient to justify certification of the Court's
6    Order for interlocutory appeal.

7         **D.    Defendants Again Misinterpret the Court's Order Regarding the**
8              **Application of the First Amendment in the Employment Context.**

9         Finally, Defendants entirely misread the Court's Order by asserting that it
10   relies on a distinction between public accommodation claims and employment
11   claims.  Mot. 10.  Yet the Court never said its decision was premised on that
12   distinction.  *See* Order 20.  While the Court noted that neither *Hurley v. Irish-*
13   *American Gay, Lesbian & Bisexual Group of Boston,* 515 U.S. 557 (1995), *Dale*,
14   nor *Green* were employment cases, Order 12, 21, that was simply to lay out the
15   constitutional principles involved in those decisions.  The Court then explained in
16   detail why those holdings were distinguishable and not controlling here—and for
17   reasons going well beyond the distinction between public accommodation and
18   employment claims.  *Id*. 12 (*Hurley*) 13-14 (*Dale*), 21-22 (*Green*).

19        To be sure, the Court analyzed *Moore*, *Claybrooks v. American Broadcasting*
20   *Companies, Inc.*, 898 F. Supp. 2d 986 (M.D. Tenn. 2012), and *Rowell*, which
21   involved either retaliatory termination or claims of discriminatory failure to hire.  In
22   evaluating those holdings, however, the Court found them either distinguishable (as
23   in *Claybrooks*, Order 17-18), or only partially relevant but not helpful to Defendants
24   (as in *Moore*, *id*. at 18), or contrary to Defendants' position (as in *Rowell*, *id*. at 19).
25   Defendants' request for certification of the Court's Order on this ground simply rests
26   on a mischaracterization of the Court's reasoning and should be denied.

27

28

III. **Interlocutory Review and a Stay of Proceedings Would Substantially Delay Resolution of the Issues Presented by the Complaint.**

Finally, nothing about an interlocutory appeal will expedite or shorten the litigation. Instead, it will only delay the natural order of litigation. *See Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1034 (10th Cir.), *reh'g en banc denied,* 53 F.4th 620 (10th Cir. 2022), *cert. denied mem.*, 143 S. Ct. 2608 (2023). Indeed, rather than being a serious attempt to address a dispositive issue of law, Defendants' motion appears to be an attempt to avoid or delay discovery and an ultimate adjudication of Carano's claims—which will only prejudice her without truly expediting resolution of these claims.

A. **Immediate Appellate Review Would Not Resolve the Issues in the Case.**

Given the lack of facts to support Defendants' First Amendment affirmative defense, as this Court noted repeatedly in its Order, an interlocutory appeal would certainly not resolve this case "in its entirety," (Mot. 12), or even "streamline further legal proceedings before this Court," *id*. at 13. While Defendants claim that this litigation is one "that chills speech," *id*., they do not even assert how their speech is impacted. As noted extensively above and in the Court's Order, this case is not about Defendants' speech, but rather their discriminatory termination of Carano because of her speech.

B. **A Stay of the Proceedings is Not Justified.**

Finally, Defendants point to what they claim is "highly intrusive discovery into Disney's expressive choices" with "many [discovery requests] which strike at the heart of Disney's interest in controlling its expression" as a basis for this Court to stay the case. Mot. 13. Yet Defendants forget that it is *they* who asserted a First Amendment defense, and Carano certainly has the right to test that defense and demonstrate that any such assertion is simply a pretext for unlawful discrimination. And, while Defendants complain of Carano's initial written discovery, they fail to

11

1  mention that two days prior to filing their motion, Defendants served 84 Requests
2  for Production ("RFPs") on Carano.  *See* Ex. A.  All this means is that discovery has
3  begun as contemplated by this Court's standing orders and the Federal Rules of Civil
4  Procedure.  Any disputes regarding discovery can be handled in the ordinary course;
5  indeed, responses are not even due for several weeks.

