DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
MOLLY M. LENS (S.B. #283867)
mlens@omm.com
KRISTIN MACDONNELL (S.B. #307124)
kmacdonnell@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:   +1 310 553 6700
Facsimile:   +1 310 246 6779

JONATHAN D. HACKER (*pro hac vice*)
jhacker@omm.com
JOSHUA REVESZ (*pro hac vice*)
jrevesz@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone:   +1 202 383 5300
Facsimile:   +1 202 383 5414

*Attorneys for Defendants*
*The Walt Disney Company, Lucasfilm Ltd.*
*LLC, and Huckleberry Industries (US) Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARANO, <br><br> Plaintiff, <br><br> v. <br><br> THE WALT DISNEY COMPANY, LUCASFILM LTD. LLC, and HUCKLEBERRY INDUSTRIES (US) INC., <br><br> Defendants. | Case No. 2:24-cv-01009-SPG-SK <br><br> **DEFENDANTS THE WALT DISNEY COMPANY, LUCASFILM LTD. LLC, AND HUCKLEBERRY INDUSTRIES (US) INC.'S REPLY IN SUPPORT OF MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND STAY OF PROCEEDINGS** <br><br> Date:   September 25, 2024 <br> Time:   1:30 p.m. <br> Judge:  Hon. Sherilyn Peace Garnett <br> Courtroom: 5C |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

    I.     THERE IS A CONTROLLING QUESTION OF LAW ........................ 2

    II.    THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION ................................................................................................ 2

    III.   AN INTERLOCUTORY APPEAL AND STAY WOULD MATERIALLY ADVANCE THE LITIGATION ............................... 7

CONCLUSION ......................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Press v. NLRB*,
   301 U.S. 103 (1937) ............................................................................................6

*Boy Scouts of America v. Dale*,
   530 U.S. 640 (2000) ............................................................................................3

*Green v. Miss United States of America*,
   52 F.4th 773 (9th Cir. 2022) ..................................................................1, 3, 5, 8

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
   515 U.S. 557 (1995) ............................................................................................4

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
   22 F.4th 1125 (9th Cir. 2022) ..............................................................................2

*McDermott v. Ampersand Publ'g, LLC.*,
   593 F.3d 950 (9th Cir. 2010) ...............................................................................6

*Moore v. Hadestown Broadway LLC*,
   __ F. Supp. 3d __, 2024 WL 989843 (S.D.N.Y. Mar. 7, 2024) ......................3, 4

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ............................................................................................6

*Plaskett v. Wormuth*,
   18 F.4th 1072 (9th Cir. 2021) ..............................................................................2

*Redgrave v. Boston Symphony Orchestra, Inc.*,
   855 F.2d 888 (1st Cir. 1988) ...............................................................................4

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ...............................................................................2

**Statutes**

28 U.S.C. § 1292(b) .................................................................................... 1, 2, 8, 9

## INTRODUCTION

Carano's opposition does not seriously engage with the standard for certifying an interlocutory appeal under 28 U.S.C. § 1292(b). She nowhere acknowledges that potentially dispositive First Amendment questions should be resolved "at the earliest possible junction." *Green v. Miss United States of America*, 52 F.4th 773, 800 (9th Cir. 2022). She nowhere disputes that Disney's First Amendment defense, if successful, would terminate this litigation. She nowhere contests that reasonable jurists could disagree—and indeed, have disagreed—on the legal questions decided by this Court. And she nowhere refutes Disney's showing that her discovery demands themselves raise important First Amendment controversies that will require repeated intervention by this Court to resolve.

Carano's opposition instead essentially contends that review is not warranted because this Court's ruling was correct. Carano misses the point. *Every* petition for interlocutory appeal involves a ruling the issuing court believes to be correct. What matters under § 1292(b) is whether the ruling is subject to reasonable disagreement, and—especially critical here—whether broader interests justify threshold resolution of that disagreement. Those standards are certainly satisfied in this case. In most civil actions, the rights and interests at stake can be properly vindicated through full litigation, including appeal from a final order. Not so here. The First Amendment protects private actors not only against government regulation of their expressive statements, but also against government investigation into the thought processes underlying their expressive choices. Yet searching, government-sanctioned inquiry into Disney's values and decisonmaking is exactly what Carano promises in this case, as her opposition and discovery demands confirm. If, as Disney contends, the First Amendment protects Disney's artistic choices from state intrusion, that protection cannot be adequately secured through direct appeal after final judgment. The motion for interlocutory appeal and stay should be granted.

