UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARANO,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>THE WALT DISNEY COMPANY, LUCASFILM LTD. LLC, and HUCKLEBERRY INDUSTRIES (US) INC.,<br><br>　　　　　　　Defendants. | Case No. 2:24-cv-01009-SPG-SK<br><br>**ORDER DENYING MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND STAY OF PROCEEDINGS**<br><br>**[ECF NO. 57]** |

    Before the Court is Defendants The Walt Disney Company ("Disney"), Lucasfilm Ltd. LLC ("Lucasfilm"), and Huckleberry Industries (US) Inc.'s ("Huckleberry," and, together with Disney and Lucasfilm, "Defendants") Motion to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Stay of Proceedings. (ECF No. 57 ("Motion")). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the Motion.

## I. BACKGROUND

Plaintiff Gina Carano ("Plaintiff") filed this lawsuit on February 6, 2024, asserting various wrongful discharge and sex discrimination claims after Defendants terminated her from the Disney+ show *The Mandalorian*. (ECF No. 1 ("Complaint") ¶¶ 5, 21, 145–82). On April 9, 2024, Defendants moved to dismiss Plaintiff's Complaint, contending that the First Amendment "barred" her claims. (ECF No. 33 at 7). After considering the parties' briefing and oral arguments, the Court issued its Order Denying Defendants' Motion to Dismiss on July 24, 2024. (ECF No. 45 ("Order")).

On August 23, 2024, Defendants answered the Complaint, (ECF No. 58), and filed the instant Motion, requesting the Court certify the Order for interlocutory appeal and stay proceedings in this litigation, (Mot.). Plaintiff timely opposed, (ECF No. 59 ("Opposition")), and Defendants timely replied in support of the Motion, (ECF No. 60 ("Reply")).

## II. LEGAL STANDARD

As a general rule, parties may not appeal a district court's rulings until after the court enters final judgment. *See* 28 U.S.C. § 1291. Pursuant to 28 U.S.C. § 1292(b), however, parties may obtain interlocutory appeal of an otherwise non-appealable order "if conditions specified in the section are met, the district court so certifies, and the court of appeals exercises its discretion to take up the request for review." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 n.10 (1996). *See also* 28 U.S.C. § 1292(b). Specifically, a district court may certify an interlocutory appeal if the order in question (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). *See also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). "Even if these three requirements are satisfied, a district court still has the discretion in deciding whether or not to grant a party's motion for certification." *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1258 (N.D. Cal. 2008).

A district court should grant an interlocutory appeal "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. The party seeking certification of an interlocutory appeal has the burden to demonstrate such exceptional circumstances. *Id.* An interlocutory appeal should not function "merely to provide review of difficult rulings in hard cases." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)).

## III. DISCUSSION

Defendants request this Court certify the following question for Ninth Circuit review:

> Whether the First Amendment right to free speech protects an artistic entity's right to control its own casting decisions by declining to express its art through actors who make widely-publicized statements that the entity deems offensive and harmful to its own artistic expression.

(Mot. at 9). Although it is not entirely clear from their Motion, Defendants may also seek certification of four additional questions, as follows:

> (1) [W]hether a court must defer—including at the pleading stage—to an expressive entity's concern that associating its art with speech it deems offensive would impair its own expression;
>
> (2) [W]hether an artistic entity has the right to consider an actor's "off-the-job political speech" when making casting decisions;
>
> (3) [W]hether the First Amendment prohibits the use of state power to control private speech through equitable relief, but allows the use of state power to control private speech through monetary liability; and
>
> (4) [W]hether the First Amendment protections identified in cases like *Green* apply differently in the employment context.

(*Id.* at 8–9).

### A. Whether Defendant Identifies a Controlling Question of Law

The first prerequisite for certifying an order for interlocutory appeal under § 1292(b) is the district court's finding that "such order involves a controlling question of law." 28 U.S.C. § 1292(b). "A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (internal quotation marks and citation omitted). See also *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) (finding "fact-review questions inappropriate for § 1292(b) review").