6      Regarding the specific discovery requests of which Defendants complain,
7  they go directly to the issues in the case.  First, Defendants complain that Carano
8  seeks to depose "numerous high-ranking Disney officials, including The Walt
9  Disney Company's former chief executive officer, Lucasfilm's current president,
10  and *The Mandalorian's* showrunner." Mot. 13.  Of course, Defendants rely on their
11  former CEO's statement to support their First Amendment defense (*see* MTD 2, 6,
12  13).  Further, they identify three senior VPs, Lucasfilm's current president (Kathleen
13  Kennedy), and *The Mandalorian's* showrunner (John Favreau) as witnesses in their
14  Rule 26(a) Initial Disclosures.  *See* Ex. B at 2-4.  It is odd that they would now claim
15  that a request to ultimately depose these individuals is "intrusive."

16      Defendants also complain that Carano has served several third-party
17  subpoenas.  Mot. 13.  Yet two of those subpoenas are to Carano's *own* former agent
18  and public relations firm, both of which are also included in Defendants' Rule 26(a)
19  Initial Disclosures.  *Compare* Mot. Ex. 2 at 37-58 (Doc. 57-3) *with* Ex. B at 3-4 here.
20  Further, Defendants have requested that Carano produce documents between them
21  and these entities as part of discovery.  *See* Ex. A (RFPs 9-13).

22      Defendants also complain about Carano's Requests for Admission asking if
23  social media posts from other *Mandalorian* actors "align with Defendants' values."
24  Mot. 14 (quoting Pl.'s Reqs. for Admission 5-8 (Mot. Ex. 1 at 33 [Doc. 57-2])).  Yet
25  Defendants' entire defense is that such a claim justifies dismissal under the First
26  Amendment.  MTD 13-14, 16.  Such requests are clearly relevant, and truthful
27  answers will likely demonstrate the lack of merit to Defendants' asserted defense.
28

Defendants next complain about having to produce contracts of other comparable actors in response to Request for Production No. 52. Mot. 14. Yet such a request goes directly to Carano's claimed damages and is clearly relevant here.

Finally, Defendants complain about requests for information related to political contributions in Request for Production No. 58. Of course, given that Defendants admit to treating Carano differently because of political speech they frequently describe is "conservative," discovery as to Defendants' political bias is clearly relevant. Contrary to their assertion, such information is discoverable under *Perry v. Schwarzenegger*, where the Ninth Circuit created a balancing test for discovery of political affiliations and did not prohibit all such discovery. 591 F.3d 1147, 1161 (9th Cir. 2010). Further, Defendants reference (Mot. 14) to *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 611-12 (2021), is inapplicable because there the issue was the mandatory disclosure of donor lists to the government, an issue not applicable here.

Again, should disputes arise regarding the scope of discovery, those can be addressed in the normal course and do not justify a stay of these proceedings.

## CONCLUSION

At this point, Defendants have offered no evidence to support, let alone prove, that they terminated Carano for reasons protected by the First Amendment. And, while it is doubtful they ever will, the mere suggestion that they can do so is not sufficient to justify staying these proceedings and certifying this Court's Order denying their Motion to Dismiss for immediate interlocutory appeal. The only established facts at present are that Defendants terminated Carano and took steps to destroy her career for discriminatory reasons prohibited by California law. With no evidence that Defendants' speech was affected by Carano's appearance in *The Mandalorian*, the First Amendment provides no sanctuary to Defendants—at least under the facts alleged in the Complaint. As this Court found (Order 23), Carano's Complaint clearly does not "admit[] all the ingredients of an impenetrable defense"

13

based on the First Amendment.  *Durnford v. MusclePharm Corp.,* 907 F.3d 595, 604 n.8 (9th Cir. 2018) (citation omitted).  Accordingly, Defendants' Motion should be denied.

Respectfully submitted,

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
H. Christopher Bartolomucci*
Edward H. Trent*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com
cbartolomucci@schaerr-jaffe.com
etrent@schaerr-jaffe.com

Donald M. Falk, Cal. Bar #150256
SCHAERR | JAFFE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 562-4942
Facsimile: (202) 776-0136
dfalk@schaerr-jaffe.com

Eugene Volokh, Cal. Bar #194464
SCHAERR | JAFFE LLP
385 Charles East Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 206-3926
evolokh@schaerr-jaffe.com

*Admitted pro hac vice*

*Counsel for Plaintiff*

Dated: September 4, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Gina Carano, certifies that this motion response contains 4,331 words, which complies with the established word limit of Local Rule 11-6.1.

Dated: September 4, 2024

*/s/ Gene C. Schaerr*
Gene C. Schaerr

*Counsel for Plaintiff*