# ARGUMENT

## I. THERE IS A CONTROLLING QUESTION OF LAW

The first requirement to certify an order is that it decide a "controlling question of law." 28 U.S.C. § 1292(b); *see* Mot. 3. Carano does not and could not dispute that the First Amendment questions presented in Disney's petition are controlling in this action because answers favorable to Disney would compel dismissal of Carano's complaint. And, while Carano disputes that the Court decided a "legal question," Opp. 4, she neither acknowledges nor addresses the Ninth Circuit's holding that a ruling on a Federal Rule of Civil Procedure 12(b)(6) motion necessarily "raises a question of law." *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021).[1] This prong is satisfied.

## II. THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION

The second requirement is that there be a "substantial ground for difference of opinion" on the legal issues raised. 28 U.S.C. § 1292(b); *see* Mot. 3-12. To satisfy this prong, Disney need not show that the Court's Order was incorrect. All that it must demonstrate is that "reasonable judges might differ" on the questions the Order addressed. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (internal quotation marks omitted).

Carano's opposition fails to engage with that standard. She merely repeats the merits arguments asserted in her prior papers, but the issue is whether reasonable jurists could disagree with those arguments. They certainly could, and Carano does not show otherwise.

---

[1] Carano cites *ICTSI Oregon, Inc. v. International Longshore & Warehouse Union*, 22 F.4th 1125 (9th Cir. 2022), in which the Ninth Circuit concluded that a "post-trial order" raised a question of fact because "the district court primarily relied on facts from the record." *Id.* at 1130, 1132. Here, of course, there is no factual record; the only question is about the *legal* sufficiency of Carano's complaint.

**A. The *Dale* deference standard.** In *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), the Supreme Court held that courts must "give deference to an association's assertions regarding the nature of its expression" and "give deference to an association's view of what would impair its expression." *Id.* at 653. While this Court's Order acknowledged that deference standard, it held that it does not apply "at a motion to dismiss stage." Order 15. The Court thus discounted Disney's statements—featured prominently in Carano's own complaint—that expressing its art through Carano would contravene Disney's values. *See* Order 6.

As Disney's motion observed (at 5-6), that approach conflicts with Judge VanDyke's concurring opinion in *Green*, which applied the *Dale* deference standard at the pleading stage. *See* 52 F.4th at 805. Carano's only response is to mischaracterize *Green*'s procedural posture. According to Carano, Judge VanDyke "reviewed the facts of the case," Opp. 6, but as Disney has explained (and as the decision itself makes clear), the only discovery conducted in *Green* was on a topic that is not contested here, Mot. 5. In analyzing the critical aspects of the pageant's First Amendment defense—a defense materially identical to Disney's defense in this action—Judge Van Dyke considered only the complaint's allegations. *Id.* Judge VanDyke's application of the *Dale* deference standard at the pleading stage simply cannot be reconciled with this Court's ruling that deference has no role in reviewing a complaint, confirming that reasonable jurists could disagree on the issue.

Carano likewise ignores the portions of *Moore v. Hadestown Broadway LLC*, __ F. Supp. 3d __, 2024 WL 989843 (S.D.N.Y. Mar. 7, 2024), that demonstrate disagreement on this same question. The court in *Moore* held—based only on the complaint—that requiring the Broadway show to cast certain performers would violate the show's First Amendment right to express itself freely. *Id.* at *20. Carano ignores that holding altogether, focusing instead on the distinct part of the opinion addressing the actor's claim that she was retaliated against for speaking to a union

representative. *Id.* at *13; *see* Opp. 7. That discussion had no bearing on the aspect of *Moore* relevant here: the *Moore* court's holding, at the pleading stage, that "[c]hanging the composition of Hadestown's cast affected whether its performances conveyed Defendant's intended message." 2024 WL 989843, at *18.

Finally, Carano makes the chilling—but erroneous—assertion that the First Amendment protects Disney's artistic expression only to the extent jurors eventually find a "message in *The Mandalorian*" that is intended "to promote any particular 'values.'" Opp. 6. Decisions about whether and how an artistic speaker should convey its values through its performances are not for the government, a court, or a jury to make. The Supreme Court has spoken clearly: the First Amendment protects the "choice of a speaker not to propound a particular point of view," even if the speaker's own expression does "not produce a particularized message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 574-75 (1995). Reasonable jurists—including all nine Justices in *Hurley*—could certainly disagree with Carano's view that government can decide whether an expressive entity's values are closely enough aligned with its messages to justify the latter's protection.