"[A] purely legal question is, by definition, one whose answer is independent of disputed facts . . . ." *Dupree v. Younger*, 598 U.S. 729, 737 (2023). For example, "a party presents a controlling legal question when it alleges that a court articulated an incorrect legal standard." *United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.* ("*Integra Med Analytics*"), No. CV 17-1694 PSG (SSX), 2019 WL 6973547, at *3 (C.D. Cal. Oct. 8, 2019). *Cf. Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993). In contrast, where the question posed for appellate review would "necessitate a detailed inquiry into the record," it is likely to be a question of fact or mixed question of fact and law poorly suited for interlocutory appeal; the question should be "a 'pure' question of law that the Ninth Circuit could decide . . . quickly and without having to study the record." *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012). Similarly, "[r]outine applications of settled legal standards to facts alleged in a complaint are not proper for interlocutory appeal unless the question for review seeks to clarify a legal standard." *Integra Med Analytics*, 2019 WL 6973547, at *3.

Here, Defendants contend that, by virtue of having ruled on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Order "necessarily 'raises a question of law.'" (Reply at 5 (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021)). In opposition, Plaintiff argues that Defendants in fact seek review of a question

of fact, not one of law. (Opp. at 8). The Court agrees that, here, Defendants have failed to present a 'pure' question of law suitable for interlocutory review.

As an initial matter, Defendants' invocation of *Plaskett* is misplaced. *Plaskett* arose on direct appeal after the district court dismissed the case for lack of jurisdiction. *Plaskett*, 18 F.4th at 1077. As *Plaskett* was not before the Ninth Circuit on interlocutory review, it accordingly does not stand for the broad proposition, urged by Defendants, that any order ruling on a motion to dismiss "necessarily" concerns a controlling question of law within the meaning of § 1292(b). (Reply at 5). *Cf. Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (concluding "that 'question of law' means an abstract legal issue rather than an issue of whether summary judgment should be granted").

In fact, Defendants' Motion makes clear that their real issue is with how the Court applied "various precedents . . . to the case at hand." (Mot. at 11). In effect, Defendants seek an opportunity to have the Ninth Circuit review whether the Court correctly concluded that Defendants' affirmative defense was not "impenetrable," as required to prevail on its motion to dismiss under Ninth Circuit law, *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018) (citation omitted). *See also* (Mot. at 10). This is a fact-specific analysis that would require the Ninth Circuit to closely parse the allegations in Plaintiff's Complaint to determine whether she "plead[] [her]self out of court." *Durnford*, 907 F.3d at 603 n.8 (citation omitted). *See also San Bernardino Cnty. v. Ins. Co. of State of Penn.*, No. CV 21-01978 PSG (ASx), 2023 WL 4681621, at *3 (C.D. Cal. July 12, 2023) (concluding that "interlocutory appellate review of how the Court applied the law to the facts of this case . . . is not appropriate"); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) ("The term 'question of law' does not mean the application of settled law to fact.").

### B. Whether Defendant Establishes Substantial Ground for Difference of Opinion

Even if Defendants have raised a controlling question or questions of law, however, they have failed to meet their burden to show "substantial ground for difference of

opinion." 28 U.S.C. § 1292(b). Courts generally "find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)). In contrast, "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.* (collecting cases). Similarly, "a substantial ground for difference of opinion is not established by a party's strong disagreement with the court's ruling." *Valdovinos v. McGrath*, No. C02-1704 CW, 2007 WL 2023505, at *5 (N.D. Cal. July 12, 2007).

Here, Defendants have not identified a circuit split on the proposed question(s), nor do these matters arise under foreign law. Instead, Defendants argue that "[r]easonable jurists could disagree on how these various precedents [analyzed in the Order] apply to the case at hand." (Mot. at 11). But, under Ninth Circuit law, this argument is the paradigmatic example of a *failure* to "establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633.[1] Additionally, although Defendants purport to identify "four critical aspects of the Order's legal analysis" with which reasonable jurists could allegedly disagree, (Mot. at 11), this portion of the Motion fails to accurately characterize the reasoning of either the Order or Defendants' cited caselaw, let alone show substantial ground for difference of opinion within the meaning of § 1292(b).