**B. Off-the-job speech.** Disney's motion also demonstrated (at 7-9) the reasonable grounds for disagreement about the extent to which an expressive entity may consider the effects of a performer's "off-the-job political speech" on the artistic message the entity seeks to convey in its performance. Order 19. In particular, both *Dale* and *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888 (1st Cir. 1988), make clear that an individual's off-the-job political speech very much can affect her employer's intended message, and thus can be taken into account in casting and employment decisions.

Carano's response is difficult to follow. She argues that "there are no facts to support Defendants' claims that Carano's off-the-job comments had any effect on their speech," Opp. 7, but her own complaint alleges that Disney declared her off-the-job speech to be inimical to Disney's values, *see* Compl. ¶ 34 ("Disney's then-

CEO Bob Chapek has been quoted as saying Carano was fired 'because she didn't align with Company values.'"). Moreover, to the extent her position is that Disney must adduce facts proving that the artistic message of *The Mandalorian* was adversely affected by her comments, *see* Opp. 8, 13, her argument only underscores why *Dale*'s deference standard must apply at the outset: Carano does and cannot explain how a jury could *ever* be instructed to identify the "true" messages conveyed in an artistic performance, the importance of those messages to the speaker, the validity of the speaker's stated concerns about how those messages are conveyed and received, and so on. As *Dale*, *Redgrave*, and other cases make clear, those matters are solely for the speaker to decide—they are not contestable "facts" to be resolved through discovery, motions, and jury trials.

That essential premise is well illustrated by *Redgrave*, regardless whether its analysis is dicta, as Carano asserts. Opp. 8. *Redgrave* is relevant not because of its precedential force, but because it demonstrates how other jurists could reasonably disagree with this Court's ruling. If that ruling is correct, then the state in *Redgrave* could have permissibly punished the Boston Symphony Orchestra for refusing to perform its opera with Vanessa Redgrave as its lead narrative performer, despite the Orchestra's stated concerns that her highly controversial public commentary on Middle East political issues would distract from and disrupt the Orchestra's own preferred artistic message. In rejecting that position, the *Redgrave* court did not require the Orchestra to produce "evidence" that its performance would be "compromised or ineffective" if it were forced to employ Redgrave in a lead role. 855 F.2d at 905. Rather, the First Circuit rested its analysis on the common-sense point that—as the Ninth Circuit put it much more recently—there is no "daylight between speech and speaker" when it comes to how art is received and understood. *Green*, 52 F.4th at 781. Because the Court's ruling rejects that view, and perceives daylight between Carano's controversial off-the-job speech and the artistic message

Disney seeks to convey in *The Mandalorian*, *Redgrave* shows that reasonable jurists can disagree with that position.[2]

**C. Monetary liability and injunctive relief.** The Court's Order asserts that while the First Amendment does not necessarily prohibit a court from holding Disney liable for refusing to cast Carano as a lead performance, the First Amendment likely *would* prohibit a court from requiring Disney to cast Carano. Order 19. As Disney's motion showed (at 9-10), reasonable jurists could disagree with this claimed distinction and conclude that imposing damages liability for expressive acts is an indirect way to regulate such expression. *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964). Indeed, Carano does not attempt to defend the distinction; instead she simply complains that "any concern over possible remedies is premature." Opp. 9. No, it is not. Disney's point is not about *which* remedy may be appropriate; it is that *no* remedy can be appropriate if its objective is to regulate artistic speech. In other words, if the state cannot regulate speech directly through a judicial injunction, it is impossible to see why the state can pursue the *same regulatory objective* through damages liability. More precisely for present purposes, reasonable jurists certainly could disagree that the choice of remedy makes a difference in this context.

**D. Employment precedents.** Finally, Disney's motion argued (at 10-12) that a reasonable jurist could decline to distinguish key cases merely because they did not arise in the "employment context." Order 12; *see id.* at 21.