First, citing *Green v. Miss United States of America, LLC*, 52 F.4th 773 (9th Cir. 2022), Defendants argue that "reasonable jurists could conclude . . . that *Dale*'s deference standard applies to the entirety of a lawsuit, including at the pleading stage." (Mot. at 12).

---

[1] The Court observes that Defendants' "reasonable jurists" language appears to derive from *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011). The Court notes that, in *Reese*, the Ninth Circuit contemplated disagreement by "reasonable jurists" over "novel *legal* issues," not applications of law to fact, as giving rise to "[a] substantial ground for difference of opinion." *Id.* at 688 (emphasis added).

*Green*, Defendants contend, "began as a motion to dismiss and was converted to summary judgment on only a limited issue of no relevance here." (*Id.*). Defendants also assert the Ninth Circuit's ruling in *Green* was not based "on a developed summary judgment record of undisputed facts." (*Id.*).

Defendants are wrong. In *Green*, "the district court converted the motion to dismiss into a motion for summary judgment so that the parties could engage in limited discovery and submit supplemental briefing on the question of whether Miss USA is an 'expressive association' to evaluate the Pageant's freedom of association claim." *Green*, 52 F.4th at 779 (internal quotation marks and alteration omitted). The "limited issue" on which *Green* was converted to summary judgment was the question of whether the defendant was an expressive association. Far from being "of no relevance" to the Order, this question is *centrally* relevant. *See* (Order at 12–16 (evaluating "[w]hether Defendants' [e]xpressive [a]ssociation [r]ights [b]ar Plaintiff's [s]uit" and concluding that Defendants "have failed to establish that they engage in expressive association" (emphasis omitted))). Additionally, because the district court in *Green* permitted the parties to engage in limited discovery on this topic, both the district court and the Ninth Circuit had the benefit of a full record on which to base their decisions. In contrast, the Order was not decided in such a posture.

Second, Defendants contend that the Order held "that the First Amendment does not confer on expressive entities the right to dissociate with performers based on their 'off-the-job political speech.'" (Mot. at 14). As Plaintiff correctly observes, "nowhere did the Court make such a broad statement of the law." (Opp. at 11). Indeed, the Court explicitly recognized that "Defendants might, with a more developed factual record, be able to prevail on their First Amendment defense on some or all of Plaintiff's theories of termination-related liability." (Order at 20). The Court will not certify for appeal a straw man argument conjured up by Defendants in an apparent attempt to create conflict between the Order and the caselaw considered therein.

Third, and similarly, Defendants mischaracterize a three-sentence passage in which the Court reasoned that "the First Amendment may place certain limitations on the remedy

Plaintiff may seek for her claims." (*Id.* at 19 (emphasis omitted)). Defendants contend this material suggests that "First Amendment protections against state interference with casting decisions depend on the remedy sought." (Mot. at 16). Again, as stated by Plaintiff, Defendants "miss the point." (Opp. at 13). The Court did not, as Defendants insinuate, reach the issue of what kind of liability might be imposed on Defendants if Plaintiff were to prevail on some or all of her claims. *See* (Mot. at 16). Given the contours of Defendants' motion to dismiss, such a determination would have been premature, and accordingly the Court did not make it. Because this conclusion is not contained in the Order, the Court will not certify the Order for review on this basis.