Carano does not defend the distinction or deny that reasonable jurists could conclude that the employment context is irrelevant. Rather, she simply denies that

---

[2] Carano also rehashes her argument that this case is like *Associated Press v. NLRB*, 301 U.S. 103 (1937), and its progeny. *See* Opp. 8. But the Court did not rely on that argument in its Order, and for good reason: the Ninth Circuit has squarely held that *Associated Press* does not apply to actions that "affect[] the expressive content" of a work. *McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950, 962 (9th Cir. 2010). Carano cannot wish that holding away.

the Order distinguishes cases on that basis. Opp. 10. Of course it does. "As an initial matter," the Order emphasizes, "neither *Dale* nor *Hurley* arose in the employment context." Order 12. And the Order says the Ninth Circuit's decision in *Green* "is not an employment lawsuit but a case arising under Oregon public accommodations law." Order 21. The Court presumably did not proffer those statements as idle observations for the benefit of the curious. This perceived distinction clearly mattered to the Court. But reasonable jurists could see it differently and think the employment context of this case has no bearing on Disney's right to decide how to perform its own art without interference by the state.

\* \* \* \*

The Court's Order held that Carano's complaint did not establish the elements of a successful First Amendment defense. Key to that holding were various legal conclusions: (1) that Disney was not entitled to deference at this stage, and so the Court need not take at face value its stated view (as included in the complaint's allegations) of what would impair its expression; (2) that Disney needed to show through empirical evidence that Carano's off-the-job speech would impair Disney's message; (3) that the First Amendment could permit holding Disney liable even in circumstances where an injunction could not issue; and (4) that several potentially on-point precedents were less meaningful because they were not employment cases. At this stage, Disney does not need to establish that those views were unreasonable or even erroneous. Disney instead must show only that reasonable judges could approach each of those questions differently. As the discussion above indicates, courts and judges *have already* taken variant approaches to these issues, confirming that the second criterion for interlocutory appeal is met.

### III. AN INTERLOCUTORY APPEAL AND STAY WOULD MATERIALLY ADVANCE THE LITIGATION

The final prong of the § 1292(b) analysis is whether an interlocutory appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C.

§ 1292(b); *see* Mot. 12-15. That standard is satisfied here, including because a Ninth Circuit decision reversing the Order would terminate or streamline the suit. And Carano barely musters a contrary argument: her only real point is that there is no possibility she would lose on appeal. Opp. 11. Because reasonable jurists can see the issues here differently, *see supra* at 2-7, Carano's argument on this prong fails.

Nor does Carano persuasively oppose a stay of discovery during the pendency of any interlocutory appeal. She complains that a stay would delay adjudication of this matter, Opp. 11, but she has forfeited any such concerns: Carano herself delayed filing this suit until February 2024, almost exactly three years after Disney cut ties with her, just as the limitations period was about to expire. *See* ECF No. 1. And in any event, Disney would not oppose any reasonable request by Carano to expedite proceedings on appeal.

Carano's substantive arguments about discovery, meanwhile, confirm that an interlocutory appeal and stay are appropriate. *See* Opp. 12-13.[3] Carano asserts the right to probe Disney's artistic and political values, and she even seeks to obtain Disney's employees' campaign-contribution histories. *See id*. But Carano does not disagree that, if Disney has a threshold First Amendment defense to this suit, Disney and its employees should be protected against intrusive state inquiry into their values and thought processes. *See* Mot. 13-15. That is precisely why the Ninth Circuit has underscored "the importance of resolving First Amendment cases at the earliest possible junction," so as to "avoid forcing the parties through unnecessary and protracted litigation." *Green*, 52 F.4th at 800. Section 1292(b) review and a stay pending review are clearly warranted for that reason here.

---

[3] Carano complains in passing that Disney has propounded discovery requests of its own. Opp. 12. Of course, Disney's motion for a stay of discovery would also cover its requests.

# CONCLUSION

For the foregoing reasons, the Court should certify its Order Denying Defendant's Motion To Dismiss for interlocutory appeal under 28 U.S.C. § 1292(b). If the § 1292(b) certification is granted, the Court should stay proceedings pending resolution of the interlocutory appeal.

Dated: September 11, 2024                    **O'MELVENY & MYERS LLP**


By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

Daniel M. Petrocelli
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Kristin MacDonnell
kmacdonnell@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

Jonathan D. Hacker (*pro hac vice*)
jhacker@omm.com
Joshua Revesz (*pro hac vice*)
jrevesz@omm.com
1625 Eye Street NW
Washington, DC 20006
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

*Attorneys for Defendants The Walt Disney Company, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants The Walt Disney Company, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc., certifies that this brief contains 2,659 words, which complies with the word limit of Local Rule 11-6.1.

Dated: September 11, 2024

**O'MELVENY & MYERS LLP**

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli
dpetrocelli@omm.com

*Attorney for Defendants The Walt Disney Company, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc.*