Finally, Defendants argue that "reasonable judges could disagree with the Order's effort to distinguish leading cases . . . on the ground that they did not arise in the 'employment context.'" (Mot. at 17). Again, Defendants misunderstand the Court's Order. In their motion to dismiss briefing, Defendants asserted that two Supreme Court cases, *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), and *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), "establish that the state cannot force an employer engaged in expressive activity to express its message through speakers who, in the employer's view, would impair the employer's ability to convey its own preferred message." (Order at 12 (quoting ECF No. 33 at 13–14)). The Court's (correct) observation that neither *Dale* nor *Hurley* were employment cases was prompted by Defendants' briefing, which implied that these cases arose from the employment context. Additionally, nowhere did the Order articulate any "premise that First Amendment protections for expressive entities apply with less force—if at all—in the context of an employment lawsuit." (Mot. at 17). Tellingly, Defendants do not offer a citation to any portion the Order in support of this claim, nor could they, because no such material exists.

In sum, Defendants fail to show "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Additionally, the Court will not certify for interlocutory appeal holdings not made in the Order. *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-02200 MMM (MCx), 2008 WL 11334500, at *7 (C.D. Cal. Jan. 22, 2008)

(declining to certify "yet to be decided" issue because "even if the court were to certify the . . . question, the appeals court would be unable to make a final determination regarding it").

### C. Whether An Immediate Appeal Would Materially Advance Termination of the Litigation

Finally, Defendants fail to establish that the question(s) which they seek to certify would "materially advance the ultimate termination of the litigation" if decided on appeal. 28 U.S.C. § 1292(b). Defendants argue that, "if the Ninth Circuit reverses this Court, then the case is resolved in its entirety." (Mot. at 19 (internal quotation marks, citation, and alteration omitted). As the Court previously explained in its Order, *see* (Order at 17), however, Defendants' narrow focus on the question of termination overlooks Plaintiff's allegations concerning various conduct Defendants engaged in before and after terminating Plaintiff from *The Mandalorian*. *See also* (ECF No. 37 at 22–23). Because this conduct lacks any obvious artistic or expressive quality, Defendants' affirmative defense cannot be "impenetrable," *Durnford*, 907 F.3d at 603 n.8 (citation omitted), and Plaintiff's lawsuit would move forward with discovery regardless of how the Ninth Circuit might decide the certified question(s). *See also Milton H. Greene Archives*, 2008 WL 11334500, at *11 (concluding that, "[i]f anything," immediate appeal of order on "most significant claim in the case" would only "delay the case further").

Consequently, the Court's decision to deny Defendants' request to certify this case for interlocutory appeal is not only consistent with § 1292(b), but also with the well-recognized "obligation of the Judicial Branch to avoid deciding constitutional issues needlessly." *Christopher v. Harbury*, 536 U.S. 403, 417 (2002). In short, "[t]he salutary principle that the essential facts should be determined before passing upon grave constitutional questions is applicable" here. *Polk Co. v. Glover*, 305 U.S. 5, 10 (1938). And, although Defendants invoke *Green* for the proposition that it is important to "resolv[e] First Amendment cases at the earliest possible junction," (Mot. at 20 (quoting *Green*, 52 F.4th at 800)), the Ninth Circuit in *Green* concluded that, in light of the discovery

the trial court ordered on expressive association, the court had a "record . . . sufficient to resolve the case on the [defendant's] free speech claim," *Green*, 52 F.4th 773, 795. Here, in contrast, the Order makes abundantly clear that, given the allegations in the Complaint, the Court currently lacks a record sufficient to resolve the case based on Defendants' affirmative defense. *See* (Order at 14–16, 19–21).

Defendants also assert that, even if the Ninth Circuit affirmed the Court's Order, appeal would protect Defendants' "constitutional interest in avoiding costly, speech-chilling discovery proceedings." (Mot. at 20). Defendants do not, however, explain how a Ninth Circuit opinion affirming the Court's Order would alleviate the burden of responding to the discovery Plaintiff has propounded to date, nor is it apparent to the Court how such a decision could provide such relief. In any event, arguments regarding discovery—which, the Court notes, were not at issue in the Order—do not appear to have any bearing on the termination of the litigation and do not persuade the Court that certification is appropriate here.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion.

**IT IS SO ORDERED.**

DATED: October 15, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE