DONALD M. FALK (SBN 150256)
dfalk@schaerr-jaffe.com
SCHAERR | JAFFE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 562-4942
Fax: (202) 776-0136

EUGENE VOLOKH (SBN 194464)
evolokh@schaerr-jaffe.com
SCHAERR | JAFFE LLP
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 206-3926

GENE C. SCHAERR (*pro hac vice*)
gschaerr@schaerr-jaffe.com
H. CHRISTOPHER BARTOLOMUCCI (*pro hac vice*)
cbartolomucci@schaerr-jaffe.com
EDWARD H. TRENT (*pro hac vice*)
etrent@schaerr-jaffe.com
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060

*Counsel for Plaintiff*

DANIEL M. PETROCELLI (SBN 97802)
dpetrocelli@omm.com
MOLLY M. LENS (SBN 283867)
mlens@omm.com
KRISTIN MACDONNELL (SBN 307124)
kmacdonnell@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067-6035
Tel: (310) 553-6700
Fax: (310) 246-6779

JONATHAN D. HACKER (*pro hac vice*)
jhacker@omm.com
JOSHUA REVESZ (*pro hac vice*)
jrevesz@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300

*Counsel for Defendants*

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARANO,<br><br>      Plaintiff,<br><br>  v.<br><br>THE WALT DISNEY COMPANY, LUCASFILM LTD. LLC; and HUCKLEBERRY INDUSTRIES (US) INC.,<br><br>      Defendants. | Case No.: 2:24-CV-01009-SPG-SK<br><br>**JOINT STIPULATION REGARDING DISCOVERY ISSUES IN DISPUTE [L.R. 37-2.2]**<br><br>**Discovery Document: Referred to Magistrate Judge Steve Kim**<br><br>Hearing Date: April 23, 2025<br>Hearing Time: 10:00 a.m.<br>Hearing Location:<br>255 E. Temple Street, Los Angeles, CA 90012, Courtroom 540<br>Judge: Mag. Steve Kim<br><br>Discovery Cutoff:<br>August 29, 2025 (fact discovery); September 15, 2025 (expert discovery)<br><br>Final Pre-trial Conference: January 21, 2026<br><br>Trial: February 17, 2026 |

## TABLE OF CONTENTS

PLAINTIFF'S INTRODUCTORY STATEMENT................................................6

DEFENDANTS' INTRODUCTORY STATEMENT...........................................9

PARTIES' CONTENTIONS ABOUT REQUESTS FOR PRODUCTION
THAT REMAIN IN DISPUTE....................................................................12

    A.  POINTS APPLICABLE TO ALL REQUESTS FOR
        PRODUCTION ..................................................................................12

        1.  Plaintiff's global showing in support of motion to compel
            answers to requests for production............................................12

        2.  Defendants' global arguments in opposition to motion to
            compel ....................................................................................14

    B.  SPECIFIC REQUESTS FOR PRODUCTION WITH
        RESPONSES AND OBJECTIONS THAT REMAIN IN
        DISPUTE........................................................................................18

        1.  REQUEST FOR PRODUCTION NO. 31 ...............................18
            SUPPLEMENTAL RESPONSE TO REQUEST FOR
                PRODUCTION NO. 31.......................................................19
            i.  Plaintiff's position...........................................................20
            ii.  Defendants' position. ......................................................23

        3.  REQUEST FOR PRODUCTION NO. 62 ...............................26
            SUPPLEMENTAL RESPONSE TO REQUEST FOR
                PRODUCTION NO. 62.......................................................26
            i.  Plaintiff's position...........................................................26
            ii.  Defendants' position. ......................................................28

        4.  REQUEST FOR PRODUCTION NO. 63 ...............................29
            SUPPLEMENTAL RESPONSE TO REQUEST FOR
                PRODUCTION NO. 63.......................................................29
            i.  Plaintiff's position...........................................................30

1            ii.    Defendants' position. ........................................................31

2       5.    REQUEST FOR PRODUCTION NO. 64 ...............................33

3            SUPPLEMENTAL RESPONSE TO REQUEST FOR

4               PRODUCTION NO. 64 ....................................................33

5            i.    Plaintiff's position..................................................34

6            ii.    Defendants' position. ........................................34

7       6.    REQUEST FOR PRODUCTION NO. 65 ...............................36

8            SUPPLEMENTAL RESPONSE TO REQUEST FOR

9               PRODUCTION NO. 65 ....................................................36

10            i.    Plaintiff's position..................................................36

11            ii.    Defendants' position. ........................................37

12       7.    REQUEST FOR PRODUCTION NO. 66 ...............................38

13            SUPPLEMENTAL RESPONSE TO REQUEST FOR

14               PRODUCTION NO. 66 ....................................................38

15            i.    Plaintiff's position..................................................38

16            ii.    Defendants' position. ........................................41

17 ATTESTATION RE ELECTRONIC SIGNATURES .........................................44

18 ADDENDA:

19     Addendum A:

20       Order Granting Stipulated Request to Extend Pretrial and Trial

21       Schedule (Feb. 28, 2025), Doc. 67

22     Addendum B:

23       [Original] So Ordered Civil Pretrial Schedule and Trial Order

24       (Aug. 14, 2024), Doc. 56

25     Addendum C:

26       Defs.' Supplemental Responses and Objections to Carano's First

27       Set of Requests for Production (Feb. 5, 2025)

28

1    Addendum D:

2        Defs.' Supplemental Responses and Objections to Carano's

3        Second Set of Requests for Production (Feb. 5, 2025)

4    Addendum E:

5        Supporting Declaration of Molly M. Lens

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFF'S INTRODUCTORY STATEMENT

Plaintiff Gina Carano seeks documents related to the damages she suffered when Defendants, The Walt Disney Company, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc., unlawfully terminated her from her starring role as Cara Dune, a veteran of the Galactic Civil War and seasoned warrior in *The Mandalorian*, a Star Wars series on Disney+. The Court should compel Defendants to provide this essential information.

<u>Factual Background.</u> Defendants released a Star Wars trilogy—*The Force Awakens*, *The Last Jedi*, and *The Rise of Skywalker*—set 30 years after the fall of the Galactic Empire as depicted in *The Return of the Jedi*. To fill this time gap, Defendants released *The Mandalorian*, set in the New Republic's early years, to critical acclaim in 2019. Cara Dune was one of its most popular characters, so popular that Jon Favreau, *The Mandalorian*'s creator, told Plaintiff that Disney had approved a new spinoff, *Rangers of the New Republic*, with Plaintiff as a lead. *The Mandalorian*'s success led to many other Star Wars shows—including *The Acolyte*, *Andor*, *Ahsoka, The Book of Boba Fett*, *Skeleton Crew*, and *Obi-Wan Kenobi*. And *The Mandalorian & Grogu*, a feature film that continues *The Mandalorian*'s story and would have included Cara Dune, is to be released in theaters next year.

During the Covid lockdowns and after being harassed on social media to express certain viewpoints, including demands that she denigrate police officers and list her pronouns, Plaintiff had had enough and responded by putting "boop/bop/beep," the sound a droid would make, in her X profile. Defendants responded by attacking Plaintiff for expressing her personal political opinions on the topics of the day, ultimately terminating her after she called for more respectful dialogue among people with differing views. They did so in such a public, malicious, and defamatory way that Plaintiff's skyrocketing career came to a sudden halt, the consequences of which are the subject of the disputed discovery requests.

<u>Procedural Background.</u>    Plaintiff sued Defendants for discharging her

because of her political social-media posts while allowing male employees to freely post analogous content. Doc. 1. To support her claims, Plaintiff served Requests for Production on July 30, 2024 (Request Nos. 1-60) and October 17, 2024 (Request Nos. 61-100). Defendants objected, leading to nine letters from Plaintiff (dated October 14, November 11, November 18, December 5, and December 11, 2024, January 21, February 3, February 10, and February 17, 2025), four letters from Defendants (dated January 15, January 24, February 5, and March 7, 2025), and five video conferences (November 4, 2024, November 22, 2024, January 7, 2025, January 29, 2025, and February 12, 2025) lasting nearly 6 hours in all.  After all of this, Defendants agreed to provide responsive, non-privileged documents to most of Plaintiff's Requests. The documents provided to date (a single production of emails between September 13, and mid-November 2020, and certain company policies, all produced on January 31, 2025), however, are responsive to only a few of these Requests. Plaintiff reserves the right to address future productions later.

But here, she focuses on disputed requests relevant to her damages claim:  She seeks compensation information (including contracts) for certain actors in the sequel trilogy, the upcoming film *The Mandalorian & Grogu*, and the Disney+ shows addressed above. Those actors—identified below—played characters comparable to the role Cara Dune was expected to play in Season 3 of *The Mandalorian*, *Rangers of the New Republic*, *The Mandalorian & Grogu*, and—potentially—other future Star Wars programs. Plaintiff also seeks the budgets and the gross and net profits of each of the listed shows to help her establish terms and levels of compensation for other Star Wars actors and to determine if compensation related to any project is affected by the project's performance and/or budget.

Summary of Argument.  For discovery, "[t]he relevance standard is . . . necessarily broad in scope in order to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Wachuku v. JetBlue Airways Corp.*, No. CV-20-1061-VAP-PVCx, 2021

1   WL 4497157, at *3 (C.D. Cal. Apr. 29, 2021) (quotation marks and citation omitted).
2   And evidence can be discoverable even if not ultimately admissible. *Muñoz v. U.S.*
3   *Dep't of State*, No. CV 17-0037 AS, 2019 WL 1455317, at *2 (C.D. Cal. Apr. 2,
4   2019).  Under that standard, each disputed discovery request will help establish the
5   damages Defendants owe Plaintiff because of the professional and emotional harm
6   she suffered when they terminated her. Plaintiff's requests thus properly seek
7   information related to the treatment of others similarly situated to Plaintiff and
8   information necessary to support Plaintiff's expert's opinion on damages. The
9   parties have engaged in multiple conferences in a four-month period on these issues,
10  and two of those conferences were explicitly requested in a Local Rule 37 letter.

11        As discussed further below, Plaintiff has consistently maintained that, when
12  it comes to actor compensation (Request Nos. 31, 62, and 66), she would accept
13  documents sufficient to show compensation—Defendants' proffer—*if* those
14  documents included the actors' contracts. Yet Defendants decline to produce the
15  contracts—and have yet to produce the other information they have agreed to
16  produce.  Defendants have also consistently refused to produce information
17  regarding budget and net and gross profit information for the Star Wars projects
18  addressed in the remaining requests (Request Nos. 63, 64, and 65). The issues are
19  thus fully vetted and ripe for resolution.

20        Finally, Defendants have produced little even where the parties agree.
21  Without more, there can be no depositions, expert discovery, dispositive motions, or
22  trial. Plaintiff has repeatedly and in good faith accommodated Defendants' demands
23  that she narrow her requests, extend time frames for responding, and explain the
24  requests' purpose and scope—as shown by the fact that only six requests remain in
25  dispute. But enough is enough. To allow this case to proceed, the Court should
26  compel Defendants to satisfy their discovery obligations. *See, e.g., Hallett v.*
27  *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (recognizing such authority).

28

# DEFENDANTS' INTRODUCTORY STATEMENT[1]

Although Plaintiff's far-reaching discovery demands suggest otherwise, this is a single-plaintiff dispute about an actress who appeared on seven episodes of *The Mandalorian*, a streaming television series on Disney+. Yet, based on nothing more than an *unsupported* claim that she was "promised" other roles and that her "damages experts" purportedly want the information, Plaintiff is seeking extensive—and competitively sensitive—discovery into actors' contracts and budget and profit information across various *Star Wars*-related projects in which Plaintiff had no involvement. To be clear, Plaintiff has not even taken any discovery to support her bald claims that she was "promised" a role in the forthcoming motion picture *The Mandalorian and Grogu*, or the once-contemplated but never-greenlit series *Rangers of the New Republic*. In fact, Defendants have already provided verified discovery responses confirming that Plaintiff, Cara Dune—the character that Plaintiff played during *The Mandalorian*'s first two seasons—was not even in the first script that Lucasfilm received for *The Mandalorian and Grogu*. Likewise, Defendants have already provided verified responses confirming that *Rangers of the New Republic* was never greenlit.

Moreover, even though Defendants disagree that *any* of the information is relevant, Defendants nevertheless agreed to produce—on an attorneys'-eyes-only basis—documents sufficient to show much of the requested compensation information. Plaintiff offers no argument why she needs more, much less why such information is consistent with Rule 26's proportionality requirement. Especially in view of the compensation information defendants have *already agreed* to provide,

---

[1] Given the limited issues before the Court, Defendants will not respond to Plaintiff's statements about the merits of the parties' positions. Defendants do emphasize, however, that the issues in the case are hotly contested. Indeed, while Plaintiff makes many claims as to purported facts in her portion of the joint stipulation, she tellingly provides no support for them.

1   there's no conceivable justification for Plaintiff's far-ranging, disproportionate
2   demands for confidential, proprietary, and irrelevant information such as the
3   complete contracts of non-party actors, let alone for *Star Wars* films and shows
4   going back 10 years or all the budgets and gross and net profit documents for such
5   films and shows.

6          Plaintiff's motion fails for an even more fundamental reason—her failures to
7   comply with Local Rule 37-1 and this Court's rules.  Just last month, Plaintiff filed
8   papers with this Court, confirming that "the Parties have diligently and in good faith
9   been conducting fact discovery, which has been both extensive and cooperative."
10  *See* Dkt. 66;  *see also* Dkt. 66-1 (Schaerr Decl.) (explaining that "[t]he Parties
11  worked together diligently and in good faith to resolve Defendants' concerns and
12  objections" to Plaintiff's requests for production and that "Defendants have already
13  produced documents totaling nearly 10,000 pages").  In the intervening weeks,
14  Defendants have made further productions, with Defendants' productions now
15  totaling upward of 50,000 pages.[2]  Now, with her portion of the joint stipulation,
16  Plaintiff offers new arguments and attempts to convince the Court that "enough is
17  enough" in an attempt to force Defendants to complete their productions within
18  seven days—even though Plaintiff does not even attempt to justify this draconian
19  deadline.  Mot. at 8.  Nor could she given that discovery is not set to close until
20  August 29, 2025.  Moreover, Plaintiff fails to advise the Court that her productions,
21  too, are *ongoing*.

22         To recount the basic facts, which are set forth in more detail in the
23  accompanying declaration of Molly M. Lens, Plaintiff's *first* invocation of Local
24  Rule 37 was the service of a non-compliant joint stipulation on January 23, 2025,
25  which she subsequently withdrew.  *See* Lens Decl. ¶¶ 6–8.  In the parties' ensuing
26  discussions—whether in written correspondence or actual meet-and-confer

---

28  [2] Plaintiff, in contrast, has produced approximately 10,000 pages.

discussions—the parties *never* discussed Plaintiff's instant demand that Defendants be ordered to complete their productions in seven days.  *See* Lens Decl. ¶¶ 9–10, 12–14, 23.  To the contrary, after the parties' Rule 37-1 conference on February 12, Plaintiff confirmed that the joint stipulation would be limited to "Request for Production Nos. 31, 62-66."  *See id.*, Ex. 9 at 51.  Yet Plaintiff now sneaks in a request for an unjustified date certain for completion of Defendants' document productions in response to every request for production *except* Request Nos. 31 and 62–66.  Plaintiff likewise *never* attempted to comply with this Court's standing order requirement that she "include in [her] meet-and-confer discussions the relevance and proportionality factors set forth in Rule 26(b)(1), as amended in December 2015."  *See* Steve Kim, Standing Order on Discovery Disputes (Feb. 2018) at 2.  And she omits all three certifications required by this Court's rules.

To be clear, before Plaintiff prematurely terminated them, the parties' meet-and-confer discussions were unquestionably fruitful, as even Plaintiff admits.  Case in point, the parties' February 12 discussion included disputes as to various interrogatories, requests for admission, and requests for production.  *See* Lens Decl. ¶ 13.  After this productive discussion, Defendants sent Plaintiff proposals to resolve the outstanding disputes, as Defendants understood them.  *See* Lens Decl. ¶ 21.  Plaintiff then chose to accept some of the proposals, reject others, and serve her portion of the joint stipulation—without sending Defendants a Rule 37-1 letter that actually identifies the remaining issues, much less explains why Defendants' proposals were unsatisfactory or why Plaintiff believes her requests are proportional.  *See* Lens Decl. ¶¶ 23–24.

Defendants respectfully submit that this Court should enforce Local Rule 37 and the Court's standing order and summarily dismiss the joint stipulation. Defendants further seek a sanction in the amount of $5,000, a sum far less than Defendants' attorneys' fees in opposing this non-compliant motion.  *See* Lens Decl. ¶ 26.

## PARTIES' CONTENTIONS ABOUT REQUESTS FOR PRODUCTION THAT REMAIN IN DISPUTE

**A.    POINTS APPLICABLE TO ALL REQUESTS FOR PRODUCTION**

      **1.    Plaintiff's global showing in support of motion to compel answers to requests for production**

There is only one category of requests for production still in dispute. It concerns contracts and compensation for similarly situated actors and budget and profit information for comparable programs (Request Nos. 31, 62-66). At the outset, however, the parties address various general objections applicable to most, if not all, of the requests in dispute. Each discovery request at issue and any responses/objections thereto are included verbatim below. Many of the issues are similar and easier to address globally rather than request by request.

The following points are applicable to most of the six Requests for Production at issue here.

Defendants should be compelled to respond to all the disputed requests for production. The Federal Rules of Civil Procedure allow a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Such information need not be admissible at trial to be discoverable. *Muñoz v. U.S. Dep't of State*, No. CV 17-0037 AS, 2019 WL 1455317, at *2 (C.D. Cal. Apr. 2, 2019) (quoting Fed. R. Civ. P. 26(b)(1)). "[R]elevance for purposes of discovery is defined very broadly." *Id.* (quoting *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998)). This is true even after the 2015 amendments. *Sci. Games Corp. v. AGS LLC*, No. 2:17-CV-00343-JAD-NJK, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017). Relevance and proportionality are thus the operative questions for whether information is discoverable, and the party opposing discovery "carr[ies] a heavy burden of showing why discovery [should be] denied." *Muñoz,* 2019 WL

1455317, at *2 (alterations in original) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

1. Following the meet-and-confer meetings, the parties have resolved certain objections to most of the requests. Accordingly, Plaintiff does not raise those here. But she retains the right to revisit those requests after reviewing documents actually produced, which to date have been very limited.

This general delay should also be addressed by the Court. *See Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 7–8 (D.C. Cir. 2015). Specifically, the Court should impose a deadline by which Defendants must provide the documents they have already agreed to produce. Plaintiff is specifically requesting that the material at issue here be produced within seven days of the Court's ruling on this Motion to Compel.

2. The court should also reject Defendants' arguments against producing the remaining documents. A party cannot carry its heavy burden of opposing facially legitimate discovery requests with boilerplate objections, which are "inadequate and tantamount to making no objection at all." *Dewidar v. Nat'l R.R. Passenger Corp.*, No. 17CV62-CAB(RBB), 2018 WL 280023, at *5 (S.D. Cal. Jan. 3, 2018) (quotation marks and citation omitted). Yet, Defendants' objections to multiple requests for production make no attempt to go beyond such impermissible boilerplate objections, contrary to the federal rules and this Court's standing order. *See* Mag. Judge Kim's Standing Order on Discovery Disputes at 2 (Feb. 2018). Each of Defendants' responses at issue here relies upon such boilerplate objections.

For example, Defendants' responses to the requests at issue, specifically, Request No. 31, Request No. 62, Request No. 63, Request No. 64, Request No. 65, and Request No. 66 each have some variation of the phrase "overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case." Defendants' response to Request No.

13

31 also argues—without explaining why—that the request is "vague and ambiguous" as well as "argumentative." Such boilerplate objections should be summarily overruled. *See, e.g.*, *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (relevance and overbreadth); *Microsoft Corp. v. Hertz*, No. C04-2219C, 2006 WL 1515602, at *2 (W.D. Wash. May 24, 2006) (vagueness, overbreadth, ambiguity, and redundancy); *Baugh v. Martin*, No. 2:22-CV-2342-ODW-SK, 2023 WL 2628611, at *2 (C.D. Cal. Feb. 9, 2023) (Kim, Mag.) (privacy).

Further, Defendants' attempt to artificially narrow the requests misses the nature of Plaintiff's claims and Defendants' defenses and hinders her ability, through discovery, to obtain evidence that would help establish the nature and extent of the disparate treatment and damages she suffered from Defendants' conduct. The Federal Rules of Civil Procedure provide for such latitude in discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"). For that reason, the Court should compel Defendants to produce the documents requested, including those they have previously agreed to produce. And the Court should award such other relief as it deems appropriate.

### 2.    Defendants' global arguments in opposition to motion to compel

***First***, Plaintiff's motion should be summarily rejected due to her repeated failure to comply with Local Rule 37-1, this Court's Modified and Supplemental Requirements for Pre-Filing Conference of Counsel Under Rule 37-1 ("Supplemental Rule 37-1 Requirements"), *and* this Court's Standing Order on Discovery Disputes ("Standing Order"). The heart of Local Rule 37-1 is that the parties engage in a good-faith discussion to try to resolve their disputes *before* seeking court intervention. *See, e.g., Zissa v. Cnty. of Los Angeles*, 2019 WL

1   13074698, at *7 (C.D. Cal. Nov. 7, 2019) ("Local Rule 37 requires counsel to
2   figuratively and sometimes literally roll up their sleeves and try to work out or at
3   least narrow their disputes, including 'specifying the terms of the discovery order
4   to be sought,' before filing motions . . . Issues not discussed by counsel, or relief
5   not previously proposed to opposing counsel, should not appear in the first
6   instance in a discovery motion or joint stipulation.").  This Court's Supplemental
7   Rule 37-1 Requirements further emphasize that "[i]n no circumstances will
8   exchanges of solely written electronic communications (via email, text, or the
9   like) satisfy the pre-filing conference requirement; they may only supplement—
10  but cannot substitute for—the mandatory in-person, video, or telephonic
11  conference of counsel."  The Standing Order likewise reiterates "[e]mails and
12  written correspondence may supplement, but shall not replace, required
13  telephonic and in-person conferences of counsel to resolve discovery disputes."

14          Yet the parties *did not* discuss Plaintiff's demand for Defendants to
15  complete their productions within seven days of a ruling during the parties'
16  conference on January 29 or Rule 37-1 conference on February 12.  *See* Lens
17  Decl., ¶¶ 9, 13.[3]  Nor was the request discussed during any of the parties' prior
18  discussions.  *See* Lens Decl., Ex. 4 at 26 (explaining, in response to Plaintiff's
19  prior, withdrawn joint stipulation, how "Carano never once raised this request
20  during the parties' discussions – much less revealed that she sought to use
21  Defendants' ongoing good-faith attempts to narrow and resolve disputes against
22  them.");  *see also* Lens Decl. ¶¶ 9–10, 12–14, 23.  For this reason, Plaintiff
23  cannot—and does not—provide *any* of the three mandatory certifications required

24

25  [3] Plaintiff likewise cannot point to a Local Rule 37-1 letter raising this issue.  To
26  the contrary, her February 10 letter does not mention this request at all.  Indeed, the
    only "correspondence" that Defendants can identify with this request is in a prior
27  *joint stipulation* that Plaintiff *withdrew* due to her prior failure to comply with
28  Local Rule 37-1.  *See* Lens Decl. ¶¶ 6–8.

by this Court's Supplemental Rule 37-1 Requirements.[4]  Plaintiff likewise failed to satisfy this Court's Standing Order's requirement that the parties "include in their meet-and-confer discussions the relevance and proportionality factors set forth in Rule 26(b)(1), as amended in December 2015."

Plaintiff should be held to the same requirements as other litigants in the Central District.[5]  *See, e.g.*, *Lumber Liquidators, Inc. v. Sullivan*, 2012 WL 4464867, at *4 (C.D. Cal. Aug. 31, 2012) (denying discovery motion for failure to comply with Local Rule 37); *So v. Land Base, LLC*, 2009 WL 2407954, at *2 (C.D. Cal. Aug. 4, 2009) (same); *Zissa*, 2019 WL 13074698, at *7 (same); *Arroyo v. Cervantes*, 2019 WL 8755115, at *1 (C.D. Cal. Aug. 16, 2019) (same).  This is especially true given that Plaintiff chose to ignore this Court's express and repeated admonitions about the consequences of violating Local Rule 37-1.  *See e.g.*, Supplemental Rule 37-1 Requirements ("Failure to certify all three statements as specified here in the notice of any motion to compel may lead to the striking of that motion without further notice.").  This Court's Supplemental Requirements further advise that "[f]ailure to comply with any part of this order may result in discovery sanctions, including payment by the noncompliant party and/or its counsel of the opposing party's reasonable attorney's fees."

Consistent with the above authority, Defendants respectfully request that Plaintiff's joint stipulation be rejected in its entirety and that Plaintiff be sanctioned in the amount of $5,000, a sum that is far less than Defendants' attorneys' fees in opposing this non-compliant motion.  *See* Lens Decl. ¶ 26.

---

[4] Naturally, Defendants thus disagree with Plaintiff's contention in the accompanying notice of motion that "[e]ach of the issues addressed in the Stipulation was addressed during one or more of those conferences."

[5] With their *pro hac vice* applications, Plaintiff's counsel certified that they were familiar with this Court's Local Rules.

***Second***, and independently, Plaintiff's motion is inherently inconsistent with her acknowledgment to this Court less than a month ago that "the Parties have diligently and in good faith been conducting fact discovery, which has been both extensive and cooperative." *See* Dkt. 66. Indeed, just last month the parties obtained an agreed-upon extension of the discovery schedule to "allow[] additional time for the Parties to produce and review agreed upon documents." Dkt. 66; *see also* Dkt. 67. Having confirmed Defendants' good faith, extensive and cooperative participation in fact discovery, and having obtained an extension to enable the parties to complete such productions, Plaintiff should not be permitted to immediately turn around and now claim otherwise. This is especially true given that—per the Court's revised scheduling order—fact discovery is not set to conclude until ***August 29, 2025***.

Put simply, even leaving aside her failure to comply with Local Rule 37, Plaintiff's motion is premature. Defendants (and Plaintiff herself) are actively producing documents, and the parties have largely reached agreement on the scope of Defendants' productions. Further, even as to the few remaining disputed document requests, Defendants have *already agreed* to provide certain information. Rather than even considering that information, Plaintiff chose to rush to this Court, arguing that she is entitled to more but—critically—never explaining *why* she needs more.

***Third***, and relatedly, the Court should reject Plaintiff's suggestion that Defendants are relying on general objections. As laid out in their objections, and further elucidated below, Defendants have *specific* concerns with respect to each disputed request. Indeed, it is Plaintiff—not Defendants—who seeks to buttress her motion with generic arguments about relevance. Case in point, Plaintiff attempts an end-run around this Court's standing order's prohibition on citing pre-2015 case law regarding relevance by citing to a 2019 case that repeatedly quotes such outdated standards. *See* Mot. at 8, 12–13. And, despite the requirements of

17

1  this Court's standing order, Plaintiff never addressed *why* she contends the
2  requested information is proportional to her purported needs—especially given
3  her agreement that the information is sufficiently sensitive that it "should" be
4  designated as "Attorneys' Eyes Only." Mot. at 21–22, 27, 30, 39–40.  Likewise,
5  Plaintiff never grapples with proportionality in light of Defendants' agreement to
6  provide much of the information requested.  Rather, Plaintiff asserts that she
7  should get what she wants.  That is not the standard under Rule 26.

8      Put simply, while Defendants do not dispute Plaintiff's entitlement to
9  certain compensation-related information to ground her speculative damages
10 assessment, Defendants *do* dispute that Plaintiff should be given carte blanche to
11 probe highly confidential and commercially sensitive nonparty actor contracts and
12 film and series budgets and profits.  While Defendants have worked with Plaintiff
13 to narrow the discovery disputes, Plaintiff's remaining requests do not seek
14 relevant information, and certainly are not proportional to the needs of the case,
15 and they should be denied on that basis.  *See Akiva Israel v. Moreno*, 2025 WL
16 736574, at *2 (C.D. Cal. Feb. 7, 2025) (Kim, Mag.) ("Not every relevant
17 document must be produced if it is not proportional to the needs of the case.");
18 *Spence v. Kaur*, 2019 U.S. Dist. LEXIS 138462, *3–4 (E.D. Cal. Aug. 14, 2019)
19 (explaining that "[t]he party seeking to compel discovery has the burden of
20 establishing" satisfaction of Rule 26(b)(1)).

21 **B.    SPECIFIC    REQUESTS    FOR    PRODUCTION    WITH**
22 **RESPONSES    AND    OBJECTIONS    THAT    REMAIN    IN**
23 **DISPUTE**

24     The six individual requests on which the parties have not come to an
25 agreement are Requests 31, 62, 63, 64, 65, and 66, each of which—as addressed
26 above—concerns Plaintiff's claim for damages.

27     **1.    REQUEST FOR PRODUCTION NO. 31**
28 All contracts and Documents showing all compensation provided to lead

18

1   actors on *The Mandalorian* or similar Star Wars series on Disney+, including but
2   not limited to contracts for Pedro Pascal, Carl Weathers, Amandla Stenberg (from
3   *The Acolyte*), Diego Luna (from *Andor*) and Rosario Dawson (from *Ahsoka*).

4   **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 31**

5       Defendants incorporate their Preliminary Statement and General
6   Objections.[6] [*see* Add. C] Defendants further object to this Request on the grounds
7   that "lead actors" is vague and ambiguous. Defendants further object to this
8   Request as argumentative to the extent that it suggests that Carano was a "lead
9   actor" on *The Mandalorian*. Defendants further object to this Request as
10  argumentative to the extent that it suggests that *The Mandalorian* is "similar" to
11  the other identified shows. Defendants further object to this Request on the
12  grounds that it is overbroad, unduly burdensome, and seeks documents that are
13  not relevant to any claim or defense nor proportional to the needs of this case,
14  insofar as it seeks contracts and documents concerning compensation of "lead
15  actors," including compensation for roles other than those in Seasons 1 and 2 of
16  *The Mandalorian*. Defendants further object to this Request on the grounds that
17  it seeks personal and private information and/or information subject to
18  confidentiality obligations, which, if disclosed, would unduly and improperly
19  invade the protected privacy rights of employees/third-party nonlitigants.
20  Defendants further object to the extent that this Request seeks information
21  protected by the attorney-client privilege, work product doctrine, or other
22  applicable privileges.

23

24  ─────────────────
25  [6] Defendants repeat this statement throughout their responses; a copy of
    Defendants' Preliminary Statement and General Objections to Plaintiff's First
26  Request for Production (Request Nos. 1–60) is attached hereto as Addendum B,
    and Defendants' Preliminary Statement and General Objections to Plaintiff's
27  Second Request for Production (Request Nos. 61–100) is attached hereto as
28  Addendum C.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

### i.    *Plaintiff's position.*

The main dispute here is whether Defendants should be required to produce the actors' contracts along with other documents sufficient to show their compensation.  Plaintiff maintains that the contracts themselves are relevant and should be produced, but that issue remains unresolved.

Plaintiff agreed during the meet-and-confer process to a portion of Defendants' proposal, namely, to accept documents sufficient to show the requested compensation information (potentially spreadsheets showing actual compensation), provided that the information included contracts. Plaintiff repeated this point in a February 10, 2025 letter preparatory to the February 12, 2025 meet and confer. In that letter, she agreed to documents sufficient to show compensation "provided that the documents produced include the contracts for the actors identified in that request." Defendants again objected to producing the contracts in that meeting, and Plaintiff then again reiterated the importance of contracts being included in her February 17, 2025 letter. Defendants reaffirmed by letter on March 7, 2025, that they "remain unwilling to produce" any contracts because, according to Defendants, they "add nothing." This Court's resolution is necessary to resolve this dispute that has been thoroughly vetted by the parties.

The Court should compel production of the contracts Plaintiff seeks in this request. The contracts for the two actors in *The Mandalorian*—the very series in which Plaintiff also appeared—are highly relevant to what Plaintiff may have received had she not been unlawfully terminated by Defendants. Further, disparities between the terms of her agreement and Defendants' agreements with Carl Weathers—who held a similar role to Plaintiff in *The Mandalorian*—may

also be relevant, not only to damages, but also to the merits of Plaintiff's claims. As to the other actors that are the subject of this request, Pedro Pascal played the lead in *The Mandalorian*, Amandla Stenberg played the lead in *The Acolyte*, Diego Luna played the lead in *Andor*, and Rosario Dawson—in addition to appearing several times in *The Mandalorian*—played the lead character in *Ahsoka*. Each of these characters thus played a role comparable to the role that—as addressed above—Jon Favreau promised Plaintiff that Cara Dune would play in *Rangers of the New Republic*.

This request thus goes directly to Plaintiff's claimed damages as it will reveal pay information of other actors on Defendants' Star Wars shows in positions comparable to the one Plaintiff had on *The Mandalorian* and the one promised Plaintiff in *Rangers of the New Republic*. Indeed, Plaintiff intentionally limited her request to the actor most comparable to her in *The Mandalorian* (Carl Weathers) and only the lead actors from other Disney+ Star Wars shows because of her conversation with Jon Favreau. Accordingly, the actors' contracts are relevant to Plaintiff's claims.

As part of their response, Defendants assert general objections claiming such information is irrelevant to Plaintiff's damages because it seeks information "for roles other than those in Seasons 1 and 2 of *The Mandalorian*." Yet, an actor's pay for subsequent seasons and series—including Season 3 of *The Mandalorian* or roles similar to those promised to Plaintiff in *Rangers of the New Republic*—is clearly probative of what Plaintiff could have expected to earn had Defendants not terminated her in February 2021. Defendants might disagree with any suggestion that Plaintiff was a lead actor or that other Star Wars shows are sufficiently similar to *The Mandalorian*, but such disagreement does not mean that Defendants can simply withhold documents that are clearly within the scope of Rule 26.

Defendants also object that Request No. 31 seeks personal and private

1    information of those not before the court. But such information could—and

2    indeed should—be provided confidentially, consistent with the terms of the

3    Stipulated Protective Order that this Court entered. And such limited privacy

4    interests do not overcome Plaintiff's entitlement to the documents, especially

5    when their confidentiality is well protected. *Multiven, Inc. v. Cisco Sys., Inc.,* No.

6    C 08-05391 JW (HRL), 2010 WL 2607135, at *3 (N.D. Cal. June 22, 2010).

7    Indeed, Plaintiff agreed to accept the responsive documents under an "Attorneys'

8    Eyes Only" designation so long as that included her experts, who will evaluate

9    the information.

10       Defendants' other claim that "lead actors" is ambiguous or vague is not

11   well taken. Defendants cannot create ambiguity—they must show it. As one court

12   in this circuit explained, "[i]t is not ground for objection that a request is

13   'ambiguous' unless it is so ambiguous that the responding party cannot, in good

14   faith, frame an intelligent reply." *Schmitz v. Asman,* No. 2:20-CV-00195-DJC-

15   CKD-PS, 2024 WL 1160539, at *3 (E.D. Cal. Mar. 18, 2024) (citation omitted).

16   This means that parties should "attribute ordinary definitions to terms" in

17   discovery requests. *Id.* (quotation marks and citation omitted). That inquiry should

18   be governed by "reason and common sense." *Boston v. ClubCorp USA, Inc.,* No.

19   CV 18-3746 PSG (SS), 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019)

20   (quotation marks and citation omitted). And that general rule is easy enough to

21   implement here, given that Plaintiff provided a list of actors that she considered

22   to be the "lead actors" of their respective Disney+ or similar Star Wars programs.

23   Responsive documents will thus include information about the listed actors and

24   others like them with prominent or lead roles in similar programs. As the Supreme

25   Court has recognized, "a word is known by the company it keeps." *Yates v. United*

26   *States*, 574 U.S. 528, 543 (2015). That general rule applies with equal force here.

27       For all these reasons, Defendants should be compelled to produce those

28   documents sufficient to show the named actors' compensation, including

22

contracts, for the relevant programs.[7]

## ii.    *Defendants' position.*

First, while the request itself is broader, Plaintiff agreed to narrow this request to the contracts and compensation information for Pedro Pascal, Carl Weathers, Amandla Stenberg (from *The Acolyte*), Diego Luna (from *Andor*) and Rosario Dawson (from *Ahsoka*).    *See* Lens Decl., Ex. 6 at 35 (describing Defendants' offer); Lens Decl., Ex. 7 at 3 (Plaintiff viewing the named actors as a "a potential resolution of Request for Production No. 31").    Given the highly confidential and commercially sensitive nature of the actor contracts as well as compensation information contained therein, Defendants initially refused to produce any documents.    As part of the parties' meet-and-confer efforts, however, Plaintiff argued that she required the compensation information as part of her claimed damages analysis.    Specifically, Plaintiff argued that she wanted to see the Season 3 compensation for *The Mandalorian* to support her speculative claim that she would have been in a third season of the show and to see compensation information for various other Disney+ *Star Wars* productions based on her speculation that she would have had a lead role in another such series.    To be clear, Defendants do not agree that she would have been in Season 3 of *The Mandalorian*, much less that she would have been a lead in another series—and note that Plaintiff provides no support for such sweeping statements.

To avoid the need for court intervention, however, Defendants offered to produce—on an attorneys'-eyes-only basis[8]—a chart showing compensation

---

[7] Plaintiff also agreed to withdraw Request No. 52 seeking "All Documents showing compensation for each actor in Seasons 1 and 2 of *The Mandalorian*" should Defendants provide the information requested in Request No. 31. Accordingly, Plaintiff reserves the right to revisit Request No. 52 depending on the information provided in response to Request No. 31.

[8] Defendants' agreement to provide all of the compensation and/or contracts referenced herein is subject to the provision that the information will be produced

1    (including components thereof) to Pedro Pascal, Carl Weathers, Amandla
2    Stenberg, Diego Luna, and Rosario Dawson.  Plaintiff has confirmed that she is
3    amenable to receiving a chart containing this compensation information, but she
4    also insists that the contracts themselves be produced.  Thus, the only question for
5    the Court is whether Plaintiff can show that she requires the contracts themselves,
6    in addition to the compensation information contained in those contracts.

7        Plaintiff's own arguments underscore that she cannot.  Indeed, with one
8    limited exception, Plaintiff's arguments pertain exclusively to the need for
9    compensation information.  All these arguments are thus *irrelevant* to the limited
10   issue before the Court, as Defendants have already agreed to provide
11   compensation information in a summary form.

12       The only non-compensation-related proffer is the following solitary
13   sentence: "disparities between the terms of her agreement and Defendants'
14   agreements with Carl Weathers—who held a similar role to Plaintiff in *The*
15   *Mandalorian*—may also be relevant, not only to damages, but also to the merits
16   of Plaintiff's claims." Mot. at 20.  As an initial matter, this is a new argument that
17   was not raised during the parties' meet-and-confer discussions and should be
18   accordingly ignored.   But, to moot this dispute, Defendants will agree to produce
19   Mr. Weathers' contract, redacted for privacy, for Season Three of *The*
20   *Mandalorian*.[9]

21       Defendants, however, should not have to produce the balance of the
22
23   ─────────────────
     on attorneys'-eyes-only basis.   Plaintiff does not dispute that this sensitive
24   information is entitled to such treatment; to the contrary, she agrees that it "should"
     be so designated. *See* Mot. at 22.
25   [9]As Mr. Weathers has unfortunately passed away, his contract does not implicate
26   all of the same confidentiality concerns as the others' contracts do.  That said,
     Defendants would apply limited redactions for non-relevant personally identifiable
27   information, such as Mr. Weathers' loanout company, social security number, and
28   representation information.

1   nonparties' contracts.  *See Waring v. Geodis Logistics LLC*, 2020 U.S. Dist.

2   LEXIS 256776, at *20–21 (C.D. Cal. Sep. 28, 2020) (denying discovery into

3   evidence about a nonparty contract in an employment discrimination case and

4   because it was "not publicly accessible" and "Defendant likely derives economic

5   value from the information not being known to the public").  Because of the

6   privacy concerns contained in these nonparty contracts, in addition to collecting,

7   reviewing and producing them, Defendants would have to notify the respective

8   actors of the public disclosures as a matter of talent relations and courtesy.  Courts

9   must balance "whether privacy can trump discovery" on a "case-by-case" basis.

10  *Baugh v. Martin*, 2023 WL 2628611, at *1 (C.D. Cal. Feb. 9, 2023) (Kim, Mag.).

11  Further, "while discovery is a valuable right and should not be unnecessarily

12  restricted, the necessary restriction may be broader when a nonparty is the target

13  of discovery."  *Waring*, 2020 U.S. Dist. LEXIS 256776, at *21 (C.D. Cal. Sep.

14  28, 2020).

15      Plaintiff claims these privacy interests do not overcome her "entitlement to

16  the documents," but overlooks the fact that there is no "entitlement" to

17  unnecessary information.  Mot. at 21; *see Sarieddine v. Big Bang Vape Co., LLC*,

18  2018 WL 6136765, at *1 (C.D. Cal. May 23, 2018) (Kim, Mag.) (denying motion

19  to compel tax returns because absent a "compelling need" due to the information

20  therein being "not otherwise readily obtainable," "unsupported speculation" that

21  tax returns would reflect business income or expenses was insufficient);

22  *Kovalenko v. Kirkland & Ellis LLP*, 2024 U.S. Dist. LEXIS 27632, *11 (N.D. Cal.

23  Feb. 16, 2024) (granting motion to quash document request where "it would [] be

24  a fishing expedition for evidence whose relevance is speculative at best" and

25  "speculative, and at best marginally relevant evidence, is not good enough to

26  overcome [a party's] privacy interests).

27      Plaintiff has failed to show why non-compensation terms in these actors'

28  contracts would be relevant, much less proportional, to the needs of her case.

Because Defendants' compromise proposal fulfills Plaintiff's purported need for compensation information to calculate her speculative damages, Defendants respectfully ask the Court to enforce their proposal subject to an Attorneys' Eyes Only confidentiality designation.

### 3.    REQUEST FOR PRODUCTION NO. 62

All Documents, including all contracts or other material showing the compensation for Oscar Isaac, John Boyega, and Kelly Marie Tran for their roles in *The Force Awakens*, *The Last Jedi*, and/or *The Rise of Skywalker*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 62**

Defendants incorporate their Preliminary Statement and General Objections. [*see* Add. D] Defendants further object to this Request as seeking documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents concerning the "contracts or other material showing the compensation" of persons not involved in Seasons 1 and 2 of *The Mandalorian*. Defendants further object to this Request as seeking personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants. Defendants further object to this Request as seeking commercially sensitive information.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

### i.    *Plaintiff's position.*

The three actors identified in this request did not play lead roles in the most

recent Star Wars trilogy. Instead, they played key supporting roles. Oscar Isaac played Resistance starfighter Poe Dameron, John Boyega played former Stormtrooper Finn, and Kelly Marie Tran played maintenance technician Rose Tico. Their roles are similar to the role that Plaintiff anticipated she would play as Cara Dune in the upcoming film *The Mandalorian & Grogu*. Yet Defendants reiterated in their March 7, 2025 letter that they are "unwilling to produce information concerning compensation" for the actors listed above. As explained below, information about their compensation, including their contracts, is relevant to Plaintiff's damages calculation and should be produced.

Plaintiff again explained the importance of receiving "contracts and compensation" for the listed actors in her February 10, 2025 letter to plaintiffs in addition to discussing this request in several of their conferences, including the February 12, 2025 Rule 37-1 meet and confer video conference. And the request goes directly to Plaintiff's claimed damages, as it will reveal pay information of other key supporting actors in Defendants' Star Wars movies. Moreover, contrary to Defendants' suggestion, such information is relevant to damages even though it seeks information of "persons not involved in Seasons 1 and 2 of *The Mandalorian*" because an actor's pay for the movies listed above will be probative of what Plaintiff could have expected to earn had her character been included in either the forthcoming film *The Mandalorian & Grogu* or in other future Star Wars films as she expected based on her conversations with Jon Favreau.

Defendants also object that Request No. 62 seeks personal and private information of those not before the court and commercially sensitive information. But such information could—and indeed should—be provided confidentially, consistent with the terms of the Stipulated Protective Order that this Court has now entered. Indeed, Plaintiff has agreed to accept any production for this request designated as "Attorneys' Eyes Only" as long as such a designation would allow her expert to analyze the documents in preparing the expert report. And any

limited privacy interests do not overcome Plaintiff's entitlement to the documents. *Multiven, Inc. v. Cisco Sys., Inc.,* No. C 08-05391 JW (HRL), 2010 WL 2607135, at *3 (N.D. Cal. June 22, 2010) ("simply asserting a privacy right does not outweigh a party's legitimate right to discover relevant facts"). Defendants maintain that such documents are irrelevant as the movies at issue in this request are different from *The Mandalorian & Grogu.* Yet the compensation, including contracts, of other Star Wars movies are proper consideration for what Plaintiff may have expected from *The Mandalorian & Grogu* and other potential films. Further, the contracts with Oscar Isaac, John Boyega, and Kelly Marie Tran for their roles in *The Force Awakens*, *The Last Jedi*, and/or *The Rise of Skywalker* are likely fundamentally different than the contract of a "guest actor" on a Disney+ program that Plaintiff signed for the first two seasons of *The Mandalorian*, making the contracts themselves equally important as documents sufficient to show what each of these star actors was paid and what Plaintiff could have obtained had she played a role in a Star Wars film as she expected. Defendants should be compelled to provide the requested information.

### ii.   *Defendants' position.*

Plaintiff's request for the highly confidential and commercially sensitive contracts and compensation information for Oscar Isaac, John Boyega, and Kelly Marie Tran for their roles in *The Force Awakens*, *The Last Jedi*, and/or *The Rise of Skywalker* is far further afield than Request No. 31. Plaintiff's argument that this information is somehow relevant to her potential damages is based on unsupported speculation that these "roles are similar to the role that Plaintiff anticipated she would play as Cara Dune in the upcoming film *The Mandalorian & Grogu.*" Mot. at 26. But, even assuming Plaintiff would have been cast in *The Mandalorian & Grogu*, which Defendants dispute, Defendants have already proposed—as part of their effort to avoid motion practice—to produce compensation information for actors from *The Mandalorian* who are reprising

their roles in *The Mandalorian & Grogu*. *See infra* Response to Request No. 66 at 42. This compensation information is more than what is needed for Plaintiff's "damages calculation." Mot. at 27. Indeed, Plaintiff does not attempt to explain how she requires information about other *Star Wars* movies that she was not in, and which stretch back some ten years. Plaintiff's position is especially egregious given that Defendants have already agreed to give her compensation information about the sole *Star Wars* movie she speculates she would have been an actress in. Likewise, while she demands the "contracts" themselves in addition to the compensation information therein, she does not and cannot explain how any such other "terms" would be relevant to her damages calculation.

Thus, for the reasons stated above with respect to Request No. 31 and the additional ones explained above, Plaintiff's Request No. 62 should be denied.

### 4.    REQUEST FOR PRODUCTION NO. 63

All Documents showing the budgets and net and gross profits for the following productions: (1) all seasons of *The Mandalorian*, (2) all seasons of *The Acolyte*, (3) all seasons of *Andor*, (4) all seasons of *Ahsoka*, (5) all seasons of *The Book of Boba Fett*, (6) all seasons of *Obi-wan Kenobi*, and (7) all seasons of *Skeleton Crew*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 63**

Defendants incorporate their Preliminary Statement and General Objections. [*see* Add. D] Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks the "budgets and net and gross profits" of productions, particularly those other than Seasons 1 and 2 of *The Mandalorian*, which have nothing to do with Carano's claims in this action. Indeed, even as to Seasons 1 and 2 of The *Mandalorian*, the requested documents are not relevant to any claim or defense in the case, much less proportional to the needs to the case. Defendants further object to this Request as

1   seeking commercially sensitive information.

2       Subject to and without waiving these specific objections and the General

3   Objections, Defendants are presently meeting and conferring with Carano about

4   the

5   scope of this Request, with Defendants having made a proposal for Carano's

6   consideration concurrent with these responses.

7           **i.**   ***Plaintiff's position.***

8       Although Plaintiff explained multiple times that the budget and profit

9   information requested here is relevant to her expert's analysis of Plaintiff's

10  damages, Defendants maintain there is not "any conceivabl[e] need for this

11  information." Yet there is—as such information is relevant to her claim for

12  damages, as addressed below, and Plaintiff is entitled to such production.

13      Financial information like that requested here is useful in evaluating any

14  program/show that is being analyzed by Plaintiff's experts to offer an opinion

15  about reasonable compensation and potential damages. A show's budget—

16  whether large or small—is relevant to determining the reasonable compensation

17  for an actor playing the titular or main character, as Plaintiff would have done in

18  *Rangers of the New Republic*, as well as to determining the reasonable

19  compensation of supporting characters. Similarly, information about a show's

20  profit or performance, good or bad, is relevant to a reasonable decision to renew

21  the show for a subsequent season. Such information, in turn, could affect an

22  expert's evaluation of the number of seasons/episodes for which Plaintiff could

23  have expected to be hired but for Defendants' unlawful discrimination. The

24  information requested also goes to any potential residual pay based on a show's

25  earnings—a factor that can only be determined if the contracts requested in

26  Request Nos. 31, 62, and 66 are provided.

27      Regarding Defendants' objection that this request seeks commercially

28  sensitive information, such information could—and indeed should—be provided

1  confidentially, consistent with the terms of the Stipulated Protective Order that

2  this Court has now entered. Plaintiff has even agreed to receive such information

3  on an "Attorneys' Eyes Only" designation so long as the information can be

4  shared in confidence with her experts. Given the direct relevance of this request

5  to Plaintiff's damages, Defendants should be compelled to produce any

6  responsive documents.

7       ii.   *Defendants' position.*

8       Plaintiff's request for "[a]ll [d]ocuments" reflecting the budgets, net profits,

9  and gross profits for at least eleven seasons of programming of seven different

10  *Star Wars* streaming series is as irrelevant as it sounds.  The core of Plaintiff's

11  argument is that this wide-ranging financial information is "useful" for her experts

12  to determine "reasonable compensation and potential damages." Mot. at 30.  But

13  even if that were true, and it is not, the substantial burden of producing this

14  commercially sensitive financial information is grossly disproportionate to the

15  needs of the case.

16       <u>Budgets</u>.  Without explanation, Plaintiff posits that "[a] show's budget" is

17  somehow "relevant to determining the reasonable compensation for an actor."

18  Mot. at 30.  That unsupported assertion is not only bare speculation, but a red

19  herring.  After all, Defendants have already agreed to give her compensation

20  information for the many of the requested actors on the series identified in this

21  request.  *See supra* at 23 (explaining that Plaintiff agreed to narrow Request No.

22  31 to Pedro Pascal, Carl Weathers, Amandla Stenberg (from *The Acolyte*), Diego

23  Luna (from *Andor*) and Rosario Dawson (from *Ahsoka*)).  Thus, Plaintiff will have

24  *actual* compensation information to use in her damages analysis.  *See, e.g.*, *Martin*

25  *v. Santa Clara Unified Sch. Dist.*, 102 Cal. App. 4th 241, 257 (2002) (evaluating

26  "the prevailing salaries for comparable positions" in determining the "amount

27  [plaintiff] reasonably could have earned"); *Davis v. Los Angeles Unified Sch. Dist.*

28  *Pers. Com.*, 152 Cal. App. 4th 1122, 1140–41 (2007) ("The measure of recovery

by a wrongfully discharged employee is the *amount of salary he or she would have received*...") (emphasis added).

Moreover, even if film budgetary information *were* relevant (and, to be clear, it is not), Plaintiff's request for "[a]ll [d]ocuments" concerning the budgets is disproportionate to the needs of the case under Rule 26(b)(1). Plaintiff claims that knowing these film budgets will somehow help her experts divine the compensation that she would have received for a role in a series that was never greenlit. As noted above, even if that were true, all that her experts would need is the compensation information of select purported comparators, ***which Defendants have already agreed to provide.*** Instead, she seeks highly confidential, trade secret documents that include line items for every direct cost associated with a production, the vast majority of which has absolutely no bearing on actor compensation. Because the burden of potential production greatly outweighs its likely benefit, this discovery should be denied. *See Frieri v. Sysco Corp.*, 2017 U.S. Dist. LEXIS 124425, at *25-26 (C.D. Cal. Aug. 4, 2017) (denying motion to compel production of documents "of a financial/budgetary nature" as disproportionate to the needs of the case where "[o]ther means and methods and discovery are better suited to obtain the information"); *Munguia-Brown v. Equity Residential*, 2017 U.S. Dist. LEXIS 95104, at *6-8 (N.D. Cal. June, 20, 2017) (finding plaintiffs' request for draft budgets disproportionate to needs of case).

<u>Net and Gross Profits</u>. If that weren't enough, Plaintiff also seeks information about each of the seven shows' "profit or performance," which she argues is somehow "relevant to a reasonable decision to renew the show for a subsequent season," which "in turn, could affect an expert's evaluation of the number of seasons/episodes for which Plaintiff could have expected to be hired." Mot. at 30. This Russian doll of a relevance argument only underscores the speculative nature of this request. Not only does Plaintiff want to cast herself as

the star of a series that was never greenlit, she also wants access to Defendants' highly sensitive commercial information to speculate as to *how long* that non-existent series would last. The Court should not permit discovery based on such conjecture. *See Sarieddine*, 2018 WL 6136765 at *1 (Kim, Mag.) (denying motion to compel tax returns because "unsupported speculation" that tax returns would reflect business income or expenses was insufficient); *Kovalenko*, 2024 U.S. Dist. LEXIS 27632, at *11 (granting motion to quash document request as "speculative, and at best marginally relevant evidence, is not good enough to overcome [a party's] privacy interests").

Plaintiff's back-up argument for this net and gross profit information fares no better. Plaintiff asserts that it "goes to any potential residual pay based on a show's earnings," a form of profit participation sometimes offered to key producers and A-list Hollywood talent. Mot. at 30. But to be clear, and as Defendants have explained to Plaintiff, she is making an incorrect *assumption* about how actors are paid on the *Star Wars* streaming series contemplated by this request. Moreover, Defendants have offered to provide how the specified actors are actually paid to prove up their position that the information is irrelevant.[10] That should be the beginning and end of this request.

## 5.    REQUEST FOR PRODUCTION NO. 64

All Documents showing the budgets and net and gross profits for the following productions: (1) *The Force Awakens*, (2) *The Last Jedi*, and (3) *The Rise of Skywalker*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 64**

Defendants incorporate their Preliminary Statement and General Objections. [*see* Add. D] Defendants further object to this Request as overbroad,

---

[10] Due to the commercially sensitive nature of this information, Defendants do not provide this detail in this public filing.

unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, as it seeks the "budgets and net and gross profits" of productions other than Seasons 1 and 2 of *The Mandalorian*, which have nothing to do with Carano's claims in this action. Defendants further object to this Request as seeking commercially sensitive information.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

### i.    *Plaintiff's position.*

As with Request No. 63, this information is relevant to Plaintiff's claim for damages and Plaintiff is entitled to such production.

In response to this request, Defendants raise the same objections as they raised in response to Request No. 63. And Plaintiff's answer as to the relevance and proportionality of this request is the same. Information about the budgets of the sequel trilogy, *The Force Awakens*, *The Last* Jedi, and *The Rise of Skywalker*, compared against the compensation of actors in those movies playing roles similar to Plaintiff's expected role in *The Mandalorian & Grogu*—the topic of Request No. 62—will be probative of what Plaintiff could have expected to receive had her character been included in a Star Wars feature film, as Plaintiff intends to show at trial was likely. And the net and gross profits of these movies will be relevant to predicting the profits of the forthcoming film *The Mandalorian & Grogu*–which is currently scheduled for release *after* this case goes to trial. Given the direct relevance of this request to Plaintiff's damages, Defendants should be compelled to produce responsive documents.

### ii.    *Defendants' position.*

Plaintiff purportedly seeks the budgets and net and gross profits of the *Star Wars* sequel trilogy, including *The Force Awakens*, *The Last Jedi*, and *The Rise*

<div align="center">34</div>

*of Skywalker*, to demonstrate "what Plaintiff could have expected to receive had her character been included in a *Star Wars* feature film." Mot. at 34. This request is utterly irrelevant and disproportionate.

<u>Budgets</u>. To purportedly justify this discovery, Plaintiff incorrectly assumes (i) she had an "expected role in *The Mandalorian & Grogu*" and (ii) compensation to supporting actors on the *Star Wars* sequel trilogy has a nexus to what supporting actors on *The Mandalorian & Grogu* would make. Mot. at 34. Neither is true. Plaintiff assumes that she, a guest cast member on *The Mandalorian* appearing in seven episodes of that show, somehow had an "expected role in *The Mandalorian & Grogu*." Mot. at 34. Plaintiff then assumes that actor compensation for *The Mandalorian & Grogu* spin-off film is connected to supporting actor compensation on three *Star Wars* films featuring recurring cast and continuing storylines from the Skywalker saga dating back to 1977. Such speculation should not open the door to discovery. *See supra* Defs' Opp. to Request No. 61; *see also Sarieddine*, 2018 WL 6136765 at *1 (Kim, Mag.); *Kovalenko*, 2024 U.S. Dist. LEXIS 27632, at *11.

For the same reasons explained in opposition to Request No. 63, *supra*, this request is also disproportionate to the needs of the case. Plaintiff asserts that the budgets for the *Star Wars* film trilogy are "probative of what Plaintiff could have expected to receive" for a non-existent role on *The Mandalorian & Grogu*. Mot. at 34. But Defendants have *already* agreed to provide documents sufficient to show compensation paid to any recurring actors from *The Mandalorian* reprising their roles on *The Mandalorian & Grogu*. That is more than sufficient. *See supra* Defs' Opp. to Request No. 63.

<u>Net and Gross Profits</u>. Plaintiff's request for net and gross profit information, which she claims will help her "predict[] the profits of the forthcoming film *The Mandalorian & Grogu*," is similarly irrelevant and disproportionate to the needs of the case. Mot. at 34. Just as with compensation to actors on *Star Wars* streaming series, as Defendants have explained to Plaintiff,

35

she is making incorrect assumptions about how actors are paid on *The Mandalorian and Grogu*. Indeed, Defendants have already agreed to provide how any actors reprising their roles from *The Mandalorian* are being paid with respect to *The Mandalorian and Grogu*.[11] Again, that should be the beginning and end of this request.

## 6.    REQUEST FOR PRODUCTION NO. 65

All Documents showing the budget for *The Mandalorian and Grogu*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 65**

Defendants incorporate their Preliminary Statement and General Objections. [*see* Add. D] Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, as it seeks the "budget" of productions, other than Seasons 1 and 2 of *The Mandalorian*, which have nothing to do with Carano's claims in this action. Defendants further object to this Request as seeking commercially sensitive information.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

### i.    *Plaintiff's position.*

As with Request Nos. 63 and 64, the information sought here is relevant to Plaintiff's claim for damages and Plaintiff is entitled to such production. Further, Defendants claim that this request is mooted by their willingness to produce "actual compensation information" does not diminish the independent relevance of the budget information requested here.

---

[11] Again, due to the commercially sensitive nature of this information, Defendants do not provide this detail in this public filing.

The reasons that Request Nos. 63 and 64 are relevant and proportional to the needs of the case apply with even greater force to this request, as information about the budget for *The Mandalorian & Grogu* will be probative of what Plaintiff could have expected to receive had her character been included in that film—as Jon Favreau told her she would be. Indeed, a comparison of budget information with the actor compensation information requested in Request No. 66 is critical to Plaintiff's expert's analysis of her damages. Given the direct relevance of this request to Plaintiff's damage claims, Defendants should be compelled to produce any responsive documents.

### ii. *Defendants' position.*

Seeking even more highly sensitive financial information in this single-plaintiff employment dispute, Plaintiff demands that Defendants produce the budget for their forthcoming film, *The Mandalorian & Grogu*. In support, Plaintiff asserts that "the reasons that Request Nos. 63 and 64 are relevant and proportional to the needs of the case apply with even greater force to this request." Mot. at 36. Not so.

Plaintiff purportedly seeks this information to determine her highly speculative anticipated compensation in *The Mandalorian & Grogu*, while conceding that Defendants ***already agreed*** to give actual compensation information for any actors reprising their roles from *The Mandalorian*. Plaintiff states without explanation that Defendants' agreement to produce this compensation information "does not diminish the independent relevance of the budget information requested here." Mot. at 36. That is nonsensical.

As explained above in opposition to Request No. 64, if Plaintiff's experts want to opine on her compensation for a hypothetical appearance on *The Mandalorian & Grogu*, all they need is the compensation information of the other actors who returned from *The Mandalorian* series. Defendants have already agreed to provide this information. The Court should reject Plaintiff's attempt to

37

1  squeeze Defendants for needlessly duplicative information.

2  ### 7.    REQUEST FOR PRODUCTION NO. 66

3  All Documents showing compensation, including contracts, for all actors
4  in *The Mandalorian and Grogu*.

5  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 66**

6  Defendants incorporate their Preliminary Statement and General
7  Objections. [*see* Add. D] Defendants further object to this Request as overbroad,
8  unduly burdensome, and seeks documents that are not relevant to any claim or
9  defense nor proportional to the needs of this case, as it seeks documents
10  concerning the compensation of "all actors," including persons not involved in
11  Seasons 1 and 2 of *The Mandalorian*. Defendants further object to this Request as
12  seeking personal and private information and/or information subject to
13  confidentiality obligations, which, if disclosed, would unduly and improperly
14  invade the protected privacy rights of employees/third-party nonlitigants.
15  Defendants further object to this Request as seeking commercially sensitive
16  information.

17  Subject to and without waiving these specific objections and the General
18  Objections, Defendants are presently meeting and conferring with Carano about
19  the scope of this Request, with Defendants having made a proposal for Carano's
20  consideration concurrent with these responses.

21  **i.    *Plaintiff's position.***

22  As with Request No. 31, the main dispute here is whether Defendants
23  should be required to produce the actors' contracts along with other documents
24  sufficient to show their compensation. Plaintiff maintains—as she has maintained
25  throughout the parties' meet-and-confer efforts—that the contracts themselves are
26  relevant and should be produced.  Defendants, however, have agreed only to
27  produce compensation information for certain returning actors. Plaintiff has
28  agreed to accept that information, but only if it includes the relevant contracts—

for the same reasons as she provided as to Request No. 31 above.

In addition to returning actors, Plaintiff also requested that the information provided include contracts and other sufficient-to-show data about the compensation of new actors who play a role in *The Mandalorian & Grogu* of similar prominence to that of Cara Dune from the first two seasons of *The Mandalorian*. Defendants clarified in their March 7, 2025 letter that they refuse to produce *any* information about actors of "similar prominence to Cara Dune" because they consider that request to be "impossibly vague." Of course, because the movie will not be released before trial in this case, Plaintiff has no way of evaluating which new characters, if any, will hold such a role, so must rely on Defendants, who created the film in the first place. They can certainly make a good-faith determination on whether there are any new characters who are comparable in stature to the role of Cara Dune in the first two Seasons of *The Mandalorian*.

During the meet-and-confer process, Defendants also proposed redacting the names of those actors for whom they provide a summary of compensation. Plaintiff maintains the identity of the actors is necessary to properly evaluate the information. These issues, as was the case with all the other issues mentioned in this Joint Stipulation, were laid out a final time in detail in Plaintiff's February 10, 2025 letter, in the February 12, 2025 conference, and in Plaintiff's February 17, 2025 follow-up letter. Yet Defendants maintain their objection to producing the contracts even though contracts for a feature film are very different than the contract Plaintiff worked under during Seasons 1 and 2 of *The Mandalorian*. The parties' positions have thus been thoroughly vetted—Plaintiff has long explained the importance of the requested contracts, and Defendants have long agreed to only provide information sufficient to show compensation for actors reprising in *The Mandalorian & Grogu* their role from *The Mandalorian*.

Because the contracts in addition to other documents sufficient to show

compensation for the actors listed above are relevant to Plaintiff's claim for damages, this Court should compel production of documents responsive to Request No. 66. This request goes directly to Plaintiff's claimed damages as it will reveal pay information of actors in *The Mandalorian & Grogu*—a movie in which Plaintiff expected to be cast based on communications with Defendants. And contrary to Defendants' suggestion, such information is relevant to damages even though it seeks information of "persons not involved in Seasons 1 and 2 of *The Mandalorian*" because an actor's pay in this movie will be probative of what Plaintiff could have expected to earn had her character been included, as she expected based on her conversations with Jon Favreau. Because Plaintiff did not know which actors are in roles similar to the role she was expected to play, Plaintiff originally requested compensation for all actors but, as noted above, has agreed to a more narrow production.

As part of their general objections, Defendants further object to this request as irrelevant as it seeks personal and private information of those not before the court and commercially sensitive information. But such information could—and indeed should—be provided confidentially, consistent with the terms of the Stipulated Protective Order that this Court has now entered. Indeed, Plaintiff has agreed to accept any production for this request designated as "Attorneys' Eyes Only," as long as such a designation would allow her expert to analyze the documents confidentially in preparing the expert report. The limited privacy interests on which Defendants rely do not overcome Plaintiff's entitlement to the documents. *Multiven, Inc. v. Cisco Sys., Inc.,* No. C 08-05391 JW (HRL), 2010 WL 2607135, at *3 (N.D. Cal. June 22, 2010) ("simply asserting a privacy right does not outweigh a party's legitimate right to discover relevant facts").

In short, Defendants should be compelled to produce the contracts and sufficient other documents to show compensation for the relevant actors in *The Mandalorian & Grogu*—those reprising roles from Seasons 1 and 2 of *The*

1   *Mandalorian* and any new characters of prominence similar to the role of Cara
2   Dune from Seasons 1 and 2 of *The Mandalorian*.

3       **ii.    *Defendants' position.***

4       Defendants have already offered to produce the compensation information
5   for every actor on *The Mandalorian & Grogu* reprising their role from *The*
6   *Mandalorian*.  While Plaintiff has stated that she is amenable to receiving a chart
7   containing this information, she also now argues that the contracts themselves be
8   produced with the names of the actors unredacted.  This invasive discovery should
9   be denied.

10      ***First***, Plaintiff does not identify a single term in any contract that may be
11  relevant, let alone necessary, to her expert's damages calculation outside of the
12  *compensation information* itself.  As explained above, though the contracts would
13  provide no probative value, they are highly confidential and commercially
14  sensitive for Defendants and the nonparty actors.  *See supra* Response to Request
15  for Production No. 31 at 25.  Plaintiff's demand for contracts is a classic fishing
16  expedition that should be denied.

17      ***Second***, Plaintiff's objection to the redaction of the names of *The*
18  *Mandalorian & Grogu* actors is without merit.  The compensation information
19  itself is what Plaintiff's experts would need to undertake a damages calculation,
20  which Defendants have agreed to produce.  Further, the actors' names are highly
21  confidential and commercially sensitive because *The Mandalorian & Grogu* is a
22  future release and the cast list is not public.  *See Sarieddine*, 2018 WL 6136765,
23  at *1 (Kim, Mag.) (denying motion to compel tax returns because absent a
24  "compelling need" due to the information therein being "not otherwise readily
25  obtainable," "unsupported speculation" that tax returns would reflect business
26  income or expenses was insufficient).  In any event, to further compromise on this
27  request, Defendants have already made clear that they would not redact the names
28  of "individuals publicly confirmed to be featured in the film."  Lens Decl, Ex. 10

1  at 59.    Moreover, Plaintiff's request to view the names of these actors is
2  premature.    Discovery is ongoing and does not close until August 29, 2025.
3  Defendants made clear that, should Plaintiff's experts later assert a need for the
4  redacted actors' names, Defendants would be happy to revisit the issue at that
5  time.  *See* Lens Decl., Ex. 6 at 35.

6        Plaintiff's argument that an Attorney's Eyes Only designation solves this
7  issue is misleading—the sensitivity of these actors' names outweigh the little to
8  no probative value they would add, and Defendants should therefore not be
9  required to divulge these names regardless of designation.  *See telSPACE, LLC v.*
10 *Coast to Coast Cellular, Inc.*, 2014 WL 4364851, at *5 (W.D. Wash. Sept. 3,
11 2014) (finding "reliance on the parties' protective order [was] insufficient to
12 warrant disclosure in light of Plaintiff's inadequate showing of relevance and the
13 burden that disclosure" would place on Defendant); *S.T. by & through N.T. v. Los*
14 *Angeles Unified Sch. Dist.*, 2020 WL 6114904, at *1 (C.D. Cal. Aug. 25, 2020)
15 (Kim, Mag.) (listing "legitimate underlying privacy" of third party-callers as a
16 factor in denying discovery of the names of the callers in a retaliation case where
17 the "basis, timing, and content" of the calls were what was at issue).

18       Because Defendants have already agreed to produce the compensation
19 information for every actor on *The Mandalorian & Grogu* reprising their role
20 from *The Mandalorian*—which is all that Plaintiff's experts would need to
21 calculate her alleged "damages"—Defendants request the Court enforce
22 Defendants' offer subject to the confidentiality protections described herein.

23
24
25
26
27
28

42

DATED: April 2, 2025              SCHAERR | JAFFE LLP

                                  By: */s/ Gene C. Schaerr*
                                      Gene C. Schaerr

                                  *Counsel for Plaintiff*


DATED: April 2, 2025              O'MELVENY & MYERS LLP

                                  By: */s/ Molly M. Lens*
                                      Molly M. Lens

                                  *Counsel for Defendants*

**ATTESTATION RE ELECTRONIC SIGNATURES**

The filer of this document attests that all other signatories to this document, on whose behalf this filing is submitted, concur as to the content and have authorized their signature and filing of the document.

DATED: April 2, 2025

SCHAERR | JAFFE LLP

By: */s/ Gene C. Schaerr*
Gene C. Schaerr

*Counsel for Plaintiff*

44

# ADDENDUM A

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11   GINA CARANO,                    ) Case No.: 2:24-cv-01009-SPG-SK
                                      )
12            Plaintiff,             )
                                      ) **ORDER GRANTING STIPULATED**
13       v.                          ) **REQUEST TO EXTEND**
                                      ) **PRETRIAL AND TRIAL**
14   THE WALT DISNEY COMPANY;        ) **SCHEDULE [ECF NO. 66]**
     LUCASFILM LTD. LLC; and         )
15   HUCKLEBERRY INDUSTRIES (US)     )
     INC.,                           )
16                                    )
17            Defendants.            )
                                      )
18

19        Before the Court is the Parties' Stipulated Request to Extend Pretrial and

20   Trial Schedule (ECF No. 66 ("Stipulation")).  Having considered the Stipulation,

21   and finding good cause therefor, the Court GRANTS the Stipulation and ORDERS

22   that the previously scheduled trial and pretrial dates be modified as follows:

23

24

| Case Event | Deadline/Hearing Date Set in ECF No. 56-1 | Modified Deadline |
|---|---|---|
| Fact Discovery Cut-Off | 04/18/2025 | 08/29/2025 |
| Expert Disclosure (Initial) | 04/11/2025 | 07/18/2025 |
| Expert Disclosure (Rebuttal) | 05/11/2025 | 08/15/2025 |
| Expert Discovery Cut-Off | 06/02/2025 | 09/15/2025 |

25

26

27

28

| Last Date to Hear Motions | 06/11/2025 | 10/29/2025 |
| Last Date to Hear *Daubert* Motions | 07/16/2025 | 12/03/2025 |
| Deadline to Complete Settlement Conference | 07/15/2025 | 12/17/2025 |
| Trial Filings (first round) | 08/13/2025 | 12/17/2025 |
| Trial Filings (second round) | 08/27/2025 | 01/07/2026 |
| Final Pretrial Conference | 09/10/2025 | 01/21/2026 at 3:00 p.m. |
| Jury Trial | 09/29/2025 | 02/17/2026 at 8:30 a.m. |

The currently scheduled trial date and related dates previously set by the Court at ECF No. 56-1 are VACATED.

**IT IS SO ORDERED.**

Dated: _____February 28, 2025_____

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

# ADDENDUM B

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARANO,<br><br>                      Plaintiff,<br><br>     v.<br><br>THE WALT DISNEY COMPANY ET AL,<br><br>                      Defendant. | Case No. CV 24-01009-SPG-SK<br><br>**CIVIL PRETRIAL SCHEDULE AND TRIAL ORDER** |

      The pretrial schedule governing this case is set forth in the far right column labeled "Court Order" located on the parties' Schedule of Pretrial and Trial Dates Worksheet, which accompanies this Order.  If the parties wish to set additional or alternative dates, they must file a stipulation and proposed order setting forth the dates requested and demonstrating good cause.  Setting additional or alternative dates may be especially appropriate in class actions, patent cases, or cases for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA").

      Please refer to the Court's Standing Order Re: Civil Cases for requirements for specific motions, discovery, certain types of filings, courtesy copies, emailing signature items to chambers, alternative dispute resolution, and other matters pertaining to all civil

cases.  A copy of the Court's Standing Order Re: Civil Cases is available on Judge Garnett's webpage at https://www.cacd.uscourts.gov/honorable-sherilyn-peace-garnett.

"Counsel," as used in this Order, includes parties who are represented by counsel and parties who have elected to appear without counsel and are representing themselves in this litigation (hereinafter referred to as "Pro Se Litigants").  Counsel, including Pro Se Litigants, must comply with this Order, the Federal Rules of Civil Procedure, and the Central District of California Local Rules.  *See* L.R. 1-3, 83-2.2.3.  Pro Se Litigants are required to participate in the scheduling conference.

# I.  SCHEDULE OF PRETRIAL AND TRIAL DATES

## A.  Discovery Cut-Off and Discovery Motions.

**1.  Fact and Expert Discovery Cut-offs:**  The cut-off date for discovery is not the date by which discovery requests must be served; it is the date by which all discovery, including all hearings on any related motions, must be completed.  Thus, written discovery must be served and depositions must begin sufficiently in advance of the discovery cut-off date to permit the propounding party enough time, if the party chooses, to challenge via motion practice any responses the party asserts are deficient.

**2.  Expert Disclosures:**  All expert disclosures must be made in writing. The parties should begin expert discovery shortly after the initial designation of experts. The Final Pretrial Conference ("FPTC") and trial dates will not be continued merely because expert discovery has not been completed.  Failure to comply with these or any other orders concerning expert discovery may result in the expert being excluded as a witness.

**3.  Discovery Motions:**  Discovery motions are handled by the Magistrate Judge assigned to the case.  Any motion challenging the adequacy of discovery responses must be filed, served, and calendared before the assigned Magistrate Judge sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted.  The parties are expected to meet and confer to attempt to resolve discovery disputes before filing a discovery motion and must use their best effort

to resolve all discovery disputes in a courteous, reasonable, and professional manner. Counsel must adhere to the Civility and Professionalism Guidelines at: http://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalismguidelines.

**B. Non-Discovery Motions Deadline.**

**1. Meet and Confer Requirement.** The parties are required under Local Rule 7-3 to meet and confer to attempt to resolve disputes before filing a motion. The parties should review the Court's Standing Order Re: Civil Cases for instructions regarding motions to dismiss, motions to amend, and other types of motions. The Court employs special procedures for motions under Federal Rule of Civil Procedure 56 for summary judgment (MSJ), including the parties' preparation of a joint brief and joint related documents. The parties should review the Court's MSJ Standing Order for a full explanation of the Court's briefing schedule and requirements.

**2. Cut-off Date is the Last Day for *Hearing* the Motion.** Judge Garnett hears non-discovery motions in civil cases generally through in-person appearances on Wednesdays at 1:30 p.m. All non-discovery motions must be noticed to be *heard* on or before their respective cut-off dates listed in the above schedule (i.e., all non-discovery motions, including MSJs, must be filed at least twenty-eight (28) days before the deadline in accordance with the requirements of L.R. 6-1.

**3. Mandatory Chamber's Copies.** The parties must deliver to Judge Garnett's chambers copy box located outside of the Clerk's Office on the fourth floor of the courthouse one (1) Mandatory Chambers Copy (a paper copy that is sent to Chambers upon electronic filing of the motion) only of Motions for Summary Judgment filings.[1] Mandatory Chambers Copies must be delivered no later than 12:00 p.m. (noon) the following business day after the document is electronically filed. If, however, the electronically filed document is particularly voluminous (more than 500 pages), Mandatory

---

[1] Please do not send paper copies of any other documents unless requested by the Court.

Chambers Copies may be delivered no later than 12:00 p.m. on the second business day after the document is filed.

**C.     Settlement Proceedings/Alternative Dispute Resolution (ADR) Deadline.**
Pursuant to Local Rule 16-15, the parties must participate in a settlement conference/ ADR procedure.  The Court's Schedule above sets forth the type of procedure the parties must use.  If the parties prefer an ADR procedure other than the one ordered by the Court, they shall file a Stipulation and Proposed Order.  The parties' request may not necessarily be granted.   The parties shall file a Joint Report regarding the outcome of settlement negotiations, the likelihood of possible further negotiations, and any assistance the Court may provide concerning settlement negotiations within seven (7) days after the settlement conference.  No case will proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference.

If a settlement is reached, it shall be reported immediately to this Court as required by L.R. 16-15.7.  In all cases set for jury trial, the parties must notify the Court no later than the Tuesday preceding the trial date, of any settlement, so that the necessary arrangements can be made to bring in a different case for trial or to notify the members of the public who would otherwise be reporting for jury duty that their services are not needed that date.

**D.     Final Pretrial Conference/Proposed Final Pretrial Conference**

**1.     Presence of Lead Trial.**  The Court has set the FPTC pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16-8.  The Court requires strict compliance with Federal Rules of Civil Procedure 16 and 26, and Local Rule 16 and does not exempt Pro Se Litigants from the requirements of Local Rule 16.  Each party appearing in this action, except Pro Se Litigants, must be represented at the FPTC by lead trial counsel.  All unserved parties will be dismissed at the time of the FPTC pursuant to Local Rule 16-8.1.

**2.  Matters to be Discussed During FPTC.**  Lead trial counsel shall be prepared to discuss at the Final Pretrial Conference all matters related to the trial, including, but not limited to, the following:

(a)  The witnesses all parties intend to call during their respective cases, and the amount of time necessary for direct and cross examination of each witness;

(b)  Any anticipated problems in scheduling witnesses;

(c)  Efforts made to streamline the trial, including agreeing to testimony by deposition excerpts or summaries, stipulating to facts, and stipulating to an expert's qualifications;

(d)  Any evidentiary issues, including anticipated objections under Rule 403 of the Federal Rules of Evidence, and objections to exhibits;

(e)  Jury selection procedures;

(f)  All pretrial motions, including motions in limine and motions to bifurcate and to sever;

(g)  Any disputed jury instructions, and the form of the instructions that will be given to the jury at the outset of the case, i.e., before opening statements and presentation of evidence;

(h)  Whether any counsel intends to use any evidence or demonstrative aid in opening statement; and

(i)  Motions to exclude witnesses from the courtroom during trial testimony.[2]

**3.  Requests for Additional Audio/Visual Equipment.**  The court provides audio/visual equipment for use during trial.  The parties are encouraged to use it. More information is available at: http://www.cacd.uscourts.gov/clerk-services/courtroom-

---

[2]  The court encourages litigants to provide opportunities for less experienced lawyers to participate in the FPTC and in trial, especially where they contributed significantly in addressing an issue or preparing a witness.  Of course, the ultimate decision of who speaks on behalf of the client is for the client and not the Court.

technology.  If counsel for any party needs to arrange for the installation of their own equipment, such as video monitors, notebooks, or projection equipment, counsel shall notify the Courtroom Deputy Clerk (CRD) no later than 4:00 p.m. on the Wednesday before trial so that the necessary arrangements can be made.

   **4.**  **Filing of Proposed Final Pretrial Conference Order.**  A proposed Final Pretrial Conference Order ("Proposed FPTCO") shall be filed and emailed to Chambers at least fourteen (14) days before the FPTC.  A template for the Proposed FPTCO is available on Judge Garnett's webpage.  The parties must use this template.  In specifying the surviving pleadings under section 1, the parties are to state which claims or counterclaims have been dismissed or abandoned (e.g., "Plaintiff's second cause of action for breach of fiduciary duty has been dismissed.").  Additionally, in multiple-party cases where not all claims or counterclaims will be prosecuted against all remaining parties on the opposing side, the parties are to specify to which party or parties each claim or counterclaim is directed.

   In drafting the Proposed Final Pretrial Conference Order, the parties shall make a good faith effort to agree on and set forth as many uncontested facts as possible.  The Court may read the uncontested facts to the jury at the start of the trial.  A carefully drafted and comprehensively stated statement of uncontested facts will shorten the trial and generally increase jury understanding of the case.

   The remaining triable issues of fact section on the Proposed FPTCO should track the elements of a claim or defense on which the jury will be required to make findings.  Counsel should attempt to state issues in ultimate fact form, not in the form of evidentiary fact issues (i.e., "was the defendant negligent?"; "was such negligence the proximate cause of injury to the plaintiff?"; not, "was the defendant driving the vehicle west on Hill Street at 9:00 p.m. on January 1?").  Counsel may list sub-issues under the headings of ultimate fact issues, but shall not use this as a device to list disputes over evidentiary matters.

   Issues of law should state legal issues upon which the Court will be required to rule after the Pretrial Conference, including during the trial, and should not list ultimate fact

issues to be submitted to the trier of fact.  The Final Pretrial Conference Order is the parties' agreement with the Court regarding the claims, defenses, and issues that will be tried during trial, as well as the facts that are not in dispute.  Each party should ensure that it is accurate.

## II.   TRIAL PREPARATION

The parties must comply with Local Rule 16.  Pursuant to Local Rule 16-2, lead trial counsel for each party are required to meet and confer in person forty (40) days in advance to prepare for the FPTC.  The parties must comply with Local Rule 16-2, except where the requirements set forth in this Order differ from or supplement those contained in Local Rule 16. The Court may take the FPTC and trial off calendar or impose other sanctions for failure to comply with these requirements.

**A.**   **Schedule for Filing Pretrial Documents.**  The schedule for *filing* pretrial documents is as follows:

At least twenty-eight (28) days before the FPTC:

- o   Motions in Limine
- o   Memoranda of Contentions of Fact and Law
- o   Witness list
- o   Joint Exhibit list
- o   Joint Status Report Regarding Settlement
- o   Proposed Findings of Fact and Conclusions of Law (bench trial only)
- o   Declarations containing Direct Testimony (bench trial only)

At least fourteen (14) days before the FPTC:

- o   Oppositions to Motions in Limine
- o   Joint Proposed FPTCO
- o   Joint Agreed Upon Proposed Jury Instructions (jury trial only)
- o   Disputed Proposed Jury Instructions (jury trial only)
- o   Joint Proposed Verdict Forms (jury trial only)
- o   Joint Proposed Statement of the Case (jury trial only)
- o   Proposed Voir Dire Questions, if any (jury trial only)

o      Evidentiary Objections to Declarations of Direct Testimony (bench trial only)

All pretrial documents listed above, including any amended documents, shall be filed and emailed to Chambers the day set forth in the schedule that they are due. Except for motions in limine and oppositions, the Joint Status Report Regarding Settlement, and Declarations containing direct testimony, Counsel shall email all of the above, including any amended documents, in Microsoft Word format to SPG_Chambers@cacd.uscourts.gov.

Mandatory Chambers Copies of electronically filed pretrial documents shall be delivered to Judge Garnett's chambers copy box outside of the Clerk's Office on the fourth floor of the courthouse. Chambers copies must be delivered in a "binder-ready" state, meaning they must be three-hole punched on the left side, without blue-backs, and stapled only in the top left corner.

**B.    Requirements for Pretrial Documents**

    **1.    *Daubert* Motions**. *Daubert* motions will be heard not later than eight (8) weeks before the FPTC.

    **2.    Motions in Limine.** Motions in limine will be heard and ruled on at the FPTC. The court may rule orally instead of in writing. Each side is limited to five (5) motions in limine unless the court grants leave to file additional motions. All motions in limine must be filed at least twenty-eight (28) days before the FPTC. Oppositions must be filed at least fourteen (14) days before the FPTC. There shall be no replies. Motions in limine and oppositions must not exceed ten (10) pages in length. Before filing a motion in limine, the parties must meet and confer to determine whether the opposing party intends to introduce the disputed evidence and attempt to reach an agreement that would obviate the need for the motion. Motions in limine should address specific issues (e.g., not "to exclude all hearsay"). Motions in limine should not be disguised motions for summary adjudication of issues. The court may strike excessive or unvetted motions in limine.

**3.     Witness Lists.**  Witness lists must be filed at least twenty-eight (28) days before the FPTC.  They must be in the format specified in Local Rule 16-5, and must include for each witness (i) a brief description of the testimony, (ii) the reasons the testimony is unique and not redundant, and (iii) a time estimate in hours for direct and cross-examination.  The parties should use the template posted to Judge Garnett's webpage.  Any Amended Witness List must be filed by 12:00 p.m. (noon) on the Friday before trial and emailed to   SPG_Chambers@cacd.uscourts.gov in Microsoft Word format.

**4.     Joint Exhibit List.**  The Joint Exhibit List must be filed at least twenty-eight (28) days before the FPTC.  It must be in the format specified in Local Rule 16-6 and shall include an additional column stating any objections to authenticity and/or admissibility and the reasons for the objections.  The parties should use the template posted to Judge Garnett's webpage. Any Amended Joint Exhibit List must be filed by 12:00 p.m. (noon) on the Friday before trial and emailed to SPG_Chambers@cacd.uscourts.gov in Microsoft Word format.

**5.     Jury Instructions (Jury Trial Only).**

**(a)     Schedule.**  Joint agreed upon proposed jury instructions must be filed no later than fourteen (14) days prior to the FPTC.  The parties shall make every effort to agree upon jury instructions before submitting proposals to the Court.  The Court expects the parties to agree on most instructions, particularly when pattern or model jury instructions exist and provide a statement of applicable law.  The parties shall meet and confer regarding jury instructions according to the following schedule:

At least thirty-five (35) days before the FPTC:  The parties shall exchange proposed general and special jury instructions.

Twenty-eight (28) days before the FPTC:  The parties shall exchange any objections to the instructions.

Twenty-one (21) days before the FPTC:  The parties shall meet and confer with the goal of reaching agreement on one set of Joint Agreed Upon Proposed Jury Instructions.

Fourteen (14) days before FPTC:  The parties shall file their (i) Joint Agreed Upon Proposed Jury Instructions and their (ii) Disputed Jury Instructions.

Counsel shall file and email a copy of the jury instructions in Microsoft Word format to SPG_Chambers@cacd.uscourts.gov.

**(b)    Red-lined Copy.**  The parties shall file clean and redline sets of their (i) Joint Agreed Upon Proposed Jury Instructions, and (ii) Disputed Jury Instructions.  The redline sets shall include all modifications made by the parties to pattern or model jury instructions, any disputed language, and the factual or legal basis for each party's position as to each disputed instruction.  Where appropriate, the disputed instructions shall be organized by subject, so that instructions that address the same or similar issues are presented sequentially.  If there are excessive or frivolous disagreements over jury instructions, the court will order the parties to meet and confer immediately until they substantially narrow their disagreements.

**(c)    Sources.**  When the Manual of Model Jury Instructions for the Ninth Circuit provides an applicable jury instruction, the parties should submit the most recent version, modified and supplemented to fit the circumstances of the case.  Where California law applies, the parties should use the current edition of the Judicial Council of California Civil Jury Instructions.  If neither applies, the parties should consult the current edition of O'Malley, et al., Federal Jury Practice and Instructions.  The parties may submit alternatives to these instructions only if there is a reasoned argument that they do not properly state the law or are incomplete.  The Court seldom gives instructions derived solely from case law.

**(d)    Index:**  The Proposed Instructions must have an index that includes the following for each instruction, as illustrated in the example below:

- o  the number of the instruction;
- o  the title of the instruction;
- o  the source of the instruction and any relevant case citations; and
- o  the page number of the instruction.

**Example:**

Instruction

| Number | Title | Source | Page Number |
|---|---|---|---|
| 1 | Trademark-Defined (15.U.S.C. § 1127) | 9th Cir. 8.5.1 | 1 |

      During the trial and before closing argument, the Court will meet with counsel to settle the instructions, and counsel will have an opportunity to make a further record concerning their objections.

      **(e)**    **Format.** Each requested instruction shall (i), if possible, be in Times New Roman font, font size 14, with each line of text spaced to line up with the numbering on the left side of the jury instruction template; (ii) start with the heading "COURTS INSTRUCTION NO." followed by the number of the instruction all centered on the page and on line 1 of the numbered template paper; (iii) beginning on line 3 of the numbered template paper, set forth in full the proposed instruction; (iv) cite the authority or source of the instruction beginning approximately four lines below the requested instruction; (v) with each instruction appearing on a separate page; (vi) cover only one subject or principle of law; and (vii) not repeat principles of law contained in any other requested instruction. If a standard instruction has blanks or offers options, e.g., for gender, the parties must fill in the blanks or make the appropriate selections in their proposed instructions.

      **6.**    **Joint Verdict Forms (Jury Trial Only).** The parties shall make every effort to agree on a general or special verdict form before submitting proposals to the court. The parties shall file a proposed joint general or special verdict form fourteen (14) days before the FPTC. If the parties are unable to agree on a verdict form, the parties shall file one document titled "Competing Verdict Forms" which shall include: (i) the parties' respective proposed verdict form; (ii) a "redline" of any disputed language; and (iii) the factual or legal basis for each party's respective position. The Court may opt to use a general verdict form if the parties are unable to agree on a special verdict form.

**7. Joint Statement of the Case (Jury Trial Only).** The parties must file a Joint Statement of the Case fourteen (14) days before the FPTC for the Court to read to the prospective jurors before commencement of voir dire. The joint statement should be brief and neutral and should not be more than one page in length.

**8. Voir Dire (Jury Trial Only).** Generally, a jury in a civil action will consist of eight (8) jurors. In most cases, the Court will seat sixteen (16) prospective jurors in the jury box and conduct its initial voir dire. Each side has three (3) peremptory challenges. If 16 jurors are seated in the box and all 6 peremptory challenges are exercised, the remaining 8 jurors will constitute the jury panel. If fewer than 6 peremptory challenges are exercised, the 8 jurors in the lowest numbered seats will be the jury.

The court will conduct the voir dire. The parties may, but are not required to, file any proposed case-specific voir dire questions for the Court's consideration at least fourteen (14) days before the FPTC. If it considers the questions proper, the Court will pose the questions to the prospective jurors.

All challenges for cause shall be made at side bar or otherwise outside the prospective jurors' presence. The Court will not necessarily accept a stipulation to a challenge for cause. If one or more challenges for cause are accepted, and all 6 peremptory challenges are exercised, the Court may decide to proceed with 6 or 7 jurors.

**9. Proposed Findings of Fact and Conclusions of Law (Bench Trial Only).** For any trial requiring findings of fact and conclusions of law, each party shall file and serve on the opposing party, no later than twenty-eight (28) days before the FPTC, its Proposed Findings of Fact and Conclusions of Law in the format specified in Local Rule 52-3. The parties may submit Supplemental Proposed Findings of Fact and Conclusions of Law during the trial. Once trial concludes, the Court may order the parties to file Revised Proposed Findings of Fact and Conclusions of Law with citations to the record.

**10. Declarations of Direct Testimony (Bench Trial Only).** When ordered by the Court in a particular case, each party shall, at least twenty-eight (28) days

before the FPTC, file declarations containing the direct testimony of each witness whom that party intends to call at trial. If such declarations are filed, each party shall file any evidentiary objections to the declarations submitted by any other party at least fourteen (14) days before the FPTC. Such objections shall be submitted in the following three-column format: (i) the left column should contain a verbatim quote of each statement objected to (including page and line number); (ii) the middle column should set forth a concise legal objection (e.g., hearsay, lacks foundation, etc.) with a citation to the corresponding Federal Rule of Evidence or, where applicable, a case citation; and (iii) the right column should provide space for the Court's ruling on the objection. The Court anticipates issuing its ruling on the objections during the FPTC.

### C.   Trial Exhibits

Trial exhibits that consist of documents and photographs must be submitted to the Court in three-ring binders. The parties shall submit to the Court three (3) sets of binders: one (1) original set of trial exhibits, and two (2) copies of trial exhibits. The original set of exhibits shall be for use by the jury during its deliberations, and the copies are for the Court. The parties should prepare additional copies of exhibits for their own use and for use by witnesses. The parties must review the exhibit list and exhibit binders with the CRD before the admitted exhibits will be given to the jury. All exhibits placed in three-ring binders must be indexed by exhibit number with tabs or dividers on the right side. Exhibits shall be numbered sequentially 1, 2, 3, etc., not 1.1, 1.2, etc. *See* Local Rule 16-6. Every page of a multi-page exhibit must be numbered. Defendant's exhibit numbers shall not duplicate Plaintiff's numbers. The spine of each binder shall indicate the volume number and the range of exhibit numbers included in the volume.

**1.   Original Exhibits.** The original exhibits shall bear the official exhibit tags (yellow tags for Plaintiff's exhibits and blue tags for Defendant's exhibits) stapled to the front of the exhibit on the upper right corner with the case number, case name, and exhibit number placed on each tag. Tags may be obtained from the Clerk's Office, or the

-13-

parties may print their own exhibit tags using Forms G-14A and G-14B on the "Court Forms" section of the court's website.

        **2.**    **Exhibit Copies.**  The copies of exhibits must bear copies of the official exhibit tags that were placed on the original exhibits and be indexed with tabs or dividers on the right side.  In addition to the three (3) sets of binders above, the parties must also submit to the court a USB flash drive containing .pdf versions of all exhibits.  The USB flash drive must be delivered to the judge's courtesy box located outside the Clerk's Office on the 4th floor of the courthouse by 12:00 p.m. on the Wednesday before the start of trial.  Plaintiff's exhibits must be placed in a separate folder from Defendant's exhibits, and the document file names must include the exhibit number and a brief description of the document, for example: "Ex. 1 - Smith Declaration.pdf" or "Ex. 105 - Letter Dated 1-5-20.pdf."

        **3.**    **Publishing Exhibits.**  The Court does not permit exhibits to be "published" to the jurors before they are admitted into evidence.  Once admitted, exhibits may be displayed electronically using the equipment and screens in the courtroom.  The parties must meet and confer at least ten (10) days before trial to stipulate as much as possible to foundation, waiver of the best evidence rule, and exhibits that may be received into evidence at the start of the trial.  All such exhibits should be noted as admitted on the court and CRD's copy of the exhibit list.

    **D.**    **Materials to Present on First Day of Trial.**  The parties must present the following materials to the CRD on the first day of trial:

        **1.**    The three sets of binders described above, with one (1) original set of trial exhibits for the jury, and two (2) copies of trial exhibits for the Court.

        **2.**    Any excerpts of deposition transcripts to be used at trial, either as evidence or for impeachment.  These lodged depositions are for the Court's use.  The parties must use their own copies during trial.

    **E.**    **Court Reporter.**  Any party requesting special court reporter services for any hearing, such as "Real Time" transmission or daily transcripts, shall notify the court

reporter at least fourteen (14) days before the hearing date.  At least seven days before the commencement of trial, counsel for the parties shall provide the court reporter with a list of unusual words, phrases, and spellings that may come up during trial.  This information should be emailed to Court Reporter Services at ReportersCACD@cacd.uscourts.gov.

**F.     Jury Trial.**  On the first day of trial, the Court will commence at 8:30 a.m. Counsel shall arrive at the Courtroom no later than 8:30 a.m. each day of trial.  The parties must appear at 8:30 a.m. to discuss preliminary matters with the Court.  The Court will call a jury panel only when it is satisfied the case is ready for trial.  The Court anticipates jury selection will take only a few hours.  The parties should be prepared to proceed with opening statements and witness examination immediately after jury selection.

Wednesdays are usually reserved for the Court's calendar.  As a result, trial will not be held on Wednesdays unless the jury is deliberating or the Court's calendar allows trial to proceed.  Therefore, trial days are generally Monday, Tuesday, Thursday, and Friday. Trial days are from 8:30 a.m. to approximately 4:30 p.m., with two 15-minute breaks and a one-hour lunch break.

## III.    <u>CONDUCT OF ATTORNEYS AND PARTIES</u>

**A.     Meeting and Conferring Throughout Trial.**  The parties must continue to meet and confer on all issues that arise during trial.  The Court will not rule on any such issue unless the parties have attempted to resolve it first.

**B.     Opening Statements, Witness Examinations, and Summation.**  Counsel must use the lectern.  Counsel should not consume jury time by writing out words and drawing charts or diagrams.  All such aids must be prepared in advance.  When appropriate, the Court will establish and enforce time limits for all phases of trial, including opening statements, closing arguments, and the examination of witnesses.

**C.     Objections to Questions.**  Counsel must not make speaking objections before the jury or otherwise make speeches, restate testimony, or attempt to guide a witness. When objecting, counsel must rise to state the objection and state only that counsel objects

and the legal grounds for the objection.  If counsel desires to argue an objection further, counsel must seek permission from the Court to do so.

**D.     Closing Arguments and Post-Trial Briefs (Bench Trials Only).**  For an overview and review of the evidence presented during trial, the Court will rely on the parties' closing arguments.  In delivering closing arguments, the parties shall use their respective proposed findings of fact and conclusions of law as a "checklist" and should identify the evidence that supports their proposed findings. The Court will not accept post-trial briefs unless it finds that circumstances warrant additional briefing and such briefing is specifically authorized.

**E.     General Decorum While in Session.**

1.     Counsel must not approach the CRD, the jury box, or the witness stand without Court authorization and must return to the lectern when the purpose for the approach has been accomplished.

2.     Counsel must rise when addressing the Court, and when the Court or the jury enters or leaves the courtroom, unless directed otherwise.

3.     Counsel should rise when making an objection, state "objection" and a very brief ground for the objection, such as "calls for hearsay," "improper impeachment," "calls for speculation," "calls for a legal conclusion," etc.  Counsel should refrain from making "speaking" objections, where a more drawn-out explanation is given in front of the jury.  If the Court believes an explanation is needed for the objection, the Court will ask the objecting party to give a brief explanation of the grounds for the objection.  If the Court believes an explanation may be needed for evidence or testimony objected to, the Court will ask for a brief "offer of proof" from the party opposing the objection.

4.     Counsel must address all remarks to the Court.  Counsel must not address the CRD, the court reporter, persons in the audience, or opposing counsel. To the extent possible, Counsel should avoid requesting to have the court reporter re-read questions or answers.  Any such requests, should be addressed to the Court.  Counsel must ask the Court's permission to speak with opposing counsel.

5.      Counsel must not address or refer to witnesses or parties by first names alone, except for witnesses who are below age fourteen (14).

6.      Counsel must not offer a stipulation unless counsel have conferred with opposing counsel and have verified that the stipulation will be acceptable.

7.      Counsel must not leave counsel table to confer with any person in the back of the courtroom without the Court's permission.

8.      Counsel must not make facial expressions, nod, shake their heads, comment, or otherwise exhibit in any way any agreement, disagreement, or other opinion or belief concerning the testimony of a witness or argument by opposing counsel. Counsel shall instruct their clients and witnesses not to engage in such conduct.

9.      Counsel must never speak to jurors under any circumstance, and must not speak to co-counsel, opposing counsel, witnesses, or clients if the conversation can be overheard by jurors. Counsel must instruct their clients and witnesses to avoid such conduct.

10.     Where a party has more than one lawyer, only one attorney may conduct the direct or cross-examination of a particular witness or make objections as to that witness.

11.     Bottled water is permitted in the courtroom. Food and other beverages are not permitted. Cell phones must be silenced or may be confiscated.

**F.      Punctuality**

1.      The Court expects the parties, counsel, and witnesses to be punctual. Once the parties and their counsel are engaged in trial, the trial must be their priority. The Court will not delay progress of the trial or inconvenience jurors.

2.      If a witness was on the stand at the time of a recess or adjournment, the party that called the witness shall ensure the witness is back on the stand and ready to proceed as soon as trial resumes.

3.      The parties must notify the CRD in advance if any party, counsel, or witness requires a reasonable accommodation based on a disability or other reason.

4.      No presenting party may be without witnesses.  If a party's remaining witnesses are not immediately available, thereby causing an unreasonable delay, the Court may deem that party to have rested.

5.      The Court generally will accommodate witnesses by permitting them to be called out of sequence.  Counsel should meet and confer in advance and make every effort to resolve the matter.

**G.      Exhibits**

1.      Counsel must keep track of their exhibits and exhibit list, and record when each exhibit has been admitted into evidence.

2.      Counsel are responsible for any exhibits they secure from the CRD and must return them before leaving the courtroom.

3.      Any exhibit not previously marked must be accompanied by a request that it be marked for identification at the time of its first mention.  Counsel must show a new exhibit to opposing counsel before the court session in which it is mentioned.

4.      Counsel must inform the CRD of any agreements reached regarding any proposed exhibits, as well as those exhibits that may be received into evidence without a motion to admit.

5.      When referring to an exhibit, counsel must refer to its exhibit number.  Counsel should instruct their witnesses to do the same.

6.      Counsel should not ask witnesses to draw charts or diagrams or ask the Court's permission for a witness to do so.  All demonstrative aids must be prepared fully in advance of the day's trial session.

7.      Counsel are required to seek to admit any items of evidence whose admissibility has not yet been stipulated to while the witness authenticating the exhibit is on the stand, so that any issues or concerns that arise may be addressed immediately.

**H.      Depositions**

1.      In using deposition testimony of an adverse party for impeachment, counsel may adhere to either one of the following procedures:

-18-

a.     If counsel wishes to read the questions and answers as alleged impeachment and ask the witness no further questions on that subject, counsel shall first state the page and line where the reading begins and the page and line where the reading ends and allow time for any objection.  Counsel may then read the portions of the deposition into the record.

b.     If counsel wishes to ask the witness further questions on the subject matter, the deposition shall be placed in front of the witness and the witness told to read the relevant pages and lines silently.  Then, counsel either may ask the witness further questions on the matter and thereafter read the quotations or read the quotations and thereafter ask further questions.  Counsel should have available for the Court and the witness extra copies of the deposition transcript for this purpose.

2.     Where a witness is absent and the witness's testimony is to be offered by deposition, counsel may: (i) have an individual sit on the witness stand and read the testimony of the witness while the examining lawyer asks the questions; or (ii) have counsel read both the questions and the answers.

**I.     Using Numerous Answers to Interrogatories and Requests for Admission.**

Whenever counsel expects to offer a group of answers to interrogatories or requests for admissions extracted from one or more lengthy discovery responses, counsel should prepare a new document listing each question and answer and identifying the document from which it has been extracted.  Copies of this new document must be provided to the Court and the opposing party.

**J.     Advance Notice of Difficult Legal, Evidentiary, Ethical, Conflict, Privilege or Otherwise Unusual Issues**

If any party anticipates that a difficult question of law, evidence, ethics, conflicts, or privilege will necessitate legal argument requiring research or briefing, that party must give the Court advance notice.  The parties must notify the CRD immediately of any unexpected legal issue that could not have been foreseen and addressed in advance.  To the extent such

issue needs to be addressed outside the jury's presence, the relevant party must inform the CRD before jurors are excused for the day to minimize the time jurors are kept waiting. The Court expects all parties to work diligently to minimize delays and avoid keeping jurors waiting.

### K.    Continuances of Pretrial and Trial Dates

The Court has a strong interest in keeping scheduled dates certain. Accordingly, pretrial and trial dates set by the Court are firm. Any request for continuance of pretrial and/or trial dates must be by motion, stipulation, or application, and must be supported by a declaration setting forth the reasons for the requested relief. The declaration must contain a detailed factual showing of good cause and due diligence demonstrating the necessity for the continuance and a description of the parties' efforts taken to advance the litigation. This showing should demonstrate that the work still to be performed reasonably could not have been accomplished within the applicable deadlines. General statements are insufficient to establish good cause.

The declaration should also include whether any previous requests for continuances have been made and whether these requests were granted or denied by the Court. Stipulations extending dates set by the Court are not effective unless approved by the Court, and without compelling factual support and a showing of due diligence, stipulations continuing dates set by the Court will be denied.

The Court thanks the parties and their counsel for their anticipated cooperation.

**IT IS SO ORDERED.**

DATED:   August 14, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

**JUDGE SHERILYN PEACE GARNETT**
**SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET**

*Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.*
**The Court ORDERS the parties to make every effort to agree on dates.**

| Case No. 2:24-cv-01009-SPG-SK | Case Name: Carano v. The Walt Disney Company, et al. | | |
|---|---|---|---|
| **Trial and Final Pretrial Conference Dates** | | **Parties' Joint Date** mm/dd/yyyy | **Court Order** |
| Check one: ☑ Jury Trial or ☐ Court Trial ☐] Magistrate Judge (**Monday** at 8:30 a.m., within 12 months of Scheduling Conference) Estimated Duration: 5 Days | | 09/29/2025 | ☑ Jury Trial ☐ Court Trial 09/29/2025 |
| Final Pretrial Conference ("FPTC") [L.R. 16] (**Wednesday** at 3:00 p.m., at least 18 days before trial) | | 09/10/2025 | 09/10/2025 |
| **Event [1]** **Note:** Hearings shall be on **Wednesday** at 1:30pm Other dates can be any day of the week | **Weeks Before FPTC[2]** | **Parties' Joint Date** mm/dd/yyyy | **Court Order** |
| Last Date to <u>Hear</u> Motion to Amend Pleadings / Add Parties [Wednesday] | 24 | 12/20/2024 | 12/20/2024 |
| Fact Discovery Cut-Off (No later than deadline for filing dispositive motion) | 18 | 04/18/2025 | 04/18/2025 |
| Expert Disclosure (Initial) | 16 | 04/11/2025 | 04/11/2025 |
| Expert Disclosure (Rebuttal) | 14 | 05/11/2025 | 05/11/2025 |
| Expert Discovery Cut-Off | 13 | 06/02/2025 | 06/02/2025 |
| Last Date to <u>Hear</u> Motions[3] • Motions due at least 4 weeks before hearing; • Opposition due at least 3 weeks before hearing; • Reply due at least 2 weeks before hearing. | 12 | 06/11/2025 | 06/11/2025 |
| Last Date to <u>Hear</u> *Daubert* Motions | 8 | 07/16/2025 | 07/16/2025 |
| Deadline to Complete Settlement Conference [L.R. 16-15] *Select one:* ☐ 1. Magistrate Judge *(with Court approval)* ☐ 2. Court's Mediation Panel ☑ 3. Private Mediation | 5 | 07/15/2025 | 07/15/2025 ☐ 1. Mag. J. ☐ 2. Panel ☑ 3. Private |
| **Trial Filings (first round)** • Motions *In Limine* (except *Daubert*) • Memoranda of Contentions of Fact and Law [L.R. 16-4] • Witness Lists [L.R. 16-5] • Joint Exhibit List [L.R. 16-6.1] • Joint Status Report Regarding Settlement • Proposed Findings of Fact and Conclusions of Law [L.R. 52] (court trial only) • Declarations containing Direct Testimony, if ordered (court trial only) | 4 | 08/13/2025 | 08/13/2025 |
| **Trial Filings (second round)** • Oppositions to Motions in Limine • Joint Proposed Final Pretrial Conference Order [L.R. 16-7] • Joint/Agreed Proposed Jury Instructions (jury trial only) • Disputed Proposed Jury Instructions (jury trial only) • Joint Proposed Verdict Forms (jury trial only) • Joint Proposed Statement of the Case (jury trial only) • Proposed Additional Voir Dire Questions, if any (jury trial only) • Evidentiary Objections to Declarations. of Direct Testimony (court trial only) | 2 | 08/27/2025 | 08/27/2025 |

[1] Once issued, this "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)4).

[2] The numbers below represent the Court's recommended timeline. The parties may propose alternate dates based on the needs of each individual case. Class Actions and ERISA cases may need to vary from the above.

[3] Before filing Rule 56 motions, parties must review and comply with the Court's Standing Order for MSJ, which sets forth the briefing schedule and specific requirements for joint briefing and filing such motions.

# ADDENDUM C

1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
3  KRISTIN MACDONNELL (S.B. #307124)
   kmacdonnell@omm.com
4  O'MELVENY & MYERS LLP
5  1999 Avenue of the Stars, 8th Floor
   Los Angeles, California  90067-6035
6  Telephone:  +1 310 553 6700
   Facsimile:   +1 310 246 6779
7

8  JONATHAN D. HACKER (*pro hac vice*)
   jhacker@omm.com
9  JOSHUA REVESZ (*pro hac vice*)
   jrevesz@omm.com
10 O'MELVENY & MYERS  LLP
11 1625 Eye Street, NW
   Washington, DC 20006
12 Telephone:  +1 202 383 5300
   Facsimile:   +1 202 383 5414
13

14 *Attorneys for Defendants The Walt Disney*
   *Company, Lucasfilm Ltd. LLC, and*
15 *Huckleberry Industries (US) Inc.*

16              UNITED STATES DISTRICT COURT
17              CENTRAL DISTRICT OF CALIFORNIA
18

19                                    Case No. 2:24-cv-01009-SPG-SK
20                                    **DEFENDANTS' SUPPLEMENTAL**
   GINA CARANO,                       **RESPONSES AND OBJECTIONS TO**
21                                    **CARANO'S FIRST SET OF**
               Plaintiff,             **REQUESTS FOR PRODUCTION**
22
          v.
23
   THE WALT DISNEY COMPANY,           District Judge:
24 LUCASFILM LTD. LLC, and              Hon. Sherilyn Peace Garnett
   HUCKLEBERRY INDUSTRIES (US)        Magistrate Judge:
25 Inc.,                                Hon. Steve Kim
26             Defendants.
27
28
                              1

Defendants The Walt Disney Company ("TWDC"), Lucasfilm Ltd. LLC ("Lucasfilm"), and Huckleberry Industries (US) Inc. ("Huckleberry") (collectively, "Defendants"), through undersigned counsel, hereby collectively supplement certain of their October 4, 2024 responses and objections to Plaintiff Gina Carano ("Carano")'s First Set of Requests for Production pursuant to Federal Rule of Civil Procedure 34, which Carano served via email on July 30, 2024 (each a "Request" and collectively "Requests").

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

1.      Defendants' responses are made without waiver of the right to (a) object to the use of these responses or any information contained therein on any basis, including, but not limited to, questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility; (b) supplement, correct, and/or amend these responses; (c) offer expert witness opinions on any relevant matter, at the appropriate time, and (d) object to other discovery involving the subject thereof.

2.      Defendants object to each Request to the extent it seeks information developed, or documents created, after February 6, 2024 (the date that Carano filed this action) on the grounds that such Requests are overbroad, beyond the scope of the allegations, seek information or documents protected by the attorney-client privilege and work product doctrines, and are not reasonably calculated to lead to the discovery of admissible evidence. Unless otherwise indicated in the specific responses below, Defendants do not agree to produce documents created after February 6, 2024. Relatedly, consistent with Carano's instructions, Defendants do not agree to produce documents prior to January 1, 2019.

3.      Defendants object to each Request to the extent it seeks information or documents that are a matter of public record or otherwise equally available to Carano. That said, without committing to undertake a search specifically for

2

1  documents in the public record or available to Carano, Defendants will not

2  withhold any responsive documents that it identifies in their files through a

3  reasonably diligent search because the documents may also be available in the

4  public record or available to Carano.

5      4.    To the extent that Defendants undertake to provide information and/or

6  produce documents, Defendants will conduct a reasonably diligent inquiry by

7  identifying custodians reasonably likely to have non-cumulative, non-privileged

8  responsive documents, as qualified by Defendants' objections and responses and,

9  in the case of electronic documents, Defendants will use search terms reasonably

10 expected to yield non-privileged, responsive Documents.

11     5.    Defendants object to each Request to the extent it seeks the

12 production of documents protected by the attorney-client privilege, the attorney-

13 work product doctrine, the common interest or joint defense privileges, rules and

14 agreements governing privacy or confidentiality, or any other applicable privilege

15 or protection recognized under statute or applicable case law.  Inadvertent

16 production by Defendants of any documents protected by any applicable privilege

17 or protection shall not constitute a waiver of the privilege or protection.

18     6.    Defendants object to each Request to the extent it calls for

19 information that would infringe upon the legitimate privacy rights of current or

20 former employees, officers, or directors of Defendants, current or former affiliates,

21 related companies, subsidiaries, or other individuals, to the full extent such privacy

22 rights and expectations are protected by constitution, statute, contract, court order,

23 or public policy.  Defendants reserve the right to redact documents to protect

24 unnecessary disclosure of nonresponsive or irrelevant sensitive, confidential, or

25 proprietary business information.

26     7.    Defendants object to each Request to the extent it seeks Defendants'

27 sensitive, confidential, or proprietary business information.  To the extent such

28

DEFENDANTS' SUPPL. R&OS TO
CARANO'S 1ST SET OF RFPS

documents are responsive, relevant, and not privileged, Defendants will disclose such confidential business documents pursuant to a Protective Order.

8.    Defendants object to each Request to the extent that it prematurely seeks discovery of expert materials and information in advance of their respective deadlines under any applicable Scheduling Order governing this case and/or the Federal Rules of Civil Procedure. Defendants will not produce any expert materials or information before such deadlines.

9.    Defendants object to Instruction No. 5 to the extent that it purports to require Defendants to log documents on an individual, as opposed to categorical basis. Defendants reserve the right to log documents on a categorical basis. In addition, as the burden and expense associated with the logging of documents after February 6, 2024 outweighs any benefit of logging such documents, Defendants do not agree to log any privileged documents after February 6, 2024.

10.   Defendants object to Instruction No. 6 to the extent it may be construed as prohibiting Defendants from withholding entire documents when appropriate. Defendants reserve the right to withhold entire documents on the basis of any claimed privileges, immunities, or confidentiality obligations, but will redact and release all non-privileged portions of any documents when appropriate.

11.   Defendants object to Instruction No. 10 to the extent it requires Defendants to provide supplemental responses to "correct or update any previous response" based on newly discovered information or documents "not later than 20 days after such discovery" as seeking to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure or the Local Rules of the District Court for the Central District of California. Consistent with Federal Rule 26(e)(1) Defendants will supplement responses, as necessary, in a timely manner.

12.   Defendants object to the Definition of "Defendant" or "Defendants"

as overbroad and ambiguous to the extent this Definition includes TWDC, Lucasfilm, and Huckleberry.  By responding collectively, TWDC, Lucasfilm, and Huckleberry do not waive, but rather preserve, all arguments with respect to the fact that Defendants are separate legal entities.

13.    Defendants object to the date specified for production in the Requests. Defendants will make rolling productions of documents, with their first production to be made after the entry of an appropriate Protective Order.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR PRODUCTION NO. 1**.

All Documents or Communications that support your answer to Interrogatory No. 1.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants did not identify any documents in their response to Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 2**.

All Documents or Communications that support your answer to Interrogatory No. 2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants did not identify any documents in their response to Interrogatory No. 2.

**REQUEST FOR PRODUCTION NO. 3**.

All Documents or Communications that support your answer to Interrogatory No. 3.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants did not identify any documents in their response to Interrogatory No. 3.

**REQUEST FOR PRODUCTION NO. 4**.

All Documents or Communications that support your answer to Interrogatory No. 4.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants did not identify any documents in their response to Interrogatory No. 4.

**REQUEST FOR PRODUCTION NO. 5**.

All Documents or Communications that support your answer to Interrogatory No. 5.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5.**

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants did not identify any documents in their response to Interrogatory No. 5.

**REQUEST FOR PRODUCTION NO. 6.**

All Documents or Communications that support your answer to Interrogatory No. 6.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6.**

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants did not identify any documents in their response to Interrogatory No. 6.

**REQUEST FOR PRODUCTION NO. 7.**

All Documents or Communications that support your answer to Interrogatory No. 7.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7.**

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants did not identify any documents in their response to Interrogatory No. 7.

**REQUEST FOR PRODUCTION NO. 8**.

All Documents or Communications that support your answer to Interrogatory No. 8.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants did not identify any documents in their response to Interrogatory No. 8.

**REQUEST FOR PRODUCTION NO. 9**.

All Documents and Communications related to your decision to terminate or disassociate from Gina Carano, including but limited to all Documents and Communications setting out the reasons for that decision, the individuals involved or consulted in the decision, and when the decision was first considered and ultimately made.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "your decision to terminate [Carano]" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "decision to terminate or disassociate from Gina Carano" to refer to the decision to issue Lucasfilm's February 10, 2021 statement, which, to be clear, was not the termination of employment. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges. Defendants further object to this Request as unintelligible as to the inclusion of the phrases "the individuals involved or consulted in the decision" and "when the decision was first considered and ultimately made." This Request is a request for production – not an interrogatory.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents regarding the decision to issue Lucasfilm's February 10, 2021 statement, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 10**.

All posts on any Defendant-controlled social media account or internal communication platform regarding Plaintiff, including but not limited to her performance in *The Mandalorian*, her social media posts, and/or her termination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants object to this Request on the grounds that it is overbroad and unduly burdensome insofar as it seeks posts across "any Defendant-controlled" social media account, as well as any "internal communication platform." Defendants further object to this Request on the grounds that "her termination" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "her termination" to refer to Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment. Defendants further object to this Request as vague and ambiguous as to "Defendant-controlled social media account[s]." Defendants interpret "Defendant-controlled social media account[s] to be social media accounts on X/Twitter, Facebook, and Instagram: @TheMandalorian, @Starwars, @Lucasfilm, @DisneyPlus, @Disney, and @WaltDisneyCo.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged posts regarding Carano from the following social media accounts on X/Twitter, Facebook, and Instagram: @TheMandalorian, @Starwars, @Lucasfilm, @DisneyPlus, @Disney, and @WaltDisneyCo, to the extent any such documents are identified through a reasonably diligent inquiry

1

**REQUEST FOR PRODUCTION NO. 11**.

2
3
4
5
6
7

      All Communications with X/Twitter, Instagram, or any social media platform relating to Plaintiff. This request for production does not seek social media posts by Defendants through any company social media account, but rather Communications with employees of any social media companies related to Plaintiff, including but not limited to any posts by Plaintiff on those social media platforms, her termination from *The Mandalorian*, or Defendants' February 10, 2021 statement regarding Plaintiff's termination (see Complaint ¶¶ 30–32).

8

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**.

9
10
11
12
13
14
15
16

      Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "her termination" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "her termination" to refer to Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment. Defendants further object to this Request on the grounds that it is overbroad and unduly burdensome insofar as it seeks communication with employees of "any social media companies."

17
18
19
20

      Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications between Defendants, on the one hand, and X/Twitter, Instagram, or other social media platforms, on the other hand, relating to Carano, to the extent any such communications are identified through a reasonably diligent inquiry.

21

**REQUEST FOR PRODUCTION NO. 12**.

22
23
24
25
26

      All Communications with Plaintiff's publicist, ID PR, concerning or related to any social media posts or public comments of Plaintiff. This includes but is not limited to Plaintiff's termination and the topics addressed in Interrogatory No. 5. Your response should include any Documents or other material provided with such Communications.

27
28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "Plaintiff's termination" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "Plaintiff's termination" to refer to Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications between Defendants, on the one hand, and ID PR, on the other hand, relating to Carano's social media activity and/or public comments, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 13**.

All Communications with Plaintiff's publicist, ID PR, concerning or related to Defendants' decision to terminate Plaintiff from *The Mandalorian* and/or future projects. Your response should include any Documents or other material provided with such Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "Defendants' decision to terminate Plaintiff from *The Mandalorian* and/or future projects" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "Defendants' decision to terminate Plaintiff" to refer to the decision to issue Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications between Defendants, on the one hand, and ID PR, on the other hand, relating to Lucasfilm's

February 10 statement, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 14**.

All Communications with United Talent Agency concerning or related to any social media posts or public comments by or about Plaintiff. This includes but is not limited to Plaintiff's termination and the topics addressed in Interrogatory No. 5. Your response should include any Documents or other material provided with such Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "Plaintiff's termination" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "Plaintiff's termination" to refer to Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications between Defendants, on the one hand, and United Talent Agency, on the other hand, relating to Carano's social media activity and/or public comments, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 15**.

All Communications with United Talent Agency concerning or related to Defendants' decision to terminate Plaintiff from *The Mandalorian* and/or future projects. Your response should include any Documents or other material provided with such Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "Defendants' decision

12

to terminate Plaintiff from *The Mandalorian* and/or future projects" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "Defendants' decision to terminate Plaintiff" to refer to the decision to issue Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications between Defendants, on the one hand, and United Talent Agency, on the other hand, relating to Lucasfilm's February 10 statement, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 16**.

All Communications with any manager or agent representing Carano concerning or related to Plaintiff's social media posts or public comments. This includes but is not limited to Plaintiff's termination and the topics addressed in Interrogatory No. 5. Your response should include any Documents or other material provided with your Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "Plaintiff's termination" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "Plaintiff's termination" to refer to Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment. Defendants further object to this Request as vague and ambiguous as to the unidentified manager(s) and/or agents(s).

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications between Defendants, on the one hand, and managers or agents of Carano, on the other hand,

relating to Carano's social media activity and/or public comments, to the extent any such documents are identified through a reasonably diligent inquiry, provided that Carano provides email addresses for any such managers and/or agents.

**REQUEST FOR PRODUCTION NO. 17**.

All Communications with any manager, agent, or attorney representing Plaintiff, concerning or related to Defendants' decision to terminate Plaintiff from *The Mandalorian* and/or future projects. Your response should include any Documents or other material provided with such Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "Defendants' decision to terminate Plaintiff from *The Mandalorian* and/or future projects" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "Defendants' decision to terminate Plaintiff" to refer to the decision to issue Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment. Defendants further object to this Request as vague and ambiguous as to the unidentified manager(s), agents(s), and/or attorney(s).

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications between Defendants, on the one hand, and agents or managers of Carano, on the other hand, relating to Lucasfilm's February 10 statement, to the extent that any such documents are identified through a reasonably diligent inquiry, provided that Carano provides email addresses for any such managers, agents, and/or attorneys.

**REQUEST FOR PRODUCTION NO. 18**.

All Communications with any television, movie, or streaming content producer regarding Plaintiff. Your response should include any Documents or other material provided with your Communications.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 18**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad and unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence, insofar as it seeks communications with "any television, movie, or streaming content producer regarding" Carano, unbounded by any specific subject matter.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications to or from Kathleen Kennedy, Jon Favreau, Lynne Hale, Darrell Borquez, and Pablo Hidalgo from June 1, 2020 to December 31, 2021 which address Carano as a candidate for a role in a production, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 19**.

All Documents or Communications concerning or related to any social media posts or public comments of Pedro Pascal, Mark Hamill, or any member of *The Mandalorian* cast or crew besides Plaintiff.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents and communications concerning "any social media posts or public comments of Pedro Pascal, Mark Hamill, or any member of *The Mandalorian* cast or crew," unbounded by any specific subject matter.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning or related to any social media posts or public comments of Pedro Pascal, Mark Hamill,

and any members of the guest cast appearing in more than one episode across Seasons 1, 2, or 3 of *The Mandalorian*, like Carano herself, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 20**.

All Documents or Communications, including internal communications, concerning or related to any discipline of Pedro Pascal, Mark Hamill, or any other member of *The Mandalorian* cast or crew due to their social media posts or public comments, including but not limited to those cited in the Complaint ¶¶ 129–143.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 20**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad and unduly burdensome, and seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence, insofar as it seeks documents and communications concerning "any discipline of Pedro Pascal, Mark Hamill, or any member of *The Mandalorian* cast or crew." Defendants further object to this Request on the grounds that "any discipline" is vague and ambiguous.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning or related to any discipline of Pedro Pascal, Mark Hamill, and any members of the guest cast appearing in more than one episode across Seasons 1, 2, or 3 of *The Mandalorian*, like Carano herself, due to their social media posts or public comments, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 21**.

All Documents or Communications concerning or related to the drafting and issuance of Lucasfilm's public statement on or about February 10, 2021: "Gina Carano is not currently employed by Lucasfilm and there are no plans for her to be

16

in the future. Nevertheless, her social media posts denigrating people based on their cultural and religious identities are abhorrent and unacceptable."[1] This should include all drafts, edits, and communications related to the statement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning or related to the drafting and issuance of Lucasfilm's public statement on or about February 10, 2021, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 22**.

All Documents or Communications supporting, concerning or related to Disney's then-CEO Bob Chapek's statement that Plaintiff and/or her statements "didn't align with Company values."  (See Complaint ¶ 34.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "Bob Chapek's statement that [Carano] and/or her statements 'didn't align with Company values,'" is vague, ambiguous, and argumentative, as Bob Chapek did not make the quoted statement that this Request attributes to him.  Defendants also object to this Request on the grounds that it is overbroad and unduly burdensome insofar as it seeks all documents and communications "supporting, concerning or related" to the purported statement quoted in this Request.

---

[1] Daniel Holloway, *Lucasfilm, UTA Drop 'Mandalorian' Star Gina Carano Following Offensive Social Media Posts*, Variety (Feb. 10, 2021), http://tinyurl.com/3ac2rybe.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning or relating to any public statement Bob Chapek made concerning Carano in or around March 2021, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 23**.

All Documents or Communications that support Disney's then-CEO Bob Chapek's statement that Disney's values are "values that are universal: values of respect, values of decency, values of integrity, and values of inclusion."[2]

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks "all" documents and communications.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning or relating to Bob Chapek's statement that Disney's values are "values that are universal: values of respect, values of decency, values of integrity, and values of inclusion," to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 24**.

All Documents concerning or related to Defendants' social media policies for employees, including all Communications with employees regarding such policies.

---

[2] Naledi Ushe, *Disney CEO Says Company Stands for 'Values That Are Universal' in Wake of Gina Carano's Firing*, People Mag. (Mar. 9, 2021), http://tinyurl.com/mvkz39pe.

1  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 24**.

2  Defendants incorporate their Preliminary Statement and General Objections.

3  Defendants further object to this Request on the grounds that it is overbroad, unduly

4  burdensome, and seeks documents that are not relevant to any claim or defense nor

5  proportional to the needs of this case, insofar as it seeks "Defendants' social media

6  policies for employees," unbounded by any type of employee or time period.

7  Defendants further object to the extent that this Request seeks information protected

8  by the attorney-client privilege, work product doctrine, or other applicable

   privileges.

9  Subject to and without waiving these specific objections and the General

10 Objections, Defendants will produce any non-privileged Lucasfilm or *The*

11 *Mandalorian*-specific social media policies, as well as any social media policies

12 applicable to all TWDC employees, as well as any communications with the cast of

13 *The Mandalorian* regarding such policies, to the extent that any such documents are

14 identified through a reasonably diligent inquiry.

15 **REQUEST FOR PRODUCTION NO. 25**.

16 All Documents or Communications concerning or related to Defendants'

17 diversity, equity, and inclusion programs and policies, including all

   Communications with employees regarding such programs and policies.

18 **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 25**.

19 Defendants incorporate their Preliminary Statement and General Objections.

20 Defendants further object to this Request on the grounds that it is overbroad, unduly

21 burdensome, and seeks documents that are not relevant to any claim or defense nor

22 proportional to the needs of this case, insofar as it seeks documents and

23 communications concerning matters not alleged in the Complaint. Defendants

24 further object to the extent that this Request seeks information protected by the

25 attorney-client privilege, work product doctrine, or other applicable privileges.

26 Subject to and without waiving these specific objections and the General

27 Objections, Defendants will produce non-privileged official Lucasfilm or TWDC

28

19

diversity, equity, and inclusion ("DEI") policies, as well as any DEI trainings that Carano or other actors from Season 1 or 2 of *The Mandalorian* participated in, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 26**.

All Documents related to or Communications with the 501st Legion, https://www.501st.com/, an international costuming organization celebrating Star Wars, concerning any interaction with Plaintiff at any conference, convention, event or FanFest at which Plaintiff was to be present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents and communications concerning matters not alleged in Complaint.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications with the 501st Legion concerning any interactions with Carano at any conference, convention, event or FanFest at which Carano was to be present, to the extent any such communications are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 27**.

All Communications with X/Twitter, Instagram, or any social media platform that concerned or related to any post by Plaintiff, including but not limited to any request that any post or material posted by Plaintiff be removed from the social media platform. Your response should include any Documents or other material provided with your Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly

1  burdensome, and seeks documents that are not relevant to any claim or defense nor
2  proportional to the needs of this case, insofar as it seeks documents and
3  communications concerning matters not alleged in Complaint.  Defendants further
4  object to this Request on the grounds that it is argumentative, insofar as it suggests
5  that  Defendants communicated with any social media platforms to "request that any
6  post or material posted by Plaintiff be removed from the social media platform,"
7  which Carano does not allege in the Complaint.

8       Subject to and without waiving these specific objections and the General
9  Objections, Defendants will produce non-privileged communications with
10  X/Twitter, Instagram, or any social media platform that concerned or related to any
11  post by Carano, to the extent any such documents are identified through a reasonably
12  diligent inquiry.

13  **REQUEST FOR PRODUCTION NO. 28.**

14       All Documents or Communications regarding the use of "bots" or
15  electronically generated or managed social media accounts to publish any material
16  on social media related to or concerning Plaintiff.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28**.

18       Defendants incorporate their Preliminary Statement and General Objections.
19  Defendants further object to this Request on the grounds that it is overbroad, unduly
20  burdensome, and seeks documents that are not relevant to any claim or defense nor
21  proportional to the needs of this case, insofar as it seeks documents and
22  communications concerning matters not alleged in Complaint.  Defendants further
23  object to this Request on the grounds that it is argumentative, insofar as it suggests
24  Defendants "use[d] . . . 'bots' or electronically generated or managed social media
25  accounts to publish any material on social media related to or concerning" Carano,
26  which Carano does not allege in the Complaint.

27       Subject to and without waiving these specific objections and the General
28  Objections, Defendants will produce non-privileged documents regarding the use of

21

"bots" or electronically generated or managed social media accounts to publish any material on social media related to or concerning Carano, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 29**.

All Documents or Communications concerning or related to plans for the inclusion of the Cara Dune character in any movie or project under consideration from 2019 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks "all" documents. Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege, work-product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents sufficient to identify any Lucasfilm projects under consideration from January 1, 2019 to February 6, 2024 for which the Cara Dune character was included in a pitch, draft, treatment, and/or script, as well as documents relating to whether the Cara Dune character should continue to be included, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 30**.

All Documents or Communications concerning or related to the decision to create a new Star Wars spinoff entitled *Rangers of the New Republic* or some similar title that would feature or include the character Cara Dune (see Complaint ¶¶ 27–28).

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 30**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants made a "decision to create a new Star Wars spinoff entitled *Rangers of the New Republic*," despite the fact that no such project was ever greenlit by Defendants.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents and communications concerning (i) the reasons for the genesis of *Rangers of the New Republic* (or any similar title featuring the Cara Dune character), and (ii) why *Rangers of the New Republic* was not greenlit, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 31**.

All contracts and Documents showing all compensation provided to lead actors on *The Mandalorian* or similar Star Wars series on Disney+, including but not limited to contracts for Pedro Pascal, Carl Weathers, Amandla Stenberg (from *The Acolyte*), Diego Luna (from *Andor*) and Rosario Dawson (from *Ahsoka*).

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 31**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "lead actors" is vague and ambiguous. Defendants further object to this Request as argumentative to the extent that it suggests that Carano was a "lead actor" on *The Mandalorian*. Defendants further object to this Request as argumentative to the extent that it suggests that *The Mandalorian* is "similar" to the other identified shows. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks contracts and documents concerning compensation of "lead actors," including compensation for roles other than those in Seasons 1 and 2 of *The Mandalorian*. Defendants further object to this

Request on the grounds that it seeks personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants.  Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 32**.

All Documents or Communications concerning or related to the decision to cancel or not produce *Rangers of the New Republic* or any production with a similar title (see Complaint ¶ 113).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants made a "decision to cancel or not produce a new Star Wars spinoff entitled *Rangers of the New Republic*," despite the fact that no such project was ever greenlit by Defendants.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents reflecting why *Rangers of the New Republic* was not greenlit, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 33**.

All Documents or Communications concerning or related to the decision to remove the episode of *Running Wild with Bear Grylls* featuring Plaintiff from the show's scheduled lineup in 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants made a "decision to remove the episode of *Running Wild with Bear Grylls* featuring [Carano] from the show's scheduled lineup in 2021."

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents relating to any decision to remove the episode of *Running Wild with Bear Grylls* featuring Carano from the show's scheduled lineup in 2021, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 34**.

All Documents or Communications concerning or related to the decision to ultimately air the episode of *Running Wild with Bear Grylls* featuring Plaintiff, including any record of any communications with Bear Grylls related to the airing of the episode in 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants made a "decision to ultimately air the episode of *Running Wild with Bear Grylls* featuring [Carano]."

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents relating to any decision whether to air the episode of *Running Wild with Bear Grylls* featuring Carano, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 35**.

All Documents or Communications concerning or related to the decision to remove all mention of Plaintiff's name or likeness in any promotional material or listings of the episode of *Running Wild with Bear Grylls* featuring Plaintiff.[3]

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants made a "decision to remove all mention of [Carano']'s name or likeness in any promotional material or listings of the episode of *Running Wild with Bear Grylls* featuring [Carano]."

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents regarding any decision to remove all mention of Carano's name or likeness in any promotional material or listings of the episode of *Running Wild with Bear Grylls* featuring Carano, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 36**.

All Documents or Communications concerning or related to Defendants' monitoring the hashtags #FireGinaCarano, #weloveGinaCarano, #westandwithGinaCarano, or other hashtags concerning Plaintiff on social media, including all posts collected, saved, or retained from monitoring the hashtags.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as vague and ambiguous to the extent that it seeks documents relating to unidentified hashtags. To the extent that Carano seeks

---

[3] Drunk3PO, *Disney Refuses to Use Gina Carano's Name in Bear Grylls Running Wild Episode*, YouTube (May 5, 2021), http://tinyurl.com/2aca7pck.6

to have Defendants search for any hashtags that are not specifically identified above, Carano must identify such hashtags.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce documents concerning or related to their monitoring of the hashtags #FireGinaCarano, #weloveGinaCarano, and #westandwithGinaCarano, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 37**.

All Documents or Communications collected, saved, or retained from any monitoring of social media content related to or posted by Plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as vague and ambiguous. Defendants interpret this Request as seeking posts collected, saved, or retained from their monitoring, if any, of Carano's social media activity.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce any non-privileged social media posts that collected, saved, or retained from monitoring Carano's social media activity, to the extent that any such posts are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 38**.

All Documents or Communications concerning or related to the decision to prepare a report on Carano following the events of January 6, 2021, as stated in the email sent by Lynne Hale of Lucasfilm on January 8, 2021, including a copy of any such report, along with any drafts, edits and notes used to create any such report (see Complaint ¶¶ 95–97).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request to the extent that it seeks documents

protected by the attorney-client privilege, work-product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce any non-privileged documents concerning or related to any decision to prepare a report on Carano following the events of January 6, 2021, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 39**.

All Documents or Communications concerning or related to the GoFundMe page "Trans Rights are Human Rights: This is the Way" found at https://www.gofundme.com/f/trans-rights-are-human-rights-this-is-the-way.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request to the extent that it calls for information protected by the attorney-client privilege, work-product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning or related to the GoFundMe page "Trans Rights are Human Rights: This is the Way" found at https://www.gofundme.com/f/trans-rights-are-human-rights-this-is-the-way, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 40**.

All Documents or Communications concerning or related to Plaintiff's placing "boop/bop/beep" in her X/Twitter profile on or about September 12, 2020 (see Complaint ¶ 65).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request to the extent that it calls for information protected by the attorney-client privilege, work-product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning or related to Carano's placing "boop/bop/beep" in her X/Twitter profile on or about September 12, 2020, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 41**.

All Documents or Communications concerning or related to media training Plaintiff was required or requested to attend in September 2020 (see Complaint ¶¶ 75–77, 81, 84).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants "required" Carano to attend media training in 2020. Defendants further object to this Request to the extent that it calls for information protected by the attorney-client privilege, work-product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning any request and/or requirement that Carano attend media training in September 2020, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 42**.

All Documents related to any other employee required or requested to attend media or any human resources training based in whole or part on posts the employee

made on social media, including but not limited to Pedro Pascal, Mark Hamill, and James Gunn.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 42**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants "required" any employees to "attend media or any human resources training based in whole or part on posts the employee made on social media." Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents concerning the social media activity of persons not involved in Seasons 1 and 2 of *The Mandalorian*, including James Gunn. Defendants further object to this Request to the extent that it calls for information protected by the attorney-client privilege, work-product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning any request and/or requirement that Pedro Pascal, Mark Hamill, or any other actor on Seasons 1 or 2 of *The Mandalorian* named in the Complaint attend media training or human resource training related to their social media activity, to the extent that any such documents are identified through a reasonably diligent inquiry. Further responding, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 43**.

All Documents or Communications related to the requirement or request that Plaintiff meet with members of GLAAD in September 2020 following the listing of "boop/bop/beep" in her X/Twitter profile (see Complaint ¶¶ 76).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants "required or requested that [Carano] meet with members of GLAAD in September 2020." Defendants further object to this Request to the extent that it calls for information protected by the attorney-client privilege, work-product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents relating to any request and/or requirement that Carano meet members of GLAAD in September 2020, if such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 44**.

All Documents or Communications related to any other employee required or requested to meet with members of GLAAD or any other social advocacy organization because of posts the employee made on social media, including but not limited to Pedro Pascal, Mark Hamill, and James Gunn.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 44**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants "required or requested" any employee to "meet with members of GLAAD or any other social advocacy organization because of posts the employee made on social media." Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents concerning persons not involved in Seasons 1 and 2 of *The Mandalorian*, including James Gunn. Defendants further object to this Request to the extent that it calls for information

1  protected by the attorney-client privilege, work-product doctrine, or other applicable
2  privileges.

3      Subject to and without waiving these specific objections and the General
4  Objections, Defendants will produce non-privileged documents regarding any other
5  actors from Season 1 and 2 of *The Mandalorian* that Defendants required or
6  requested to meet with members of GLAAD or any other "social advocacy
7  organization" because of posts the actor made on social media, to the extent that any
8  such documents are identified through a reasonably diligent inquiry.   Further
9  responding, Defendants are presently meeting and conferring with Carano about the
10 scope of this Request, with Defendants having made a proposal for Carano's
11 consideration concurrent with these responses.

12 **REQUEST FOR PRODUCTION NO. 45**.

13     All Documents or Communications related to the request that Plaintiff issue a
14 public statement or apology for listing "boop/bop/beep" in her X/Twitter profile
15 header in September 2020 (see Complaint ¶¶ 77–78).

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 45**.

17     Defendants incorporate their Preliminary Statement and General Objections.
18 Defendants further object to this Request on the grounds that it is vague, ambiguous,
19 and argumentative to the extent it suggests Defendants requested that Carano
20 meeting with members of GLAAD or any other "social advocacy organization."
21 Defendants further object to this Request to the extent that it calls for information
22 protected by the attorney-client privilege, work-product doctrine, or other applicable
23 privileges.

24     Subject to and without waiving these specific objections and the General
25 Objections, Defendants will produce non-privileged documents related to any
26 request that Carano issue a public statement or apology for listing "boop/bop/beep"
27 in her X/Twitter profile header in September 2020, to the extent that any such
28 documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 46**.

All Documents or Communications related to any other employee required or requested to issue a public statement or apology because of posts the employee made on social media, including but not limited to Pedro Pascal, Mark Hamill, and James Gunn.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 46**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants "required or requested" any employee to "issue a public statement or apology because of posts the employee made on social media." Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents concerning persons not involved in Seasons 1 and 2 of *The Mandalorian*, including James Gunn.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning any request and/or requirement that Pedro Pascal, Mark Hamill, or any other actor on Seasons 1 or 2 of *The Mandalorian* named in the Complaint issue a public statement or apology because of posts the actor made on social media, to the extent that any such documents are identified through a reasonably diligent inquiry. Further responding, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 47**.

All Documents or Communications related to the request for Plaintiff to meet by Zoom with Kathleen Kennedy and employees of Lucasfilm who identify with the LGBTQ+ community in September 2020 (see Complaint ¶ 81).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants "request[ed] Plaintiff to meet by Zoom with Kathleen Kennedy and employees of Lucasfilm who identify with the LGBTQ+ community in September 2020."

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents related to any request for Carano to meet by Zoom with Kathleen Kennedy and employees of Lucasfilm who identify with the LGBTQ+ community in September 2020.

**REQUEST FOR PRODUCTION NO. 48**.

All Documents or Communications related to any other employee required or requested to participate in a meeting with a supervisor and other employees because of posts the employee made on social media, including but not limited to Pedro Pascal, Mark Hamill, and James Gunn.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 48**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants "required or requested" any employee to "participate in a meeting with a supervisor and other employees because of posts the employee made on social media." Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents concerning persons not involved in Seasons 1 and 2 of *The Mandalorian*, including James Gunn. Defendants also object to this Request on the basis that it is argumentative to the extent that, when taken together with the preceding Request No. 48, it suggests that Kathleen Kennedy was Carano's "supervisor."

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents related to any requirement or request that an actor from Seasons 1 or 2 of *The Mandalorian* meet with a supervisor and other employees because of posts the actor made on social media, to the extent that any such documents are identified through a reasonably diligent inquiry.  Further responding, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 49**.

All Documents or Communications related to the promotion of Plaintiff for an Emmy for her work on *The Mandalorian* in or about May 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks "all Documents or Communications related to the promotion of Plaintiff for an Emmy" without regard to whether such documents are relevant.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents related to any promotion of Carano for an Emmy for her work on *The Mandalorian* in or about May 2021 that describe or discuss Carano's performance, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 50**.

All Documents or Communications with toy companies, merchandizers, or creators of digital or print collateral or advertising for *The Mandalorian* concerning or related to Plaintiff or her character Cara Dune.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 50**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents sufficient to show decisions to cancel, remove, modify, or go forward with any merchandise featuring Gina Carano and/or Cara Dune around the time of Lucasfilm's February 10, 2021 statement, to the extent that any such documents are identified through a reasonably diligent inquiry.[4]

**REQUEST FOR PRODUCTION NO. 51**.

All Documents showing hours worked on set for each actor in Seasons 1 and 2 of *The Mandalorian*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 51**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is seeks documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents showing hours worked for each actor across Seasons 1 and 2 of *The Mandalorian*, a series that cast dozens of credited actors, in addition to dozens of uncredited actors. Defendants further object to this Request on the grounds that it seeks personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly

---

[4] Consistent with the parties' meet-and-confer discussions, the advertising aspect of this Request is addressed separately under RFPs 57 and 69.

1  and improperly invade the protected privacy rights of employees/third-party
2  nonlitigants.

3      Subject to and without waiving these specific objections and the General
4  Objections, Defendants will not produce documents responsive to this Request.
5  However, as discussed, Defendants do not contend that they disassociated with
6  Carano because of her performance on set, rendering this request irrelevant.  For the
7  avoidance of doubt, should Carano present evidence about the hours she worked, the
8  physical toll she underwent in performing her stunts, and the like, Defendants
9  reserve the right to rebut any such evidence.

10  **REQUEST FOR PRODUCTION NO. 52**.

11      All Documents showing compensation for each actor in Seasons 1 and 2 of
12  *The Mandalorian*.

13  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 52**.

14      Defendants incorporate their Preliminary Statement and General Objections.
15  Defendants further object to this Request on the grounds that it is seeks documents
16  that are not relevant to any issue in this action and are not reasonably calculated to
17  lead to the discovery of admissible evidence.  Defendants further object to this
18  Request on the grounds that it is overbroad, unduly burdensome, and seeks
19  documents that are not relevant to any claim or defense nor proportional to the needs
20  of this case, insofar as it seeks documents showing compensation for each actor
21  across Seasons 1 and 2 of *The Mandalorian*, a series that cast dozens of credited
22  actors, in addition to dozens of uncredited actors.  Defendants further object to the
23  extent that this Request seeks information protected by the attorney-client privilege,
24  work product doctrine, or other applicable privileges.  Defendants further object to
25  this Request on the grounds that it seeks personal and private information and/or
26  information subject to confidentiality obligations, which, if disclosed, would unduly
27  and improperly invade the protected privacy rights of employees/third-party
28  nonlitigants.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 53**.

All Documents or Communications evidencing or related to any complaint of harassment, sexual harassment, or discrimination made by or against any member of the cast or crew (including producers, directors, or anyone involved in the production of the show) during Seasons 1 and 2 of *The Mandalorian*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 53**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case.  Defendants further object to this Request on the grounds that it seeks personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants. Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, work-product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 54.**

All Documents related to Plaintiff's employment with Defendants or her role in *The Mandalorian* or any other production of Defendants, including any personnel

38

file, record of compensation, benefits, performance evaluations, commendations, or other material related to any work she performed for Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54.**

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague and ambiguous as to its use of "Documents related to Plaintiff's employment" and "other material related to any work she performed for Defendants."  Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents from Carano's personnel file as well as a record of her compensation and any performance evaluations, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 55.**

All Documents showing any person or entity to whom Defendants disseminated their statement related to Plaintiff's termination: "Gina Carano is not currently employed by Lucasfilm and there are no plans for her to be in the future. Nevertheless, her social media posts denigrating people based on their cultural and religious identities are abhorrent and unacceptable."[5]  Your response should include all postings of the statement on any social media account controlled by Defendants and any Communications with YouTube personalities, podcasts, website operators, fan forums, news/press organizations, talent agencies, public relations firms or other third parties (such as Pablo Hildago, Joe Organa, or fans of Star Wars).

---

[5] Daniel Holloway, Lucasfilm*, UTA Drop 'Mandalorian' Star Gina Carano Following Offensive Social Media Posts*, VARIETY (Feb. 10, 2021), http://tinyurl.com/3ac2rybe.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "Plaintiff's termination" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "Plaintiff's termination" to refer to Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment. Defendants further object to this Request as vague and ambiguous to the extent "any person or entity to whom Defendants disseminated their statement" could foreseeably include every person that any of the 200,000+ Disney employees shared Lucasfilm's February 10, 2021 post with, which is clearly overly broad and unduly burdensome. Defendants construe this Request as seeking the identification of any person or entity to whom Defendants sent the February 10, 2021 statement on or around such date for publication as well any postings of the statement on any social media account controlled by Defendants.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce documents sufficient to show to whom Defendants sent February 10, 2020 statement on or around such date for publication as well any postings of the statement on any social media account controlled by Defendants, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 56**.

All Communications with any persons or entities, including YouTube personalities, podcasts, website operators, fan forums, news/press organizations, talent agencies, advertising developers, social media companies, public relations firms or other third parties (such as Pablo Hildago, Joe Organa, or fans of Star Wars) regarding Plaintiff, including but not limited to her social media posts and/or her termination from *The Mandalorian*.

40

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 56**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case. Defendants further object to this Request on the grounds that "her termination" is vague, ambiguous, and argumentative, as Carano was not "terminated." Defendants construe "her termination" to refer to Lucasfilm's February 10, 2021 statement reflecting Defendants' disassociation from Carano, which, to be clear, was not the termination of employment.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged external communications of Pablo Hidalgo and other select custodians reasonably likely to have responsive communications with Joe Organa, Germain Lussier, Jordon Maison, and other third parties between June 1, 2020 and December 31, 2021 concerning Carano's social media use and/or Defendants' disassociation with her, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 57**.

All Communications with any persons or entities, including YouTube personalities, podcasts, website operators, fan forums, news/press organizations, talent agencies, advertising developers, social media companies, public relations firms or other third parties (such as Pablo Hildago, Joe Organa, or fans of Star Wars) regarding removing information or displays of Plaintiff or her likeness from any promotions (including any advertisements) of Disney+, Star Wars, or *The Mandalorian*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 57**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly

burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged external communications of Pablo Hidalgo and other select custodians reasonably likely to have responsive communications with Mark Raats, Joe Organa, Germain Lussier, Jordon Maison, and other third parties between June 1, 2020 and December 31, 2021 concerning the removal of information or displays of Carano or her likeness from any posters, promotions, or advertisements of Disney+, Star Wars, or *The Mandalorian* on the basis of her social media posts, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 58**.

All Documents showing all political contributions made by Defendants, their officers, directors and employees, whether to individual candidates, political action committees, or political organizations such as the Democratic Party, Republican Party, ActBlue, or any other organization, to support political candidates or causes, showing to whom the donation was made, the amount, and the date of the donation.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 58**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case.

Subject to and without waiving these specific objections and the General Objections, Defendants will not produce documents responsive to this Request.[6]

---

[6] Defendants note while they still fail to see the relevance of this information, they have nonetheless pointed Carano's counsel to TWDC's publicly available website containing this historical information.

**REQUEST FOR PRODUCTION NO. 59**.

All Documents related to the hiring of any publicist, communications firm, or outside organization to monitor communications, posts, or comments made on the internet (including websites) or social media regarding or related to Gina Carano, including but not limited to the use of algorithms to monitor, control, or influence what is posted or shows up in internet searches related to Gina Carano and/or her character Cara Dune, including contracts for services, communications with any such organization regarding any such monitoring or activity, and any requests or efforts to influence the content of information available or related to Gina Carano.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that the "hiring of any publicist, communications firm, or outside organization to monitor communications, posts, or comments made on the internet (including websites) or social media regarding or related to Gina Carano" is vague and ambiguous as it is unclear whether Carano seeks information about the hiring of a publicist, communications firm, or outside organization *specifically* to monitor internet communications concerning Carano, or any publicist, communications firm, or outside organizations more broadly who may have included such monitoring of internet communications concerning Carano. Defendants further object to this Request on the grounds that it is vague, ambiguous, and argumentative to the extent it suggests Defendants "influence[d] what is posted or shows up in internet searches related to Gina Carano and/or her character Cara Dune."

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents sufficient to show the hiring of any publicist, communications firm, or outside organization for the purpose of monitoring communications, posts, or comments made on the internet or social media regarding or related to Carano, as well as any non-privileged

43

communications with such third parties relating to Carano, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 60**.

All Documents listed in Defendants' Rule 26(a) Initial Disclosures.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 60**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it is vague and ambiguous to the extent it seeks documents "listed" in Defendants' Rule 26(a) Initial Disclosures, while such disclosures merely listed categories of documents, not specific documents.

Subject to and without waiving these specific objections and the General Objections, Defendants have produced the Declarations page of the insurance policy disclosed under Federal Rule 26(a)(1)(iv) of Civil Procedure, which is the only document specifically identified in Defendants' Rule 26(a) disclosures.  Further responding, Defendants will produce any non-privileged documents within the categories enumerated in their Rule 26(a) disclosures, to the extent any such documents are identified through a reasonably diligent inquiry.

Dated: February 5, 2025          **O'MELVENY & MYERS LLP**


By: */s/ Molly M. Lens*

Molly M. Lens

DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
MOLLY M. LENS (S.B. #283867)
mlens@omm.com
KRISTIN MACDONNELL (S.B. #307124)
kmacdonnell@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone: +1 310 553 6700
Facsimile:  +1 310 246 6779

JONATHAN D. HACKER (*pro hac vice*)
jhacker@omm.com
JOSHUA REVESZ (*pro hac vice*)
jrevesz@omm.com
1625 Eye Street, NW
Washington, DC 20006
Telephone: +1 202 383 5300
Facsimile:  +1 202 383 5414

*Attorneys for Defendants The Walt Disney Company, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc.*

**CERTIFICATE OF SERVICE**

I certify that a copy of the forgoing was served on counsel for Carano via email this 5th day of February, 2025.

GENE C. SCHAERR
EDWARD H. TRENT
JOSHUA PRINCE
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
etrent@schaerr-jaffe.com
jprince@schaerr-jaffe.com

*/s/ Salvatore J. Cocchiaro*
Salvatore J. Cocchiaro

# ADDENDUM D

1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
3  KRISTIN MACDONNELL (S.B. #307124)
   kmacdonnell@omm.com
4  O'MELVENY & MYERS LLP
5  1999 Avenue of the Stars, 8th Floor
   Los Angeles, California  90067-6035
6  Telephone:  +1 310 553 6700
   Facsimile:   +1 310 246 6779
7
8  JONATHAN D. HACKER (*pro hac vice*)
   jhacker@omm.com
9  JOSHUA REVESZ (*pro hac vice*)
   jrevesz@omm.com
10 O'MELVENY & MYERS  LLP
11 1625 Eye Street, NW
   Washington, DC 20006
12 Telephone:  +1 202 383 5300
   Facsimile:   +1 202 383 5414
13
14 *Attorneys for Defendants The Walt Disney*
   *Company, Lucasfilm Ltd. LLC, and*
15 *Huckleberry Industries (US) Inc.*

16             UNITED STATES DISTRICT COURT
17             CENTRAL DISTRICT OF CALIFORNIA

18
19                                  Case No. 2:24-cv-01009-SPG-SK
20                                  **DEFENDANTS' SUPPLEMENTAL**
   GINA CARANO,                    **RESPONSES AND OBJECTIONS TO**
21                                  **CARANO'S SECOND SET OF**
              Plaintiff,           **REQUESTS FOR PRODUCTION**
22
       v.
23
   THE WALT DISNEY COMPANY,        District Judge:
24 LUCASFILM LTD. LLC, and             Hon. Sherilyn Peace Garnett
   HUCKLEBERRY INDUSTRIES (US)     Magistrate Judge:
25 Inc.,                               Hon. Steve Kim
26            Defendants.
27
28

                          1

Defendants The Walt Disney Company ("TWDC"), Lucasfilm Ltd. LLC ("Lucasfilm"), and Huckleberry Industries (US) Inc. ("Huckleberry") (collectively, "Defendants"), through undersigned counsel, hereby collectively supplement certain of their November 25, 2024 responses and objections to Plaintiff Gina Carano ("Carano")'s Second Set of Requests for Production pursuant to Federal Rule of Civil Procedure 34, which Carano served via email on October 17, 2024 (each a "Request" and collectively "Requests").

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

1.    Defendants' responses are made without waiver of the right to (a) object to the use of these responses or any information contained therein on any basis, including, but not limited to, questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility; (b) supplement, correct, and/or amend these responses; (c) offer expert witness opinions on any relevant matter, at the appropriate time, and (d) object to other discovery involving the subject thereof.

2.    Defendants object to each Request to the extent it seeks information developed, or documents created, after February 6, 2024 (the date that Carano filed this action) as overbroad, beyond the scope of the allegations, seek information or documents protected by the attorney-client privilege and work product doctrines, and are not reasonably calculated to lead to the discovery of admissible evidence. Unless otherwise indicated in the specific responses below, Defendants do not agree to produce documents created after February 6, 2024.  Relatedly, consistent with Carano's instructions, Defendants do not agree to produce documents prior to January 1, 2019.

3.    Defendants object to each Request to the extent it seeks information or documents that are a matter of public record or otherwise equally available to Carano.  That said, without committing to undertake a search specifically for documents in the public record or available to Carano, Defendants will not withhold

any responsive documents that it identifies in their files through a reasonably diligent search because the documents may also be available in the public record or available to Carano.

4.     To the extent that Defendants undertake to provide information and/or produce documents, Defendants will conduct a reasonably diligent inquiry by identifying custodians reasonably likely to have non-cumulative, non-privileged responsive documents, as qualified by Defendants' objections and responses and, in the case of electronic documents, Defendants will use search terms reasonably expected to yield non-privileged, responsive Documents.

5.     Defendants object to each Request to the extent it seeks the production of documents protected by the attorney-client privilege, the attorney-work product doctrine, the common interest or joint defense privileges, rules and agreements governing privacy or confidentiality, or any other applicable privilege or protection recognized under statute or applicable case law.   Inadvertent production by Defendants of any documents protected by any applicable privilege or protection shall not constitute a waiver of the privilege or protection.

6.     Defendants object to each Request to the extent it calls for information that would infringe upon the legitimate privacy rights of current or former employees, officers, or directors of Defendants, current or former affiliates, related companies, subsidiaries, or other individuals, to the full extent such privacy rights and expectations are protected by constitution, statute, contract, court order, or public policy.   Defendants reserve the right to redact documents to protect unnecessary disclosure of nonresponsive or irrelevant sensitive, confidential, or proprietary business information.

7.     Defendants object to each Request to the extent it seeks Defendants' sensitive, confidential, or proprietary business information.   To the extent such documents are responsive, relevant, and not privileged, Defendants will disclose

such confidential business documents pursuant to a Protective Order.

8.      Defendants object to each Request to the extent that it prematurely seeks discovery of expert materials and information in advance of their respective deadlines under any applicable Scheduling Order governing this case and/or the Federal Rules of Civil Procedure.  Defendants will not produce any expert materials or information before such deadlines.

9.      Defendants object to Instruction No. 5 to the extent that it purports to require Defendants to log documents on an individual, as opposed to categorical basis.  Defendants reserve the right to log documents on a categorical basis.  In addition, as the burden and expense associated with the logging of documents after February 6, 2024 outweighs any benefit of logging such documents, Defendants do not agree to log any privileged documents after February 6, 2024.

10.      Defendants object to Instruction No. 6 to the extent it may be construed as prohibiting Defendants from withholding entire documents when appropriate. Defendants reserve the right to withhold entire documents on the basis of any claimed privileges, immunities, or confidentiality obligations, but will redact and release all non-privileged portions of any documents when appropriate.

11.      Defendants object to Instruction No. 10 to the extent it requires Defendants to provide supplemental responses to "correct or update any previous response" based on newly discovered information or documents "not later than 20 days after such discovery" as seeking to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure or the Local Rules of the District Court for the Central District of California.  Consistent with Federal Rule 26(e)(1) Defendants will supplement responses, as necessary, in a timely manner.

12.      Defendants object to the Definition of "Defendant" or "Defendants" as overbroad and ambiguous to the extent this Definition includes TWDC, Lucasfilm,

and Huckleberry.  By responding collectively, TWDC, Lucasfilm, and Huckleberry do not waive, but rather preserve, all arguments with respect to the fact that Defendants are separate legal entities.

13.    Defendants object to the date specified for production in the Requests. Defendants will make rolling productions of documents, with its productions intended to commence forthwith now that a Protective Order has been entered.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR PRODUCTION NO. 61[1]**.

All Documents or Communications where Defendants asked employees or contractors, including but not limited to Pablo Hildago, on *The Mandalorian* or any other Lucasfilm production to delete or alter any social media post.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 61**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents from any "employees and contractors" on any Lucasfilm production whatsoever concerning the social media activity of persons not involved in Seasons 1 and 2 of *The Mandalorian*.  Defendants further object to this Request as seeking personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants.

---

[1] To avoid the potential confusion of having multiple sets of Requests for Production commencing with "Request No. 1," Defendants have renumbered the Requests in sequential order continuing from the final Request in Plaintiffs' First Set of Requests for Production. Accordingly, Request No. 1 of this Second Set of Requests for Production has been renumbered as Request No. 61 and so on.  *Cf.* Wagstaffe Prac Guide: Fed Civil Proc Before Trial § 35-III (2024).

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged communications with Pedro Pascal, Mark Hamill, or any other actor on Seasons 1 or 2 of *The Mandalorian* named in the Complaint to delete or alter any social media post, to the extent any such documents are identified through a reasonably diligent inquiry. Further responding, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 62**.

All Documents, including all contracts or other material showing the compensation for Oscar Isaac, John Boyega, and Kelly Marie Tran for their roles in *The Force Awakens*, *The Last Jedi*, and/or *The Rise of Skywalker*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 62**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as seeking documents that are not relevant to any issue in this action and are not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents concerning the "contracts or other material showing the compensation" of persons not involved in Seasons 1 and 2 of *The Mandalorian*. Defendants further object to this Request as seeking personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants. Defendants further object to this Request as seeking commercially sensitive information.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the

6

1  scope of this Request, with Defendants having made a proposal for Carano's
2  consideration concurrent with these responses.

3  **REQUEST FOR PRODUCTION NO. 63**.

4      All Documents showing the budgets and net and gross profits for the
5  following productions: (1) all seasons of *The Mandalorian*, (2) all seasons of *The*
6  *Acolyte*, (3) all seasons of *Andor*, (4) all seasons of *Ahsoka*, (5) all seasons of *The*
7  *Book of Boba Fett*, (6) all seasons of *Obi-wan Kenobi*, and (7) all seasons of *Skeleton*
8  *Crew.*

   **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 63**.

9      Defendants incorporate their Preliminary Statement and General Objections.
10 Defendants further object to this Request as overbroad, unduly burdensome, and
11 seeks documents that are not relevant to any claim or defense nor proportional to the
12 needs of this case, insofar as it seeks the "budgets and net and gross profits" of
13 productions, particularly those other than Seasons 1 and 2 of *The Mandalorian*,
14 which have nothing to do with Carano's claims in this action.  Indeed, even as to
15 Seasons 1 and 2 of *The Mandalorian*, the requested documents are not relevant to
16 any claim or defense in the case, much less proportional to the needs to the case.
17 Defendants further object to this Request as seeking commercially sensitive
18 information.

19     Subject to and without waiving these specific objections and the General
20 Objections, Defendants are presently meeting and conferring with Carano about the
21 scope of this Request, with Defendants having made a proposal for Carano's
22 consideration concurrent with these responses.

23 **REQUEST FOR PRODUCTION NO. 64**.

24     All Documents showing the budgets and net and gross profits for the
25 following productions: (1) *The Force Awakens*, (2) *The Last Jedi*, and (3) *The Rise*
26 *of Skywalker*.

27
28

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 64**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, as it seeks the "budgets and net and gross profits" of productions other than Seasons 1 and 2 of *The Mandalorian*, which have nothing to do with Carano's claims in this action. Defendants further object to this Request as seeking commercially sensitive information.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 65**.

All Documents showing the budget for *The Mandalorian and Grogu*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 65**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, as it seeks the "budget" of productions, other than Seasons 1 and 2 of *The Mandalorian*, which have nothing to do with Carano's claims in this action. Defendants further object to this Request as seeking commercially sensitive information.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 66**.

All Documents showing compensation, including contracts, for all actors in *The Mandalorian and Grogu*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 66**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, as it seeks documents concerning the compensation of "all actors," including persons not involved in Seasons 1 and 2 of *The Mandalorian*. Defendants further object to this Request as seeking personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants. Defendants further object to this Request as seeking commercially sensitive information.

Subject to and without waiving these specific objections and the General Objections, Defendants are presently meeting and conferring with Carano about the scope of this Request, with Defendants having made a proposal for Carano's consideration concurrent with these responses.

**REQUEST FOR PRODUCTION NO. 67**.

All Documents and Communications related to any efforts by Defendants to promote or obtain endorsements or other financially profitable ventures for any actor in *The Mandalorian*.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 67**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that "promote" and "other financially profitable ventures" are vague and ambiguous. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as

it seeks documents concerning the "endorsements or financially profitable ventures" of persons not involved in Seasons 1 and 2 of *The Mandalorian*.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged external communications showing any efforts by Defendants to promote or obtain endorsements or sponsorships for Gina Carano, Pedro Pascal, Carl Weathers, or Katee Sackhoff related to their work on *The Mandalorian*, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 68**.

All Documents and Communications featuring or noting the role of Carano in *The Mandalorian*, including advertising, print and digital collateral, merchandise, nomination for any awards, interviews, or promotions.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 68**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad and unduly burdensome, insofar as it seeks all documents or communications without exception "featuring or noting the role of Carano in *The Mandalorian*."

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged external communications showing efforts taken to nominate Carano for any awards related to her role as Cara Dune in Season 1 or 2 of *The Mandalorian*, including any awards submission packages made on her behalf, to the extent any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 69**.

All Documents and Communications requesting that Carano be removed from any posters or promotional materials for *The Mandalorian*, including the date and reason for any such request.

**<u>SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 69</u>**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case. Defendants further object to this Request as vague, ambiguous, and argumentative to the extent it suggests Defendants "request[ed] that Carano be removed from any posters or promotional material."

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged external communications of Pablo Hidalgo and other select custodians reasonably likely to have responsive communications with Mark Raats, Joe Organa, Germain Lussier, Jordon Maison, and other third parties between June 1, 2020 and December 31, 2021 concerning the removal of information or displays of Carano or her likeness from any posters, promotions, or advertisements of Disney+, Star Wars, or *The Mandalorian* on the basis of her social media posts, to the extent any such documents are identified through a reasonably diligent inquiry.

**<u>REQUEST FOR PRODUCTION NO. 70</u>**.

All Documents and Communications related to any public comments, including social media posts concerning Defendants' dispute with Scarlett Johansson related to her film *The Black Widow*.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 70</u>**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, as it seeks documents concerning persons not involved in Seasons 1 and 2 of *The Mandalorian*, particularly as there is no nexus between the issues in this dispute and Scarlett Johansson's dispute with The Walt Disney Company related to *The Black Widow* film. Defendants further object to this Request as seeking

11

personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants.  Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.  Alternatively, to the extent that Carano seeks information in the public record, that information is equally available to her.

Subject to and without waiving these specific objections and the General Objections, Defendants will not produce documents responsive to this Request. Further responding, Defendants understand that Carano is not pursuing this Request.

**REQUEST FOR PRODUCTION NO. 71**.

All Documents and Communications related to any public comments, including social media posts  concerning Defendants' and/or Bob Chapek's comments on Florida's Parental Rights in Education legislation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, particularly as there is no nexus between the issues in this dispute and Florida's Parental Rights in Education legislation.  Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.  Alternatively, to the extent that Carano seeks information in the public record, that information is equally available to her.

Subject to and without waiving these specific objections and the General Objections, Defendants will not produce documents responsive to this Request. Further responding, Defendants understand that Carano is not pursuing this Request.

DEFENDANTS' SUPPL. R&OS TO
CARANO'S 2ND SET OF RFPS

1  **REQUEST FOR PRODUCTION NO. 72**.

2      All Documents and Communications placed on any social media

3  channel/account controlled or operated by Defendants related to (1) Carano, (2)

4  Pedro Pascal, (3) Mark Hamill, (4) Rosario Dawson, (5) Amandla Stenberg, (6)

5  Krystina Arielle, and (7) James Gunn.

6  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 72**.

7      Defendants incorporate their Preliminary Statement and General Objections.

8  Defendants further object to this Request as overbroad, unduly burdensome, and

9  seeks documents that are not relevant to any claim or defense nor proportional to the

10  needs of this case.  Defendants further object to this Request as overbroad, unduly

11  burdensome, and seeks documents that are not relevant to any claim or defense nor

12  proportional to the needs of this case,  insofar as it seeks documents concerning

13  persons not involved in Seasons 1 and 2 of *The Mandalorian*.  Defendants further

14  object to this Request as vague and ambiguous as to "any social media

15  channel/account controlled or operated by Defendants."  Defendants interpret "any

16  social media channel/account controlled or operated by Defendants" to be the

17  following social media accounts on X/Twitter, Facebook, and Instagram:

18  @TheMandalorian, @Starwars, @Lucasfilm, @DisneyPlus, @Disney, and

19  @WaltDisneyCo.  Defendants also object to this Request to the extent it seeks

20  information or documents that are a matter of public record or otherwise equally

21  available to Carano.

22      Subject to and without waiving these specific objections and the General

23  Objections, Defendants will produce non-privileged posts regarding Carano from

24  the following social media accounts on X/Twitter, Facebook, and Instagram:

25  @TheMandalorian, @Starwars, @Lucasfilm, @DisneyPlus, @Disney, and

26  @WaltDisneyCo, to the extent any such documents are identified through a

27  reasonably diligent inquiry.  Further responding, Defendants understand that Carano

28

is not pursuing anything further with respect this Request, as Carano has agreed to search for the balance of the publicly available documents sought by this Request and that she will produce any social media posts that she intends to use (including during depositions) with her rolling productions.

**REQUEST FOR PRODUCTION NO. 73**.

All Documents and Communications related to any complaints made by any actor or staff member involved in the production of *The Mandalorian* about Carano.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case. Defendants further object to this Request as seeking personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged complaints to human resources or employee relations related to Carano's social media activity and any complaints related to the issuance of Lucasfilm's February 10, 2021 statement, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 74**.

All Documents and Communications regarding Carano's performance on *The Mandalorian*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad and unduly burdensome,

insofar as it seeks all documents or communications "regarding Carano's performance on *The Mandalorian*." Defendants further object to this Request as vague and ambiguous as to what Carano means by her "performance." For example, it is unclear whether she means her on-screen performance, her off-screen performance, or something different.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents from any personnel file associated with Carano, records of her compensation, and performance evaluations, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 75**.

All Documents and Communications that support your denial to the allegation in paragraph 54 of the Complaint that "Defendants did nothing to support Carano."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that "Defendants did nothing to support Carano" is vague and ambiguous. In light of Carano's response to Defendants' Request for Production No. 37, in which she confirmed that she meant "Defendants did nothing to support Carano" following the negative response to her social media activity regarding the Black Lives Matter movement, Defendants construe this Request to be seeking documents concerning any public statements in support of Carano following the online negative response to her social media activity regarding the Black Lives Matter movement. Defendants further object to the extent that this Request is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents relating to the issuance of a public statement in support of Carano following the negative response to her social media activity regarding the Black Lives Matter movement, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 76**.

All Documents and Communications that support your claim in your Answer to paragraph 58 of the Complaint that "Disney employee(s) voiced disagreement with her [Carano] views on Covid and/or Covid vaccines."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. Defendants further object to this Request as seeking personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants. Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents supporting the claim in their Answer to paragraph 58 of the Complaint that "Disney employee(s) voiced disagreement with her [Carano] views on Covid and/or Covid vaccines," to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 77**.

All Documents and Communications that support your claim in your Answer to paragraph 67 of the Complaint that "many understood Carano's use of *Star Wars*

1  indicia ("boop/bop/beep") on her social media profile as a way to mock transgender

2  individuals or those who support the transgender community."

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 77**.

4        Defendants incorporate their Preliminary Statement and General Objections.

5  Defendants further object to the extent that this Request is overbroad, unduly

6  burdensome and calls for the production of documents protected by the attorney

7  work-product privilege.  Defendants object to this Request to the extent it seeks

8  information or documents that are equally available to Carano.  Defendants further

9  state that they have not yet determined which documents on which they intend to

10  rely to prove the positions taken in their Answer.

11        Subject to and without waiving these specific objections and the General

12  Objections, Defendants will produce non-privileged documents supporting the claim

13  in their Answer to paragraph 67 of the Complaint that "many understood Carano's

14  use of *Star Wars* indicia ("boop/bop/beep") on her social media profile as a way to

15  mock transgender individuals or those who support the transgender community," to

16  the extent that any such documents are identified through a reasonably diligent

17  inquiry.

18  **REQUEST FOR PRODUCTION NO. 78**.

19        All Documents and Communications that support your claim in your Answer

20  to the allegations in paragraph 75 of the Complaint "that it [Defendants] (and

21  Carano's own representatives) attempted to work with Carano to help her understand

22  why her posts were hurtful and were harmful to *The Mandalorian*."

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 78**.

24        Defendants incorporate their Preliminary Statement and General Objections.

25  Defendants further object to the extent that this Request is overbroad, unduly

26  burdensome and calls for the production of documents protected by the attorney

27  work-product privilege.  Defendants object to this Request to the extent it seeks

28

information or documents that are equally available to Carano.  Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents supporting the claim in their Answer to paragraph 75 of the Complaint "that it [Defendants] (and Carano's own representatives) attempted to work with Carano to help her understand why her posts were hurtful and were harmful to *The Mandalorian*," to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 79.**

All Documents and Communications that support your denial of the allegations in paragraph 77 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79.**

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it lacks specificity or particularity and instead simply seeks documents supporting Defendants' denial. *See, e.g.*, *Baker v. Perez*, 2011 WL 2414504, *2-3 (E.D. Cal. 2011) (RFP that seeks "all documents that 'support your denial in [your] answer for amended complaint[']s paragraph # 43'" "does not describe with sufficient particularity the documents sought"); *Hall v. Fiat Chrysler Am. US LLC*, 2023 WL 11518071, at *9 (C.D. Cal. May 15, 2023) (RFPs seeking "documents supporting each of Defendant's denials of allegations in paragraphs … of its Answer" are overbroad and "do not describe with sufficient particularity the documents sought").  Defendants further object to the extent that "your denial of the allegations in paragraph 77" is vague and ambiguous to the extent there are multiple allegations in paragraph 77.  Defendants construe this Request in context to be seeking documents concerning any efforts by Defendants to encourage a public statement from Carano in connection with her "beep/bop/boop" controversy.  Defendants further object to the extent that this

Request is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning any efforts by Defendants to encourage a public statement from Carano in connection with her "beep/bop/boop" controversy, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 80**.

All Documents and Communications that support your denial of the allegations in paragraph 78 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it lacks specificity or particularity and instead simply seeks documents supporting Defendants' denial. *See, e.g.*, *Baker v. Perez*, 2011 WL 2414504, *2-3 (E.D. Cal. 2011) (RFP that seeks "all documents that 'support your denial in [your] answer for amended complaint[']s paragraph # 43'" "does not describe with sufficient particularity the documents sought"); *Hall v. Fiat Chrysler Am. US LLC*, 2023 WL 11518071, at *9 (C.D. Cal. May 15, 2023) (RFPs seeking "documents supporting each of Defendant's denials of allegations in paragraphs … of its Answer" are overbroad and "do not describe with sufficient particularity the documents sought"). Defendants further object to the extent that "your denial of the allegations in paragraph 78" is vague and ambiguous to the extent there are multiple allegations in paragraph 78. Defendants construe this Request in context to be seeking documents concerning Defendants' response to Carano's alleged proposed alternative public statement in connection

with her "beep/bop/boop" controversy. Defendants further object to the extent that this Request is overbroad, unduly burdensome and calls for the production of documents protected by the attorney work-product privilege. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents concerning Defendants' response to Carano's alleged proposed alternative public statement in connection with her "beep/bop/boop" controversy, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 81**.

To the extent not provided in response to Plaintiff's First Request for Production of Documents No. 39, all Documents and Communications related to any investigation into the creation or support of the GoFundMe account referenced in paragraph 80 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request to the extent that it calls for information protected by the attorney-client privilege, work-product doctrine, or other applicable privileges. Defendants also object to this Request to the extent it is duplicative of Plaintiff's First Request for Production of Documents No. 39.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents related to the GoFundMe page "Trans Rights are Human Rights: This is the Way" found at https://www.gofundme.com/f/trans-rights-are-human-rights-this-is-the-way, as referenced in paragraph 80 of the Complaint, to the extent that any such documents are identified through a reasonably diligent inquiry.

1  **REQUEST FOR PRODUCTION NO. 82**.

2      All Documents and Communications related to your assertion in part of your

3  Answer to paragraph 83 of the Complaint that Defendants' "use of Carano in

4  promotional activity for *The Mandalorian* was impacted by the disruptive public

5  attention Carano generated both for herself and for the show as a result of her posts."

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 82**.

7      Defendants incorporate their Preliminary Statement and General Objections.

8  Defendants further object to the extent that this Request is overbroad, unduly

9  burdensome and calls for the production of documents protected by the attorney

10 work-product privilege. Defendants object to this Request to the extent it seeks

11 information or documents that are equally available to Carano. Defendants further

12 state that they have not yet determined which documents on which they intend to

13 rely to prove the positions taken in their Answer.

14     Subject to and without waiving these specific objections and the General

15 Objections, Defendants will produce non-privileged documents supporting the claim

16 in their Answer to paragraph 83 of the Complaint that Defendants "use of Carano in

17 promotional activity for *The Mandalorian* was impacted by the disruptive public

18 attention Carano generated both for herself and for the show as a result of her posts,"

19 to the extent that any such documents are identified through a reasonably diligent

20 inquiry.

21 **REQUEST FOR PRODUCTION NO. 83**.

22     All Documents and Communications related to the "Lucasfilm PRIDE

23 employee resource group" referenced in your Answer to paragraph 84 of the

24 Complaint, including which employee[s] constituted the "Lucasfilm PRIDE

25 employee resource group" and the purpose and role of this group.

26 **RESPONSE TO REQUEST FOR PRODUCTION NO. 83**.

27     Defendants incorporate their Preliminary Statement and General Objections.

28 Defendants further object to this Request as overbroad, unduly burdensome, and

seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks "All Documents and Communications related to the 'Lucasfilm PRIDE employee resource group'" and the specific identities of group members.  Defendants further object to this Request as harassing and seeking personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents reflecting any complaints or concerns from the Lucasfilm PRIDE employee resource group referenced in Defendants' Answer to paragraph 84 of the Complaint, as well as any documents sufficient to show the purpose and role of Lucasfilm PRIDE, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 84.**

All Documents and Communications that support your claim in your Answer to paragraph 89 of the Complaint that "Carano's posts garnered unfavorable and disruptive public attention, for Carano and *The Mandalorian*."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84.**

Defendants incorporate their Preliminary Statement and General Objections. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano.  Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents supporting the claim in their Answer to paragraph 89 of the Complaint that "Carano's posts garnered unfavorable and disruptive public attention, for Carano and *The Mandalorian*," to

the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 85**.

All Documents and Communications that support your denial to the allegations in paragraphs 25 and 94 of the Complaint that "Carano's social media activity did not detract from fans' reaction to both her appearance on the show [*The Mandalorian*] and the show more generally.*"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents supporting their denial to the allegations in paragraphs 25 and 94 of the Complaint that "Carano's social media activity did not detract from fans' reaction to both her appearance on the show [*The Mandalorian*] and the show more generally," to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 86**.

All Documents and Communications related to your Answer to paragraph 95 of the Complaint concerning "Disney's coverage of the unfavorable and distracting social media mentions of "Gina Carano" and the hashtag "#FireGinaCarano" over the past seven days" prior to January 8, 2021, including why Defendants were monitoring any such social media mentions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents regarding "Disney's coverage of the unfavorable and distracting social media mentions of 'Gina Carano,' including the hashtag '#FireGinaCarano' over the past seven days" prior to January 8, 2021, and Defendants' reasons for this coverage, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 87**.

All Documents and Communications related to your Answer to paragraph 100 of the Complaint, namely "that on January 22, 2021, Disney tweeted via its @starwars Twitter account, 'Our Star Wars community is one of hope and inclusivity. We do not stand for bullying and racism. We support @KrystinaArielle'" including Documents and Communications showing who approved that statement.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 87**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents concerning persons not involved in Seasons 1 and 2 of *The Mandalorian*.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents and communications concerning the drafting and release of the January 22, 2021

24

@starwars tweet concerning Krystina Arielle, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 88.**

All Communications to or from Darrell Borquez regarding Carano.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case to the extent it seeks all documents to or from Darrell Borquez unlimited by any specific subject matter involving Carano. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce all non-privileged communications to or from Darrell Borquez regarding Carano's social media activity, any request and/or requirement that Carano meet members of GLAAD in September 2020, attend media training in September 2020, issue a public statement or apology for listing "boop/bop/beep" in her X/Twitter profile header in September 2020, or meet by Zoom with Kathleen Kennedy and employees of Lucasfilm who identify with the LGBTQ+ community in September 2020, to the extent that any such documents are identified through a reasonably diligent inquiry. Defendants are also willing to meet and confer with Carano about the scope of this Request to the extent she can identify specific documents or categories of documents that Defendants have not already agreed to provide in response to this or another Request.

**REQUEST FOR PRODUCTION NO. 89**.

All Documents and Communications that support your denial of the allegations in paragraph 106 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it lacks specificity or particularity and instead simply seeks documents supporting Defendants' denial. *See, e.g.*, *Baker v. Perez*, 2011 WL 2414504, *2-3 (E.D. Cal. 2011) (RFP that seeks "all documents that 'support your denial in [your] answer for amended complaint[']s paragraph # 43'" "does not describe with sufficient particularity the documents sought"); *Hall v. Fiat Chrysler Am. US LLC*, 2023 WL 11518071, at *9 (C.D. Cal. May 15, 2023) (RFPs seeking "documents supporting each of Defendant's denials of allegations in paragraphs … of its Answer" are overbroad and "do not describe with sufficient particularity the documents sought").  Defendants further object to the extent that "your denial of the allegations in paragraph 106" is vague and ambiguous to the extent there are multiple allegations in paragraph 106.  Defendants construe this Request in context to be seeking documents concerning Carl Weathers' May 23, 2023 social post referenced in paragraph 106, which is duplicative of Plaintiff's First Request for Production of Documents No. 20.  Defendants further object to this Request to the extent it seeks information or documents that are equally available to Carano, as a simple comparison of Carano's February 10, 2021 post and Weathers' May 23, 2023 post plainly demonstrates that they are not "the exact same message."  Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged  documents concerning Carl Weathers' May 23, 2023 social post referenced in paragraph 106, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 90**.

All Documents and Communications that support your denial of the allegations in paragraph 120 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it lacks specificity or particularity and instead simply seeks documents supporting Defendants' denial. *See, e.g.*, *Baker v. Perez*, 2011 WL 2414504, *2-3 (E.D. Cal. 2011) (RFP that seeks "all documents that 'support your denial in [your] answer for amended complaint[']s paragraph # 43'" "does not describe with sufficient particularity the documents sought"); *Hall v. Fiat Chrysler Am. US LLC*, 2023 WL 11518071, at *9 (C.D. Cal. May 15, 2023) (RFPs seeking "documents supporting each of Defendant's denials of allegations in paragraphs … of its Answer" are overbroad and "do not describe with sufficient particularity the documents sought").  Defendants further object to the extent that "your denial of the allegations in paragraph 120" is vague and ambiguous to the extent there are multiple allegations in paragraph 120.  Defendants construe this Request in context to be seeking documents concerning any efforts by Defendants to remove mentions of Carano's name or likeness in any promotional material or listings of the *Running Wild with Bear Grylls* episode featuring Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to prove the positions taken in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents supporting their denial of the allegations in paragraph 120 of the Complaint that Defendants "removed all mention of her name or likeness in any promotional material or even listings of" the *Running Wild with Bear Grylls* episode featuring Carano, to the extent that any such documents are identified through a reasonably diligent inquiry.

**REQUEST FOR PRODUCTION NO. 91**.

All Documents and Communications that support your denial of the allegations in paragraph 144 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to this Request on the grounds that it lacks specificity or particularity and instead simply seeks documents supporting Defendants' denial. *See, e.g.*, *Baker v. Perez*, 2011 WL 2414504, *2-3 (E.D. Cal. 2011) (RFP that seeks "all documents that 'support your denial in [your] answer for amended complaint[']s paragraph # 43'" "does not describe with sufficient particularity the documents sought"); *Hall v. Fiat Chrysler Am. US LLC*, 2023 WL 11518071, at *9 (C.D. Cal. May 15, 2023) (RFPs seeking "documents supporting each of Defendant's denials of allegations in paragraphs … of its Answer" are overbroad and "do not describe with sufficient particularity the documents sought"). Defendants further object to this Request as overbroad, unduly burdensome, and seeks documents that are not relevant to any claim or defense nor proportional to the needs of this case, insofar as it seeks documents concerning persons not involved in Seasons 1 and 2 of *The Mandalorian*. Defendants further object to this Request as seeking personal and private information and/or information subject to confidentiality obligations, which, if disclosed, would unduly and improperly invade the protected privacy rights of employees/third-party nonlitigants. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving these specific objections and the General Objections, Defendants will not produce documents responsive to this Request. Further responding, Defendants understand that Carano is not pursuing this Request.

1    **REQUEST FOR PRODUCTION NO. 92**.

2        All Documents and Communications that support your Second Affirmative

3    Defense (Protected First Amendment Activity).

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 92**.

5        Defendants incorporate their Preliminary Statement and General Objections.

6    Defendants further object to the extent that this Request seeks information protected

7    by the attorney-client privilege, work product doctrine, or other applicable

8    privileges.  Defendants object to this Request to the extent it seeks information or

9    documents that are equally available to Carano.  Defendants further state that they

10   have not yet determined which documents on which they intend to rely to support

11   the affirmative defenses invoked in their Answer.

12       Subject to and without waiving these specific objections and the General

13   Objections, Defendants will produce non-privileged documents that they intend to

14   rely on with respect to their Second Affirmative Defense.

15   **REQUEST FOR PRODUCTION NO. 93**.

16       All Documents and Communications that support your Third Affirmative

17   Defense (Unclean Hands).

18   **RESPONSE TO REQUEST FOR PRODUCTION NO. 93**.

19       Defendants incorporate their Preliminary Statement and General Objections.

20   Defendants further object to the extent that this Request seeks information protected

21   by the attorney-client privilege, work product doctrine, or other applicable

22   privileges.  Defendants object to this Request to the extent it seeks information or

23   documents that are equally available to Carano.  Defendants further state that they

24   have not yet determined which documents on which they intend to rely to support

25   the affirmative defenses invoked in their Answer.

26

27

28

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents that they intend to rely on with respect to their Third Affirmative Defense.

**<u>REQUEST FOR PRODUCTION NO. 94</u>**.

All Documents and Communications that support your Fourth Affirmative Defense (Waiver).

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 94</u>**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to support the affirmative defenses invoked in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents that they intend to rely on with respect to their Fourth Affirmative Defense.

**<u>REQUEST FOR PRODUCTION NO. 95</u>**.

All Documents and Communications that support your Sixth Affirmative Defense (Causation).

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 95</u>**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano. Defendants further state that they

1  have not yet determined which documents on which they intend to rely to support
2  the affirmative defenses invoked in their Answer.

3       Subject to and without waiving these specific objections and the General
4  Objections, Defendants will produce non-privileged documents that they intend to
5  rely on with respect to their Sixth Affirmative Defense.

6  **REQUEST FOR PRODUCTION NO. 96**.

7       All Documents and Communications that support your Seventh Affirmative
8  Defense (Acts of Other Parties).

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 96**.

10      Defendants incorporate their Preliminary Statement and General Objections.
11  Defendants further object to the extent that this Request seeks information protected
12  by the attorney-client privilege, work product doctrine, or other applicable
13  privileges. Defendants object to this Request to the extent it seeks information or
14  documents that are equally available to Carano. Defendants further state that they
15  have not yet determined which documents on which they intend to rely to support
16  the affirmative defenses invoked in their Answer.

17      Subject to and without waiving these specific objections and the General
18  Objections, Defendants will produce non-privileged documents that they intend to
19  rely on with respect to their Seventh Affirmative Defense.

20  **REQUEST FOR PRODUCTION NO. 97**.

21      All Documents and Communications that support your Ninth Affirmative
22  Defense (Not an "Employee") and Tenth Affirmative Defenses (Not an "Applicant
23  for Employment").

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 97**.

25      Defendants incorporate their Preliminary Statement and General Objections.
26  Defendants further object to the extent that this Request seeks information protected
27  by the attorney-client privilege, work product doctrine, or other applicable
28  privileges. Defendants object to this Request to the extent it seeks information or

31

documents that are equally available to Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to support the affirmative defenses invoked in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents that they intend to rely on with respect to their Ninth and Tenth Affirmative Defenses.

**REQUEST FOR PRODUCTION NO. 98**.

All Documents and Communications that support your Twelfth Affirmative Defense (No Political Motivation).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to support the affirmative defenses invoked in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents that they intend to rely on with respect to their Twelfth Affirmative Defense.

**REQUEST FOR PRODUCTION NO. 99**.

All Documents and Communications that support your Fourteenth Affirmative Defense (No Coercion).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99**.

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges. Defendants object to this Request to the extent it seeks information or

documents that are equally available to Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to support the affirmative defenses invoked in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents that they intend to rely on with respect to their Fourteenth Affirmative Defense.

**REQUEST FOR PRODUCTION NO. 100.**

All Documents and Communications that support your Nineteenth Affirmative Defense (After-Acquired Evidence).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100.**

Defendants incorporate their Preliminary Statement and General Objections. Defendants further object to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privileges. Defendants object to this Request to the extent it seeks information or documents that are equally available to Carano. Defendants further state that they have not yet determined which documents on which they intend to rely to support the affirmative defenses invoked in their Answer.

Subject to and without waiving these specific objections and the General Objections, Defendants will produce non-privileged documents that they intend to rely on with respect to their Nineteenth Affirmative Defense.

1  Dated: February 5, 2025         **O'MELVENY & MYERS LLP**

2

3                                  By:  */s/ Molly M. Lens*

4                                  Molly M. Lens

5                                  DANIEL M. PETROCELLI (S.B. #97802)

6                                  dpetrocelli@omm.com
                                   MOLLY M. LENS (S.B. #283867)

7                                  mlens@omm.com
                                   KRISTIN MACDONNELL (S.B. #307124)

8                                  kmacdonnell@omm.com

9                                  1999 Avenue of the Stars, 8th Floor
                                   Los Angeles, California  90067-6035

10                                 Telephone: +1 310 553 6700

11                                 Facsimile:  +1 310 246 6779

12                                 JONATHAN D. HACKER (*pro hac vice*)

13                                 jhacker@omm.com
                                   JOSHUA REVESZ (*pro hac vice*)

14                                 jrevesz@omm.com

15                                 1625 Eye Street, NW
                                   Washington, DC 20006

16                                 Telephone: +1 202 383 5300

17                                 Facsimile:  +1 202 383 5414

18

19                                 *Attorneys for Defendants The Walt Disney*

20                                 *Company, Lucasfilm Ltd. LLC, and Huckleberry*
                                   *Industries (US) Inc.*

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2      I certify that a copy of the forgoing was served on counsel for Carano via

3  email this 5th day of February, 2025.

4

5          GENE C. SCHAERR
           EDWARD H. TRENT
6          JOSHUA PRINCE
           SCHAERR | JAFFE LLP
7          1717 K Street NW, Suite 900
8          Washington, DC 20006
           (202) 787-1060
9          gschaerr@schaerr-jaffe.com
           etrent@schaerr-jaffe.com
10         jprince@schaerr-jaffe.com
11

12                      */s/ Salvatore J. Cocchiaro*
13                      Salvatore J. Cocchiaro

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ADDENDUM E

DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
MOLLY M. LENS (S.B. #283867)
mlens@omm.com
KRISTIN MACDONNELL (S.B. #307124)
kmacdonnell@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

JONATHAN D. HACKER (*pro hac vice*)
jhacker@omm.com
JOSHUA REVESZ (*pro hac vice*)
jrevesz@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorneys for Defendants*
*The Walt Disney Company, Lucasfilm Ltd.*
*LLC, and Huckleberry Industries (US) Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CARANO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE WALT DISNEY COMPANY, LUCASFILM LTD. LLC, and HUCKLEBERRY INDUSTRIES (US) INC.,<br><br>　　　　Defendants. | Case No. 2:24-cv-01009-SPG-SK<br><br>**DECLARATION OF MOLLY M. LENS IN SUPPORT OF DEFENDANTS' PORTIONS OF THE JOINT STIPULATION REGARDING DISCOVERY ISSUES IN DISPUTE [L.R. 37-2.2]**<br><br>Date:　April 23, 2025<br>Time:　10:00 a.m.<br>Judge: Hon. Steve Kim<br>Courtroom: 540 |

# DECLARATION OF MOLLY M. LENS

I, Molly M. Lens, pursuant to 28 U.S.C. § 1746, declare as follows:

1.       I am a partner at O'Melveny & Myers LLP, counsel for Defendants The Walt Disney Company, Lucasfilm Ltd. LLC, and Huckleberry Industries (US) Inc. (collectively, "Defendants") in this action, and a member of the bar of this Court.  I submit this declaration based on my personal knowledge and review of the documents referenced herein.  If called and sworn as a witness, I could and would testify competently thereto.  I submit this declaration in support of Defendants' portions of the Joint Stipulation Regarding Discovery Issues in Dispute initiated by Plaintiff Gina Carano ("Joint Stipulation").

2.       I submit this declaration with respect to the parties' meet-and-confer efforts, with a focus on their efforts after Plaintiff first served Defendants a joint stipulation on January 23, 2025, prior to which Plaintiff had not sent Defendants a Local Rule 37-1 letter.  Certain portions of the attached correspondence relating to discovery issues not at issue in the Joint Stipulation have been redacted for confidentiality reasons.

3.       On November 11, 2024, Edward Trent, counsel for Plaintiff, sent me a letter outlining certain claimed issues with Defendants' responses and objections to Plaintiff's First Set of Requests for Production.  Regarding Request for Production No. 52, which sought documents "showing compensation for each actor in Seasons 1 and 2 of *The Mandalorian*," Mr. Trent wrote that "copies of contracts and/or spreadsheets reflecting compensation (if such a spreadsheet exists [as] a part of Defendants' normal business operations) would suffice."  Attached as **Exhibit 1** to this declaration is a true and correct copy of Mr. Trent's November 11, 2024 letter, with the quoted language found on page 11.

4.       On November 22, 2024, the parties discussed the issues raised in Mr. Trent's November 11 letter, with Mr. Trent offering that his proposed compromise as to Request for Production No. 52 could likewise be a potential compromise to

DECLARATION OF
MOLLY M. LENS

1   Request for Production No. 31, which similarly sought documents showing "all

2   compensation provided to lead actors on *The Mandalorian* or similar Star Wars

3   series on Disney+, including but not limited to contracts for Pedro Pascal, Carl

4   Weathers, Amandla Stenberg (from *The Acolyte*), Diego Luna (from *Andor*) and

5   Rosario Dawson (from *Ahsoka*)." *See* Ex. 1 at 9.

6        5.     On December 5, 2024, Mr. Trent sent me a letter "to commemorate

7   what we discussed in our meeting on November 22, 2024." Mr. Trent wrote that in

8   connection with Request for Production No. 31, Plaintiff was "willing to accept—

9   depending on the documents—documents sufficient to show the requested

10  information without requiring 'all documents' related to this topic. Potentially,

11  contracts and spreadsheets showing actual compensation would suffice." Attached

12  as **Exhibit 2** to this declaration is a true and correct copy of Mr. Trent's December

13  5, 2024 letter, with the quoted language found on pages 1 and 18.

14       6.     On January 23, 2025, Mr. Trent served Plaintiff's portion of a joint

15  stipulation to resolve certain outstanding discovery issues under Local Rule 37-2.

16  Prior to the service of that joint stipulation, Mr. Trent did not send Defendants a

17  letter requesting a prefiling conference pursuant to Local Rule 37-1 for the relief

18  sought therein, nor had the parties conducted such a conference. Attached as

19  **Exhibit 3** is a true and correct copy of the parties' correspondence from

20  January 23–25, with Mr. Trent's email conveying the joint stipulation found on

21  page 23 (though the since-withdrawn joint stipulation is not included here).

22       7.     The next day, on January 24, 2025, I sent Mr. Trent a letter explaining

23  that Plaintiff had not complied with Local Rule 37. Attached as **Exhibit 4** to this

24  declaration is a true and correct copy of my January 24, 2025 letter.

25       8.     On January 24, 2025, Mr. Trent withdrew Plaintiff's joint stipulation.

26  *See* Ex. 3 at 22.

27       9.     On January 29, 2025, the parties continued their dialogue on certain

28  outstanding discovery issues, while recognizing at the outset of that call that a

DECLARATION OF
MOLLY M. LENS

1    formal Local Rule 37-1 prefiling conference would follow thereafter.  During this

2    conference, Plaintiff did not demand a date certain for completion of Defendants'

3    document productions, much less indicate that Plaintiff intended to move the Court

4    to compel production.

5         10.    On February 3, 2025, Mr. Trent sent me a letter requesting a Local

6    Rule 37-1 prefiling conference.  This letter did not include a demand for a date

7    certain for completion of Defendants' document productions, save that, with one

8    sentence, Mr. Trent said that he was incorporating all the issues "set out in the draft

9    Joint Stipulation previously provided on January 23, 2025," which Plaintiff had

10   previously withdrawn.  Attached as **Exhibit 5** to this declaration is a true and

11   correct copy of Mr. Trent's February 3, 2025 letter, with the quoted language found

12   on page 32.

13        11.    By letter dated February 5, 2025, Defendants proposed resolutions of

14   the parties' remaining document-related disputes, including Defendants' specific

15   proposals as to Request for Production Nos. 31 and 66.  Attached as **Exhibit 6** to

16   this declaration is a true and correct copy of my February 5, 2025 letter.

17        12.    On February 10, 2025, Mr. Trent sent me a letter, outlining Plaintiff's

18   remaining discovery disputes and stating that Defendants' actor compensation

19   proposal was "a potential resolution of Request for Production No. 31."  This letter

20   did not include a demand for a date certain for completion of Defendants' document

21   productions, much less indicate that Plaintiff intended to move the Court to compel

22   production.  Attached as **Exhibit 7** to this declaration is a true and correct copy of

23   Mr. Trent's February 10, 2025 letter, with the quoted language found on page 39.

24        13.    On February 12, 2025, the parties conducted a Rule 37-1 conference

25   and addressed various discovery disputes.  During this conference, Plaintiff did not

26   demand a date certain for completion of Defendants' document productions, much

27   less indicate that Plaintiff intended to move the Court to compel production.

28

DECLARATION OF
MOLLY M. LENS

14.     On February 17, 2025, Mr. Trent sent a letter outlining the parties' remaining discovery disputes.  This letter did not include a demand for a date certain for completion of Defendants' document productions, much less indicate that Plaintiff intended to move the Court to compel production.  Attached as **Exhibit 8** to this declaration is a true and correct copy of Mr. Trent's February 17, 2025 letter.

15.     On February 27, 2025, the parties filed a joint stipulation to extend the pretrial and trial schedule in this Court.  *See* Addendum A; Dkt. 66.  The Court granted the parties' requested extension on February 28, 2025.  *See* Dkt. 67.

16.     On March 2, 2025, I sent an email to Mr. Trent noting that Plaintiff's February 17 letter included changed positions as to many of her requests.  Attached as **Exhibit 9** is a true and correct copy of the parties' correspondence from March 2–12, 2025, with my March 2 email found on page 49.

17.     The next day, on March 3, 2025, I sent a follow-up email to Mr. Trent, outlining in greater detail some of the ways in which Plaintiff's February 17 letter reflected changing positions as to many of her requests.  *See* Ex. 9 at 48.  I further explained that while Plaintiff will "have our responses to these new issues later this week [i.e. by March 7]," "to the extent that you disagree with our positions stated therein, you can send us a Rule 37-1 letter and the parties can conduct a final meet-and-confer conference."  *See id*.

18.     On March 5, 2025 Mr. Trent responded to my March 2 and 3 emails, disagreeing that further meet-and-confer efforts were required.  That said, Mr. Trent stated that Plaintiff "look[ed] forward to [Defendants'] responsive letter as it may provide clarity on the issues above, requests for admissions and information requested in the interrogatories."  *See* Ex. 9 at 47.

19.     On March 7, 2025, Joshua Prince, counsel for Plaintiff, served a joint stipulation on Defendants.  *See* Ex. 9 at 53.

5

20. On March 7, 2025, my colleague Salvatore J. Cocchiaro responded that Plaintiff's "service of this stipulation is plainly contrary to the parties' ongoing discussions, which, as you acknowledge, have allowed us to 'narrow the issues significantly' thus far." *See* Ex. 9 at 53. Mr. Cocchiaro further stated: "And as to any [discovery disputes] that may remain, Local Rule 37-1 requires that you send us a Rule 37-1 letter and that the parties conduct a final meet-and-confer conference. If you refuse, we will have no choice but to inform the Court of your failure to conclude the meet-and-confer process." *See* Ex. 9 at 53.

21. As promised, Mr. Cocchiaro attached to his email a meet-and-confer letter from me, responding to Plaintiff's February 17 letter. In this meet-and-confer letter, Defendants included proposals to resolve the specific Requests for Production at issue in the Joint Stipulation. Attached as **Exhibit 10** to this declaration is a true and correct copy of my March 7, 2025 letter, with Defendants' discussion of the specific Requests for Production at issue in the Joint Stipulation found on pages 58–59.

22. On March 11, 2025, I sent an email to counsel for Plaintiff, reiterating that "Plaintiff's joint stipulation is premature and inconsistent with the Central District's rules and Judge Kim's standing order" and asking for confirmation that "Plaintiff has withdrawn her portion of the joint stipulation." *See* Ex. 9 at 52.

23. On March 11, 2025, Mr. Trent confirmed that the joint stipulation would be limited to "Request for Production Nos. 31, 62-66" and stated that "no further conference is necessary before we re-serve the Joint Stipulation." *See* Ex. 9 at 51. Mr. Trent further stated that "[e]ach of the remaining issues in dispute— those related to budges, profits, and actor compensation (specifically including actor contracts)—have been discussed several times, including at the February 12 meeting." *See id*. This email did not include a demand for a date certain for completion of Defendants' document productions, much less an indication that Plaintiff intended to move the Court to compel production, but rather a statement

DECLARATION OF
MOLLY M. LENS

that Plaintiff "welcome[s] a timeline of when the additional material to be produced will be made available." *See* Ex. 9 at 52.

24.     On March 12, 2025, Mr. Prince re-served a draft of Plaintiff's joint stipulation, that is, Plaintiff re-served the joint stipulation that she had previously served on March 7 except that she removed the issues on which the parties had since reached agreement on. *See* Ex. 9 at 51.

25.     Plaintiff's March 12 joint stipulation was noticed for April 9, 2025. Because that date was not possible with the timing of Plaintiff's March 12 service, the parties subsequently agreed that the joint stipulation would be noticed for April 23 and that Defendants' portion of the joint stipulation would be returned on March 31, with Defendants reserving their rights as to their position that Plaintiff had not complied with Local Rule 37.

26.     Defendants have incurred attorneys' fees well in excess of $5,000.00 to respond to Plaintiff's joint stipulation.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED March 31, 2025, in Los Angeles, California.

_____

Molly M. Lens

DECLARATION OF
MOLLY M. LENS

# EXHIBIT 1



November 11, 2024

Via Email

Daniel Petrocelli
Molly M. Lens
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

> Re:  Defendants' Discovery Objections—Plaintiff's First Requests
> for Production of Documents
> *Gina Carano v. The Walt Disney Company, et al.*
> Case No. 2:24-cv-01009-SPG-SK

Dear Daniel and Molly:

We received Defendants' objections to Gina Carano's First Requests for Production of Documents. This letter is to address your objections and request a time for us to speak about Defendants' concerns as part of the meet and confer process. After your review of this initial response, please let me know your availability, and we can arrange a call.

As noted in our October 14, 2024, letter regarding Defendants' objections to Plaintiff's First Set of Interrogatories and First Requests for Admissions, Magistrate Judge Kim's Standing Order forbids the use of "boilerplate objections of irrelevance, overbreadth, undue burden, or the like." Many of your objections across your responses are boilerplate—asserted without explanation—and often without legal citation. Further, and in addition to Judge Kim's Standing Order, courts in this circuit—and the federal rules themselves—find such general objections insufficient to avoid compliance with discovery requests. *See, e.g.*, *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (relevance and overbreadth); *Microsoft Corp. v. Hertz*, No. C04-2219C, 2006 WL 1515602, at *2 (W.D. Wash. May 24, 2006) (vagueness, overbreadth, ambiguity, and redundancy); *Baugh v. Martin*, No. 2:22-CV-2342-ODW-SK, 2023 WL 2628611, at *2 (C.D. Cal. Feb. 9, 2023) (Kim, J.) (privacy).

For simplification, we reserve the right to revisit objections to those Requests for Production for which you have indicated that, despite your objections, responsive documents will be provided. Accordingly, we will address those objections after reviewing the responsive documents should further discussion be warranted.

Accordingly, this letter addresses those Requests to which Defendants have represented they will not be providing any responsive documents, specifically, Requests

**Edward H. Trent** | PARTNER
Office   (202) 787-1060
Mobile   (202) 656-2917
Email   etrent@schaerr-jaffe.com

**SCHAERR** | **JAFFE** LLP
1717 K Street NW, Suite 900
Washington, DC 20006
www.schaerr-jaffe.com

Exhibit 1
8

O'Melveny & Myers LLP
November 11, 2024
Page 2

18, 25, 31, 50–53, 56–58 and 60.  Additionally, this letter addresses those Requests where Defendants have represented they will provide only certain documents where we believe such limiting is too narrow, specifically, Requests 19–20, 24, 30, 42, 44, 46, and 48.

### A.   Requests to Which Defendants Refuse to Provide any Responsive Documents.

The first set of Requests to which this letter speaks are those Requests to which Defendants indicated they will provide no responsive documents.

**Request 18.** Request 18 seeks communications with other producers about Plaintiff.  This Request goes to Plaintiff's claim for damages.  If there are responsive documents that show that Defendants were—before the controversy—trying to help Plaintiff secure other roles through such communications, Plaintiff will be able to draw a distinction between those efforts and communications after the controversy began that may have had a negative effect on her career in the industry.  Although we believe that the Request is sufficiently narrow as drafted, we are willing to limit the time frame of this Request to all responsive communications that were made between June 1, 2020, and December 31, 2022.  Narrowing the time frame of this Request will ensure that communications from immediately before the controversy arose—when Plaintiff was at the height of her popularity—and communications after she was terminated or "disassociated" with are included.

**Request 25**.  Request 25 seeks documents or communications "concerning or related to Defendants' diversity, equity, and inclusion programs and policies, including all Communications with employees regarding such programs and policies."  Defendants object to Request 25 because, in their view, it is neither relevant to Plaintiff's claims nor proportional to the needs of the case.  But this Request seeks records that will support Plaintiff's claims of both viewpoint- and sex- discrimination.  DEI trainings and communications can include elements that are discriminatory against certain groups or viewpoints in efforts to promote other protected groups of people or political ideologies.  Such information is directly relevant to the central dispute between the parties making the Request reasonable under Rule 26.

**Request 31**.  Request 31 seeks contracts and documents showing "all compensation provided to lead actors on *The Mandalorian* or similar Star Wars series on Disney+, including but not limited to contracts for Pedro Pascal, Carl Weathers, Amandla Stenberg (from *The Acolyte*), Diego Luna (from *Andor*) and Rosario Dawson (from *Ahsoka*)."  This Request goes directly to Plaintiff's claimed damages as it will reveal pay information of other actors on Defendants' *Star Wars* shows in positions comparable to the one promised Plaintiff for the announced *Rangers of the New Republic*.  And contrary to Defendants' suggestion, such information is relevant to damages even though it seeks information "for roles other than those in Seasons 1 and 2 of *The Mandalorian*" because an actor's pay for subsequent series—including Season 3 of *The Mandalorian* or roles similar to those

Exhibit 1
9

O'Melveny & Myers LLP
November 11, 2024
Page 3

promised to her in *Rangers of the New Republic*—will be probative of what Plaintiff could have expected to earn had Defendants not terminated or "disassociated" from her in February 2021. Defendants might disagree with any suggestion that Plaintiff was a lead actor or that other *Star Wars* shows are not sufficiently similar to *The Mandalorian*, but such disagreement does not mean that Defendants can simply withhold documents because producing such documents would not constitute an admission on Defendants' part to the underlying premise of the Request. In any event, such information is clearly within the scope of Rule 26. Defendants also object that Request 31 seeks personal and private information of those not before the court. But such information could—and indeed should—be provided confidentially consistent with the terms of the Stipulated Protective Order that Judge Kim has now entered.

**Request 50**. Request 50 seeks documents or communications "with toy companies, merchandizers, or creators of digital or print collateral or advertising for *The Mandalorian* concerning or related to Plaintiff or her character Cara Dune." This Request also goes to damages. Pulling production or availability of character toys goes to damages as many retired characters—including characters from the original *Star Wars* trilogy—still have their toys and merchandise available. And, of course, the use of Plaintiff's image on such merchandise or advertising would have been positive publicity that could have been used to help her secure other roles in the entertainment industry even if she received no financial compensation from the toys or items in circulation. Defendants cannot seriously claim otherwise because, if they didn't view Plaintiff's character as sufficiently important to appear on merchandise, they would not have made Cara Dune toys or posters to begin with. When such communications took place is also relevant to Defendants' explanation of the reasons for their termination of Plaintiff.

**Request 51**. Request 51 seeks documents "showing hours worked on set for each actor in Seasons 1 and 2 of *The Mandalorian*." This Request seeks documents relevant to Defendants' Request for Production No. 2, which asked for documents and communications supporting Plaintiff's claim in paragraph 23 of the Complaint that she fulfilled all obligations of her master agreement and the Minimum Three-Day or Weekly Agreement. It further relates to Plaintiff's claim that she fulfilled her responsibilities to Defendants at all relevant points of her employment—thereby showing that any suggestion to the contrary is merely pretext for Defendants' discriminatory conduct. These documents are also probative of Plaintiff's claim that she was subjected to disparate treatment despite her dedication to her role as Cara Dune. Defendants further claim that this Request seeks information of "dozens" of credited and uncredited actors alike, but they make no attempt to show that compiling such information would be burdensome or that such information is not readily accessible to Defendants. If they do not have the information, they should say so. As for Defendants' claim that this Request seeks information that is personal or private, such concerns can be addressed under the terms of the Stipulated Protective Order and are not proper grounds for refusing to produce documents at all.

Exhibit 1
10

O'Melveny & Myers LLP
November 11, 2024
Page 4

**Request 52**.  Request 52 seeks documents "showing compensation for each actor in Seasons 1 and 2 of *The Mandalorian*."  This Request is directly relevant to the issues in this case as it goes both to damages and to Defendants' potentially disparate treatment of Plaintiff because of her viewpoints and her sex.  Once more, Defendants further claim that this Request seeks information of "dozens" of credited and uncredited actors alike, but they make no attempt to show that compiling such information would be burdensome or that such information is not readily accessible to Defendants.  And here again, Defendants' claim that this Request seeks information that is personal or private can be addressed under the terms of the Stipulated Protective Order and is not proper grounds for refusing to produce documents at all.  Again, the protective order protects confidentiality of other actors.  Subject to the foregoing, Plaintiff is willing to confer with Defendants to discuss the types of documents to be produced, but copies of contracts and/or spreadsheets reflecting compensation (if such a spreadsheet exists a part of Defendants' normal business operations) would suffice.



**Request 56**.  Request 56 seeks documents reflecting communications "regarding Plaintiff, including but not limited to her social media posts and/or her termination from *The Mandalorian*."  Defendants once again quibble with Plaintiff's use of the term "termination," but—as was the case with Defendants' objections to Gina Carano's First Requests for Admissions and First Set of Interrogatories—whether Defendants prefer the term "disassociate," the meaning of the Request is clear as Defendants note in several of their responses to other requests for production, including Request No. 14.  As to relevance, this Request goes to damages because it seeks information about what Defendants have stated about Plaintiff, the reasons for Defendants' actions, and documents that may be probative of not only her lost opportunities beginning February 10, 2021, but also of any efforts to undermine Plaintiff's career in the entertainment industry.  Although we believe that this Request is sufficiently narrow as drafted, we are willing to limit the time of communications to the period from June 1, 2020, to December 31, 2022.

Exhibit 1
11

O'Melveny & Myers LLP
November 11, 2024
Page 5

**Request 57**.  Request 57 seeks communications "regarding removing information or displays of Plaintiff or her likeness from any promotions (including any advertisements) of Disney+, Star Wars, or *The Mandalorian*." The Request goes to the same issues—damages—as Request 56.  After all, communications that show that Defendants were intentionally removing all promotions with Plaintiff or her likeness could potentially show that Defendants took away valuable publicity from Plaintiff that could have been used to promote her brand and secure other projects, actions that started even before Defendants' February 10, 2021 statement.  As with Request 56, although we believe that this Request is sufficiently narrow as drafted, we are willing to limit the time of communications to the period from June 1, 2020, to December 31, 2022.

**Request 58**.  Request 58 concerns political contributions made by "Defendants, their officers, directors and employees." This Request goes directly to Plaintiff's claim of viewpoint discrimination and to her claim that she was discriminated against based on political comments she made on social media.  It seeks documents that are probative of Defendants' motivation for the actions it took against Plaintiff.  These documents will also be probative of Plaintiff's claim that she was treated differently from male employees who expressed political views that align with Defendants' political viewpoint.  As a sign of good faith, Plaintiff is willing to limit this Request to officers and directors of each Defendant and senior leaders involved in the decision to terminate or "disassociate" with Plaintiff.

**Request 60.**  Perhaps the most confusing objection is Defendants' objection to Request 60, which seeks documents listed in Defendants' Rule 26(a) initial disclosures.  In those disclosures, Defendants identified the following groups of documents: a) Plaintiff's contracts with Disney; b) Plaintiff's social media posts and communications related thereto; c) communications between Defendants and Plaintiff's former talent agency, publicist, and manager relating to Plaintiff's work with Defendants and her social media activity; and d) communications related to Defendant Lucasfilm's public statement condemning Plaintiff's posts and clarifying that Plaintiff was not currently employed by Lucasfilm and there were no plans for her to be in the future.  These are the very documents Defendants have stated they intend to rely on to support their position in this case and are both discoverable and easily identifiable.  To suggest that the Request is vague and ambiguous simply because Defendants' disclosures "merely listed categories of documents, not specific documents" is to ignore the "reason and common sense" that should guide Defendants in responding to Plaintiff's request.  *Boston v. ClubCorp USA, Inc.,* No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019).  All documents that fall within the categories that Defendants themselves enumerated should be produced.

In short, each of the Requests to which Defendants responded that they would not produce documents is relevant to Plaintiff's claims.  For these reasons, Defendants should produce documents responsive to those Requests.

Exhibit 1
12

O'Melveny & Myers LLP
November 11, 2024
Page 6

**B.      Request to Which Defendants Unduly Limit Their Responsive Documents.**

Some of Defendants' responses agree to produce some documents but do so in a way that too narrowly construes the Request's scope, mostly by limiting their production to documents created during the filming of the first two seasons of *The Mandalorian*.  But evidence of disparate treatment—such as the evidence that will be reflected across these unduly narrowed Requests—is probative of discrimination regardless of whether it takes place before, during, and after Plaintiff's role in *The Mandalorian*. *See, e.g.*, *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207–08 (9th Cir. 2008) ("An inference of discrimination can be established … by showing that others not in their protected class were treated more favorably."); *Canton v. U.S. Foods, Inc.*, No. 22CV04226TLTLJC, 2023 WL 4372699, at *5 (N.D. Cal. July 5, 2023) ("evidence of a defendant's acts outside of the statute of limitations may be evidence relevant to a discrimination claim").  For the reasons below, Defendants should produce documents based on a broader reading of the Requests.

**Request 19**.  Request 19 seeks documents or communications "concerning or related to any social media posts or public comments of Pedro Pascal, Mark Hamill, or any member of *The Mandalorian* cast or crew besides Plaintiff."  Defendants agree to produce such documents for actors named in the Complaint from Seasons 1 and 2 of *The Mandalorian*.  But documents beyond Seasons 1 and 2 of *The Mandalorian* are potentially relevant to Plaintiff's claims and Defendants' defenses.  As a sign of good faith, Plaintiff is willing to accept a response that is limited to on-screen actors but not only those named in the Complaint.  Documents responsive to this Request will show that, even now, Defendants are not disassociating or terminating other actors on *The Mandalorian* even when some of them, like Plaintiff, are active on social media.  Thus, if such documents exist, they will show that others involved in *The Mandalorian* are free to speak without recourse when Plaintiff was not.  This, in turn, will be probative of Plaintiff's claims of sex- and viewpoint-discrimination.  This Request is also related to Defendants' First Amendment defense that its speech was somehow affected by an actor's off-duty speech.

**Request 20**.  Request 20 seeks documents or communications "concerning or related to any discipline of Pedro Pascal, Mark Hamill, or any other member of *The Mandalorian* cast or crew due to their social media posts or public comments."  Defendants agree to produce such documents for actors named in the Complaint from Seasons 1 and 2 of *The Mandalorian*.  But documents beyond Seasons 1 and 2 of *The Mandalorian* are potentially relevant to Plaintiff's claims and Defendants' defenses.  As a sign of good faith, Plaintiff is willing to accept a response that is limited to on-screen actors but not only those named in the Complaint.  As with Request 19, documents responsive to this Request will show that, both when Plaintiff was an actor on *The Mandalorian* and now, some involved in *The Mandalorian*—such as Mark Hamill and Pedro Pascal—were able to speak freely without fear that their political speech would be cause for their termination or

Exhibit 1
13

O'Melveny & Myers LLP
November 11, 2024
Page 7

disassociation from Defendants.   This Request is also related to Defendants' First Amendment defense that its speech was somehow affected by an actor's off-duty speech.

Request 24.  Request 24 seeks documents "concerning or related to Defendants' social media policies for employees, including all Communications with employees regarding such policies."  Defendants agree to produce documents that applied to *The Mandalorian*'s cast during its first and second seasons, but this is not enough.  The Request seeks the social-media policies that governed all of Defendants' employees, not just the cast of *The Mandalorian* during the seasons in which Plaintiff was an actor.  The evolution of any such responsive documents over time will be probative of Plaintiff's claim that she was terminated for her viewpoint and her sex and determine whether different rules applied to on-screen actors when compared to other employees.  Further, to the extent that such documents—coupled with documents responsive to other Requests—reveal that Defendants are selective in their enforcement of their social-media policies, they will be probative of Plaintiff's claims and Defendants' defenses.

Request 30.  Request 30 seeks documents or communications "concerning or related to the decision to create a new Star Wars spinoff entitled *Rangers of the New Republic* or some similar title that would feature or include the character Cara Dune."  Defendants agree to produce documents "reflecting why *Rangers of the New Republic* was not greenlit."  Such a response is inadequate, as it will only produce documents showing why the planned *Rangers of the New Republic* was not ultimately produced.  But Plaintiff's Request is broader.  It seeks communications not only reflecting the decision to not produce *Rangers of the New Republic,* but also documents and communications related to the creation of the program centered around the character Cara Dune in the first place.  This Request goes to Plaintiff's allegations regarding her planned role in *Rangers of the New Republic* and her claimed damages.  Responsive documents should be produced.

Request 42.  Request 42 seeks documents "related to any other employee required or requested to attend media or any human resources training based in whole or in part on posts the employee made on social media, including but not limited to Pedro Pascal, Mark Hamill, and James Gunn."  Once more, Defendants agree to produce documents but unduly narrow their production to those documents dealing with *actors* on Seasons 1 or 2 of *The Mandalorian*.   This Request, however, seeks documents not only of actors, but of "employee[s]."  And it cannot be limited to the two seasons of *The Mandalorian* in which Plaintiff was an actor.  The Request seeks documents relevant to Defendants' treatment of its employees because of their social media posts.  Such information is relevant to Plaintiff's claims of viewpoint- and sex-discrimination as it will show that, even now, Defendants treat employees differently under its policies even though they are politically active on social media.  The Request is also related to Defendants' First Amendment defense that asserts that employee speech affects Defendants' own speech.  Because this Request seeks documents that will show how Plaintiff was treated differently from others associated with any of Defendants' programs—*The Mandalorian* or otherwise—for the same conduct, such

Exhibit 1
14

O'Melveny & Myers LLP
November 11, 2024
Page 8

documents should be produced.  And Defendants' belief that the Request is argumentative in suggesting that they required Plaintiff to attend media or human-resources training because of her social-media posts is not a reason to not provide such documents because providing them is not an admission of the Request's underlying premise.  Further, Plaintiff is producing evidence showing that she was required to participate in "media training" with Marie Garvey due to her social media posts as also reflected in UTA 2893.

   **Request 44**.  Request 44 seeks documents or communications "related to any other employee required or requested to meet with members of GLAAD or any other social advocacy organization because of posts the employee made on social media, including but not limited to Pedro Pascal, Mark Hamill, and James Gunn."  Returning to their common theme, Defendants agree to produce documents but unduly narrow their production to those documents dealing with *actors* on Seasons 1 or 2 of *The Mandalorian*.  Plaintiff's response is the same—this Request is not so limited: It seeks documents about the treatment of all of Defendants' employees and is relevant for time periods beyond the filming of the first two seasons of *The Mandalorian*.  This Request also seeks documents that will show that Defendants had a different standard for Plaintiff because of the viewpoints she was expressing and because of her sex.  Documents relevant to this Request should include relevant material before, during, or after Plaintiff's time on *The Mandalorian*, and such documents are thus directly relevant to the claims and defenses in this case.  And Defendants' belief that the Request is argumentative in suggesting that they required Plaintiff to meet with social advocacy groups because of her social-media posts is not a reason to not provide such documents because providing them is not an admission of the Request's underlying premise.  Plaintiff is producing documents showing the request that she participate in a Zoom meeting with two representatives of GLAAD, something she willingly did as reflected in UTA 156.

   **Request 46.**  Request 46 seeks documents or communications "related to any other employee required or requested to issue a public statement or apology because of posts the employee made on social media, including but not limited to Pedro Pascal, Mark Hamill, and James Gunn."  Defendants' agreeing to produce documents about *actors* in the first two seasons of *The Mandalorian* unduly narrows the Request for the same reasons identified in Plaintiff's discussion of her other Requests.  If there are documents showing that Defendants have made other employees, whether or not they are actors, apologize for their social media posts, Defendants should produce them as they go directly to Plaintiff's viewpoint- and sex-discrimination claims—regardless of whether they took place in the narrow time period of the first two seasons of *The Mandalorian*.  And Defendants' belief that the Request is argumentative in suggesting that they required Plaintiff to publish an apology because of her social-media posts is not a reason to not provide such documents because providing them is not an admission of the Request's underlying premise.  Plaintiff is producing documents showing that she was requested to issue a public statement and apology regarding her social media posts as reflected in UTA 2499.

Exhibit 1
15

O'Melveny & Myers LLP
November 11, 2024
Page 9

    **Request 48.**  Request 48 seeks documents or communications "related to any other employee required or requested to participate in a meeting with a supervisor and other employees because of posts the employee made on social media, including but not limited to Pedro Pascal, Mark Hamill, and James Gunn."  Defendants' agreeing to produce documents about *actors* in the first two seasons of *The Mandalorian* unduly narrows the Request for the same reasons identified in Plaintiff's discussion of her other Requests.  If there are documents showing that Defendants have made other employees, whether or not they are actors, meet with supervisors because of their social media posts, Defendants should produce them as they go directly to Plaintiff's viewpoint- and sex-discrimination claims—regardless of whether they took place in the narrow time period of the first two seasons of *The Mandalorian*.  And Defendants' belief that the Request is argumentative in suggesting that they required Plaintiff to meet with supervisors or other employees because of her social-media posts is not a reason to not provide such documents because providing them is not an admission of the Request's underlying premise.  Plaintiff will be producing documents showing Defendants' request that she meet with other employees and management about her social media posts as reflected in UTA 1162.

    For each of these Requests, then, Defendants should produce documents that are responsive even if they were created outside of the period when season 1 and 2 of *The Mandalorian* were filmed.  Defendants' attempt to artificially narrow the Requests misses the nature of Plaintiff's claims and Defendants' defenses and hinders her ability, through discovery, to obtain evidence that would show the disparate treatment necessary for her to prevail on her claims.  The Federal Rules of Civil Procedure provides for such latitude in discovery.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

    We are willing to work with you to resolve any legitimate objections, but as set forth above, we do not believe the objections lodged with your responses justify Defendants' refusal to answer or unduly narrow Plaintiff's requests for production.  Let us know when you are available to discuss these issues to determine if they can be resolved amongst ourselves or if it will be necessary to seek the Court's assistance in resolving these issues. We look forward to speaking with you.

                               Sincerely,

                               Edward Trent
                               *Counsel for Gina Carano*

Exhibit 1
16

# EXHIBIT 2



December 5, 2024

Via Email

Molly M. Lens
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

Re:    Defendants' Discovery Objections – Plaintiff's First Requests
for Production of Documents
*Gina Carano v. The Walt Disney Company, et al.*
Case No. 2:24-cv-01009-SPG-SK

Dear Molly:

We hope you enjoyed your Thanksgiving holiday. This letter serves to commemorate what we discussed in our meeting on November 22, 2024. As you'll recall, our discussion in that meeting focused on Plaintiff's 11 requests for production to which Defendants have, to this point, refused to provide any responsive documents. Each is addressed below.

**Request 18.** Request 18 seeks communications with any television, movie, or streaming content producer about Plaintiff. In our call, you expressed concern that this request would broadly cover any communications about Plaintiff, regardless of their relevance to her claims. As we discussed, such communications go toward Plaintiff's damages claim and potentially her disparate treatment claim depending on what Defendants told such producers (assuming any such communications occurred) that may have impacted her ability to obtain work after she was terminated by Defendants.

In our initial letter, we agreed to narrow the timeline to communications between June 1, 2020, and December 31, 2022. In our call, we agreed to narrow the request further to capture communications between June 1, 2020, and December 31, 2021. We further agreed to limit the requested "communications" to those communications from Defendants which addressed Plaintiff as a candidate for a role in a production to ensure that it would only capture those communications which would plausibly bear on Plaintiff's damage claim. As we discussed possible communicants, we believe that would be whomever is designated or authorized by Defendants to have such communications regarding actors such as Plaintiff with other producers as well as those involved with Plaintiff who may have communicated about her. We are willing to limit those individuals to Kathleen Kennedy, Jon Favreau, Lynne Hale, Darriel Borquez, and Pablo Hildago. Based on our discussion and this further narrowing, please let us know Defendants' position regarding providing the requested documents.

**Edward H. Trent** | PARTNER
Office  (202) 787-1060
Mobile  (202) 656-2917
Email  etrent@schaerr-jaffe.com

**SCHAERR | JAFFE** LLP
1717 K Street NW, Suite 900
Washington, DC 20006
www.schaerr-jaffe.com

Exhibit 2
17

O'Melveny & Myers LLP
December 5, 2024
Page 2

**Request 25**. Request 25 seeks documents or communications "concerning or related to Defendants' diversity, equity, and inclusion programs and policies, including all Communications with employees regarding such programs and policies." On our call, we explained that our goal in seeking these documents is to show that Plaintiff was let go not for her performance, but instead because of her political views. You expressed a willingness to speak with your client about the possibility of stipulating that there were no such performance issues that would have supported her termination. We explained in response that these requested documents would nevertheless be probative of Defendants' reasons for terminating Plaintiff, as Plaintiff still bears the burden of showing that Defendants' views stood in contrast with her own and that she was treated differently because of her political views and her sex. Based on our discussion, please let us know Defendants' position regarding providing the requested documents.

**Request 31**. Request 31 seeks contracts and documents showing "all compensation provided to lead actors on *The Mandalorian* or similar Star Wars series on Disney+, including but not limited to contracts for Pedro Pascal, Carl Weathers, Amandla Stenberg (from *The Acolyte*), Diego Luna (from *Andor*) and Rosario Dawson (from *Ahsoka*)." We explained in our call that our purpose in seeking these documents is to show the range of compensation that Plaintiff could have expected had Defendants not disassociated with her. We further explained that we intentionally included the lead actors from other Disney+ Star Wars shows because of the October 2020 conversation between Plaintiff and Jon Favreau during which he told Plaintiff that she would be the lead in the planned *Rangers of the New Republic* series. Finally, when discussing the compensation for Carl Weathers, we explained that his role is arguably comparable to Plaintiff's such that his compensation in Seasons 1 and 2 and any adjustments in Season 3 and, if applicable, Season 4 could also go to showing damages by estimating any potential increase for Plaintiff in those later seasons. We were also willing to accept—depending on the documents—documents sufficient to show the requested information without requiring "all documents" related to this topic. Potentially, contracts and spreadsheets showing actual compensation would suffice. Based on our discussion and this further narrowing, please let us know Defendants' position regarding providing the requested documents.

**Request 50**. Request 50 seeks documents or communications "with toy companies, merchandizers, or creators of digital or print collateral or advertising for *The Mandalorian* concerning or related to Plaintiff or her character Cara Dune." We explained that, although we understood that Plaintiff received no additional compensation for such advertising, we still believe this request would produce information that could show how Plaintiff was harmed when Defendants disassociated with her. We further explained our belief that any name and likeness publicity that Plaintiff received from Defendants' advertising or merchandising of her character, including through ensemble advertising, would have increased her name recognition and ability to secure future roles—either with Defendants themselves or with other production companies. Given your concerns over the breath of the request, we agreed that it could be limited to communications that specifically asked for

Exhibit 2
18

O'Melveny & Myers LLP
December 5, 2024
Page 3

any toy company, merchandizer, or creator of digital or print collateral or advertising for *The Mandalorian* to pull or not include any such material showing or including Plaintiff's character Cara Dune. Based on our discussion and this further narrowing, please let us know Defendants' position regarding providing the requested documents.

**Request 51**. Request 51 seeks documents "showing hours worked on set for each actor in Seasons 1 and 2 of *The Mandalorian*." We explained that our goal here is to gain access to documents sufficient to show that Defendants did not disassociate with Plaintiff because of her performance. Here again, you suggested that Defendants might be willing to stipulate to that effect. We also discussed, in light of such a stipulation, limiting the request to records specifically related to Plaintiff, which you appeared open to considering. Based on our discussion and this further narrowing, please let us know Defendants' position regarding providing the requested documents.

**Request 52**. Request 52 seeks documents "showing compensation for each actor in Seasons 1 and 2 of *The Mandalorian*." We agreed to forego this request if Defendants produce documents responsive to Request 31. Please let us know if this, along with the narrowing discussed regarding Request 31, will resolve those issues by Defendants producing the documents now requested through our Request 31.



**Request 56**. Request 56 sought documents reflecting communications "with any persons or entities, including YouTube personalities, podcasts, website operators, fan forums, news/press organizations, talent agencies, advertising developers, social media companies, public relations firms or other third parties" "regarding Plaintiff, including but not limited to her social media posts and/or her termination from *The Mandalorian*." We explained that our goal here was to learn about how Defendants were interacting with the listed people or entities about Plaintiff as it concerned either her promotion or termination. We explained that Pablo Hildago, for example, apparently posted about Defendants'

Exhibit 2
19

O'Melveny & Myers LLP
December 5, 2024
Page 4

termination of Plaintiff before the February 10, 2021 Lucasfilm statement was issued. Communications that led to Hildago's learning about the termination decision and who he told (assuming they are within the groups identified in the request) would be responsive to this request, as would other communications, good or bad, that Defendants had with the listed persons or entities. In our initial letter, we agreed to narrow the timeline to communications between June 1, 2020, and December 31, 2022. In our call, we agreed to narrow the request further to capture communications between June 1, 2020, and December 31, 2021. We agreed that the places to search, in addition to the emails and other electronic communications belonging to Pablo Hildago, would be whoever is responsible or authorized to have those communications on behalf of the various Defendants. Based on our discussion and this further narrowing, please let us know Defendants' position regarding providing the requested documents.

**Request 57**. Request 57 seeks communications from the same groups of people or entities as Request 56 "regarding removing information or displays of Plaintiff or her likeness from any promotions (including any advertisements) of Disney+, Star Wars, or *The Mandalorian*." We explained that the request was prompted by a public statement from the poster artist who talked about removing Plaintiff's likeness from *The Mandalorian* poster and replacing her with Rosario Dawson's character Ahsoka (a one-episode character in *The Mandalorian*) before Defendants terminated Plaintiff. Our request thus seeks communications or documents that reveal what discussions led to that and any other like decisions that Defendants identify as responsive. While we did agree that Disney can promote its shows however it wants, if the decision was made for reasons that support the claims in Plaintiff's complaint, then these communications would be relevant here and thus clearly fall within the scope of Rule 26. In our initial letter, we agreed to narrow the timeline to communications between June 1, 2020, and December 31, 2022. In our call, we agreed to narrow the request further to capture communications between June 1, 2020, and December 31, 2021. Based on our discussion and this further narrowing, please let us know Defendants' position regarding providing the requested documents.

**Request 58**. Request 58 concerns political contributions made by "Defendants, their officers, directors and employees." In our call, we agreed that Defendants can start by providing documents that reflect Defendants' corporate donations provided that information is sufficiently detailed to identify the "individual candidates, political action committees, or political organizations such as the Democratic Party, Republican Party, ActBlue, or any other organization, to support political candidates or causes, showing to whom the donation was made, the amount, and the date of the donation" as set out in the Request. You agreed to consider producing corporate information consistent with the foregoing and to consider whether you can provide further information responsive to the request. Based on our discussion and this further narrowing, please let us know Defendants' position regarding providing the requested documents.

Exhibit 2
20

O'Melveny & Myers LLP
December 5, 2024
Page 5

     **Request 60.** Request 60 seeks the documents Defendants identified in their Rule 26(a) disclosures. In our letter, we explained that the documents we referenced included a) Plaintiff's contracts with Disney; b) Plaintiff's social media posts and communications related thereto; c) communications between Defendants and Plaintiff's former talent agency, publicist, and manager relating to Plaintiff's work with Defendants and her social media activity; and d) communications related to Defendant Lucasfilm's public statement condemning Plaintiff's posts and clarifying that Plaintiff was not currently employed by Lucasfilm and there were no plans for her to be in the future. In our call, you agreed to provide those documents identified in the disclosures given our clarifications. Please let us know when those documents will be made available.

     We thank you for your time discussing these issues with us. We look forward to your prompt response on these issues.

     Sincerely,

     Edward Trent
     *Counsel for Gina Carano*

Exhibit 2
21

EXHIBIT 3

| | |
|---|---|
| **From:** | Edward Trent |
| **To:** | Lens, Molly M.; Cocchiaro, Salvatore J.; Petrocelli, Daniel M. |
| **Cc:** | Gene Schaerr; Joshua Prince |
| **Subject:** | RE: Carano v The Walt Disney Company -- Joint Stipulation of Discovery Issues, L.R. 37-2 |
| **Date:** | Friday, January 24, 2025 2:23:01 PM |

Molly,

  Thank you for your letter.  We are reviewing the various issues you raise.  To ensure compliance with the local rules, we agree that setting a meeting on Wednesday afternoon for a meeting in compliance with Local Rule 37-1 is prudent.  Further, should we reach further agreement on some or all of the issues set out in the stipulation we provided yesterday, we will modify the stipulation accordingly and reserve it should that be necessary.  It appears there may be a resolution on the requests for admission.  Additionally, with the production of documents that will serve as a response to the interrogatories, that should resolve or at least delay a need to have that issue incorporated with the few remaining requests for documents.

  So, we are withdrawing the stipulation as far as Local Rule 37-2 goes but it and this email will serve a notice of what we understand to be the outstanding issues as required by Rule 37-1.  If you can let us know your availability for a meeting Wednesday afternoon, we will send out a Zoom link for that meeting.  If there are issues that remain unresolved that require the Court's involvement, we will reserve the joint stipulation under Rule 37-2 to address only those outstanding issues.

  In the meantime, we will provide a more complete response to the issues in your letter by Monday morning.  That should further help focus the issues for our call on Wednesday.

Thanks, and I hope you have a good weekend.

Ed

---

**From:** Lens, Molly M. <mlens@omm.com>
**Sent:** Friday, January 24, 2025 3:51 PM
**To:** Edward Trent <etrent@schaerr-jaffe.com>; Cocchiaro, Salvatore J. <scocchiaro@omm.com>; Petrocelli, Daniel M. <dpetrocelli@omm.com>
**Cc:** Gene Schaerr <gschaerr@schaerr-jaffe.com>; Joshua Prince <jprince@schaerr-jaffe.com>
**Subject:** RE: Carano v The Walt Disney Company -- Joint Stipulation of Discovery Issues, L.R. 37-2

Ed – Please see the attached.

Molly

**Molly M. Lens**
mlens@omm.com
O: +1-310-246-8593

Exhibit 3
22

O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067
Website | LinkedIn | Twitter | Bio

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

**From:** Edward Trent <etrent@schaerr-jaffe.com>
**Sent:** Thursday, January 23, 2025 7:01 AM
**To:** Lens, Molly M. <mlens@omm.com>; Cocchiaro, Salvatore J. <scocchiaro@omm.com>; Petrocelli, Daniel M. <dpetrocelli@omm.com>
**Cc:** Gene Schaerr <gschaerr@schaerr-jaffe.com>; Joshua Prince <jprince@schaerr-jaffe.com>
**Subject:** Carano v The Walt Disney Company -- Joint Stipulation of Discovery Issues, L.R. 37-2

Molly,

 Thank you for your efforts to address many of the outstanding discovery issues.  To address those issues on which we have been unable to resolve, we will be filing a motion to compel under Rule 37 and Local Rule 37-2.  Attached is the Joint Stipulation required by the Local Rules containing the discovery requests at issue and Plaintiff's position on each of those.  Also attached is the addendum referenced in the Joint Stipulation consisting of the general objections incorporated into the various discovery matters still in dispute.  There is a place for Defendants to put their responses and positions.  Please either insert Defendants' position directly into the Joint Stipulation and sign it, or, if you prefer, please send us Defendants' position and we will insert it and return to you for signature as set out in Local Rule 37-2.2.  We request this be completed within seven days as set out in Local Rule 37-2.2.

 The court currently has Wednesday, February 26 at 10:00 a.m. available for a hearing on the motion.  With the motion to be filed on January 31 or February 3, that date complies with the court's rules.  Given that we will need these issues resolved so we can schedule and complete fact discovery and the preparation of expert reports within the deadlines currently set by the court, we believe the hearing should be held as soon as possible consistent with the court's rules.

 While we work through these issues, please let us know some available deposition dates for those witnesses set out in our December 13, 2024 letter and the proposed Rule 30(b)(6) deposition notice previously provided.  We are also obtaining available dates from potential third party witnesses and will coordinate with you once we have their availability.

 Thanks, and we hope you are staying safe during the fires there in the Los Angeles area.

Ed

Exhibit 3
23

Edward H. Trent
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900 | Washington, DC 20006
Office (202) 787-1060 | Mobile (202) 656-2917
etrent@schaerr-jaffe.com | www.schaerr-jaffe.com
*Admitted to practice in the District of Columbia, Florida, and Tennessee*
*Board Certified in Labor and Employment Law by the Florida Bar*

Exhibit 3
24

# EXHIBIT 4



O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00430

January 24, 2025

Molly M. Lens
D: +1 310 246 8593
mlens@omm.com

Edward H. Trent
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006

Re:    *Gina Carano v. The Walt Disney Company et al. (Case No. 2:24-cv-01009)*

Dear Ed:

We were surprised and disappointed to receive Carano's portion of a purported joint stipulation from you yesterday. As laid out below, the joint stipulation is not only unquestionably premature but even our initial review makes plain that it violates myriad aspects of the Federal and Local Rules. In so doing, Carano is unnecessarily and impermissibly burdening the Court, even though the parties' progress is continuing and ongoing. Accordingly, for the reasons laid out below, Defendants request that Carano immediately confirm that she has withdrawn the improper joint stipulation and suggest that the parties find time on Wednesday afternoon to continue their meet-and-confer discussions.

*First*, and fundamentally, Carano's attempt to seek relief from the Court is premature. As your portion of the joint stipulation recognizes, the parties' discussions were not only productive to date but, more importantly here, are *ongoing*. For example, during the parties' January 7 discussion—the first discussion regarding Plaintiffs' Second Set of RFAs—you agreed to re-review the question-and-answer segment of Disney's 2021 annual shareholder's meeting on which you purport to rely in the requests. We, too, agreed to re-review our answers. Yet you seek to move forward without getting back to us, much less inquiring about our position. We can now inform you that we will be serving amended responses – and will agree to do so by the end of next week. Thus, your portion of the joint stipulation is not only premature—but moot—as to these requests.

The premature nature of the joint stipulation is further underscored by the parties' recent progress on many of the RFPs you now seek to move on. ■■■■■■■■■■■■■■■■■■■■■■

Further still, as to RFPs 42, 44, 46, 48, and 61—documents concerning Defendants' treatment of employees because of their social media posts—instead of countering our January 15 proposal in your January 21 response, you instead suggest a new compromise for the first time in your joint stipulation. We are happy to take this new proposal back to our client but, as underscored by the authority below, it is not appropriate for you to raise a proposed compromise for first time in your moving papers.

Austin · Century City · Dallas · Houston · Los Angeles · Newport Beach · New York · San Francisco · Silicon Valley · Washington, DC
Beijing · Brussels · Hong Kong · London · Seoul · Shanghai · Singapore · Tokyo

Exhibit 4
25



Put simply, you have jumped the gun, and, in so doing, seek to impermissibly burden the Court in violation of the rules' requirements. *See, e.g.*, *Sanchez v. County of Sacramento*, 2020 WL 1984174, at *3 (E.D. Cal. Apr. 27, 2020) ("[B]efore bringing a motion to compel production, the movant must show that she conferred, or made a good faith effort to confer, with the party opposing disclosure before seeking court intervention.").

*Second*, Local Rule 37-1 requires that a moving party send a pre-filing letter, requesting a Rule 37-1 conference. You never did so. *See, e.g.*, *Zucchella v. Olympusat, Inc.*, 2021 WL 4706541, at *2 (C.D. Cal. Mar. 30, 2021) (rejecting argument that letter arguably sent to initiate the meet-and-confer process was a Rule 37-1 letter); *Arroyo v. Cervantes*, 2019 WL 8755115, at *1 (C.D. Cal. Aug. 16, 2019) (explaining that a Rule 37-1 letter "is supposed to be an explicit request to schedule the conference within ten days").

*Third*, Local Rule 37-1 requires that a moving party "specify the terms of the discovery order to be sought" in their Rule 37-1 letter. Again, you never did so. *See, e.g.*, *Zissa v. Cnty. of Los Angeles*, 2019 WL 13074698, at *7 (C.D. Cal. Nov. 7, 2019) ("Local Rule 37 requires counsel to figuratively and sometimes literally roll up their sleeves and try to work out or at least narrow their disputes, including 'specifying the terms of the **discovery order to be sought**,' before filing motions. […] Issues not discussed by counsel, or **relief not** previously proposed to opposing counsel, should not appear in the first instance in a discovery motion or joint stipulation.") (emphasis in original); *Arroyo*, 2019 WL 8755115, at *1 (explaining that the moving party's "letter does not set forth the terms of the discovery order sought, as required by Local Rule 37-1" and striking motion).

Indeed, your portion of the joint stipulation *repeatedly* seeks relief that was never even discussed during any of the parties for discussions. For example, Carano recounts the parties' progress over the past weeks and months to resolve Defendants' objections to some of her RFPs but then, remarkably, immediately turns around and argues that "the Court should impose a deadline by which Plaintiffs [*sic*] must provide the documents they have already agreed to produce—no later than seven days after the Court issues its ruling." *See* Joint Stip. at 53-54. As you know, Carano never once raised this request during the parties' discussions – much less revealed that she sought to use Defendants' ongoing good-faith attempts to narrow and resolve disputes against them.

As another example, as to Carano's Second Set of RFAs, Carano asks the Court to "rule that each such request be deemed admitted." *Id.* at 17. Yet Carano's November 18 letter (which is the only letter on these requests) never raises this requested relief—and neither was it discussed during the parties' oral discussion.

Further still, Carano asks the Court to order to compel Defendants to answer certain interrogatories. *Id.* at 44. Again, this requested relief was never raised in any letters, much less meet-and-confer discussions. To the contrary, during the parties' last discussion, Defendants advised that—consistent with their Rule 33(d) responses—they would be begin producing

responsive documents by the end of the month.[1]  You did not voice any objection.  Rather, the next we heard on this issue was the service of Carano's joint stipulation.

And, as yet another example, Carano's joint stipulation seeks sanctions, *see id.* at 10 & 53, even though, again, Carano never indicated that she was even considering seeking sanctions in any of the parties' written or oral discussions.[2]

*Fourth*, Rule 37 requires that a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in any effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1); *see also* Local Rule 37-1.  Here, while your portion of the joint stipulation recounts that the parties met and conferred, you do not include the required attestation that Carano met and conferred *in good faith*.  The motion should thus be denied for failure to comply with Rule 37.  *See, e.g., Harnden v. Key*, 2006 WL 1377016, at *1 (E.D. Cal. May 17, 2006) (denying motion to compel due to lack of certification under Rule 37); *Elder-Evans v. Casey*, 2011 WL 13244748, at *1 (N.D. Cal. July 6, 2011) (same).

*Fifth,* Carano did not include a copy of the case management schedule.  *See* Rule 37-2.1 ("[A] copy of the order establishing the initial case schedule, as well as any amendments, must be attached to the stipulation or to a declaration filed in support of the motion."); *see also Marinelarena v. Allstate Northbrook Indem. Co.*, 2021 WL 6618610, at *3 (C.D. Cal. Nov. 29, 2021) (motion ran "afoul" of Rule 37 by, *inter alia*, failing to attach a copy of the order establishing the case schedule).

Any one of these violations—on its own—would warrant the denial of Carano's motion.  Taken together, they demand it.  *See, e.g., Marinelarena*, 2021 WL 6618610, at *2-3 (denying motion for reconsideration of denial of motion, explaining that multiple violations of Rule 37 supported the denial).

Accordingly, we thus ask that you confirm the withdrawal of the joint stipulation.  Given the timing, and the fact that there can be no question that Carano's joint stipulation is not compliant, we ask that you provide such confirmation immediately.

For the avoidance of doubt, should Carano refuse to timely provide the requested confirmation of withdrawal, Defendants intend to seek summary dismissal of the joint stipulation and seek sanctions for Carano's blatant violation of the Court's rules.  *See, e.g., Lumber Liquidators, Inc. v. Sullivan*, 2012 WL 4464867, at *4 (C.D. Cal. Aug. 31, 2012) ("Further, under the Local Rules, the failure to comply with or cooperate in the meet and confer process, including the failure to file a joint stipulation, may result in the imposition of sanctions.").

---

[1]  As the parties have discussed on multiple occasions, among other things, this timing has been dictated by the parties' ongoing discussions about the extent and breadth of Carano's RFPs, as Defendants were not going to undertake successive collection and review efforts, which would only magnify the burden that Carano is seeking to impose on Defendants.

[2]  Carano's representation to the Court that "[e]ach of the issues addressed in the Stipulation were addressed during [the parties'] conferences" is thus not true.

3

Exhibit 4
27

O'Melveny

All rights reserved.

Yours truly,

Molly M. Lens
of O'MELVENY & MYERS LLP

4

Exhibit 4
28

# EXHIBIT 5



February 3, 2025

Via Email

Molly M. Lens
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

> Re:    Defendants' Supplemental Answers to Second Requests for
>        Production and Initial Production of Documents
>        *Gina Carano v. The Walt Disney Co., et al.*
>        Case No. 2:24-cv-01009-SPG-SK

Dear Molly:

We have received Defendants' Supplemental Answers to Plaintiff's Second Requests for Admission and the first batch of documents produced on Friday, January 31, 2025. The purpose of this letter is to arrange a final meet-and-confer meeting pursuant to Local Rule 37-1 for the purpose of 1) discussing Defendants' answers to the RFAs, 2) obtaining the bates numbers of those documents that were produced pursuant to Rule 33(d) that Defendants intend as answers to Plaintiff's First Set of Interrogatories, 3) learning Defendants' position on a request to extend the case deadlines, as discussed in our January 29, 2025 meeting, and 4) obtaining potential deposition dates for witnesses previously identified.

### *Interrogatory Answers and Fed. R. Civ. P. 33(d)*

While we complete our review of the documents produced, based on our prior discussions, including our discussion on Wednesday, January 29, 2025, we were anticipating that those documents being produced pursuant to Fed. R. Civ. P. 33(d) that Defendants intend to be answers to Plaintiff's First Set of Interrogatories would be identified. As we have discussed, that is necessary to evaluate whether that production of documents provides the information requested in the interrogatories. Yet, there was no designation of which documents were being provided pursuant to Rule 33(d) or what interrogatories were being answered, even in part, based on last Friday's production. Instead, your cover letter says that such information will be provided "at a later date." We ask that the bates numbers of those documents that Defendants are relying on as their answers to the interrogatories be identified by

**Edward H. Trent** | PARTNER
Office  (202) 787-1060
Mobile  (202) 656-2917
Email  etrent@schaerr-jaffe.com

SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
www.schaerr-jaffe.com

Exhibit 5
29

O'Melveny & Myers LLP
February 3, 2025
Page 2

Friday, February 7, 2025, including a representation of which interrogatory the documents are responsive to.

### *Defendants' Supplemental Answers to Second Requests for Admission.*

Regarding the supplemental answers to the Second Requests for Admission, we find those responses insufficient as they still do not answer the questions asked in those requests. Instead, the supplemental responses contain additional objections and continue to conclude that "Defendants lack sufficient knowledge or information to admit or deny the request." As we have discussed, we believe such efforts to dodge providing direct admission or denial are improper.

The requests at issue were served on September 19, 2024. There has been more than sufficient time to "analyze" the social media posts at issue and determine whether they align with Defendants' values as articulated by Bob Chapek in March 2021. These requests are not hypothetical, do not request a survey of employees, do not seek an opinion on what is generically "reasonable under all circumstances" as in *McGee v. Poverello House*, No. 1:18-CV-00768-LJO-SAB, 2019 WL 2725342, at *7 (E.D. Cal. July 1, 2019), or ask Defendants to "speculate as to individual subjective mindsets" as in *C.R. Department v. Grimmway Enterprises, Inc.*, No. 2:21-CV-01552 DAD AC, 2024 WL 3398337, at *5 (E.D. Cal. July 12, 2024), but rather ask whether a social media post by an employee of Defendants align with Defendants' values. And because Mr. Chapek chose to explain why Plaintiff was terminated for her social media posts while Pedro Pascal was not by referring to those values, Defendants can certainly admit or deny whether the posts identified in the RFAs align with them.

Regarding the cases cited to support the additional objections set out in Defendants' supplemental responses, Defendants' newfound reliance on *McGee* is off point. Unlike the request at issue there, which "did not ask whether [a policy] was reasonable for the responding party, or whether the responding party believed [the policy] was reasonable," 2019 WL 2725342, at *7, each request here is asking for "the responding party['s]" position by asking if a particular post aligns with a particular set of values established by Defendants' CEO. The speculation that undermined the request in *McGee* is simply absent here.

For similar reasons, your reliance on *Men of Destiny Ministries, Inc. v. Osceola County*, No. 6:06-cv-624-ORL, 2006 WL 2048288, at *3 (M.D. Fla. July 20, 2006), is also misplaced. Plaintiff is not asking about Defendants' "decisions." She is asking whether a given statement aligns with a given set of values. This is not a "hypothetical." It requires Defendants to merely read the social media statement and compare it against the values that they claim are "universal." Defendants can answer whether James Gunn's statement about enjoying being touched by children in his "silly place" aligns with its universal values. So too for all the other posts.

Exhibit 5
30

O'Melveny & Myers LLP
February 3, 2025
Page 3

Further, *Hopfinger v. City of Nashville*, No. 3:18-cv-1523-NJR, 2020 WL 1169342, at *2–3 (S.D. Ill. Mar. 11, 2020), and *Bogan v. Wexford Health Sources, Inc.*, No. 3:19-cv-00590-NJR, 2022 WL 1773379, at *4 (S.D. Ill. June 1, 2022), stand for the unremarkable proposition that Defendants cannot be forced to engage with hypotheticals. But once again, neither applies. As to *Hopfinger*, the RFAs there asked the defendants to answer questions "based upon assumptions and what-if scenarios" such as "Hopfinger's final 2017 earnings had she worked 2,080 hours, her years of service at age 62, her total pension if she lived to be 83, and the percent of her final earnings she would be entitled to for 36 years of service." 2020 WL 1169342, at *2. Some of the requests in *Bogan* were similarly speculative, as they asked the defendants to engage in, among other things, medical diagnoses to "bolster his narrative of the events in this case" that could not "reasonably be admitted without speculation" or were "not relevant to the primary issue." 2022 WL 1773379, at *4. That is not the case here.

Plaintiff's RFAs do nothing of the sort. They do not, for example, ask any questions about what may have happened with her career had she not been fired. Nor does she ask Defendants to engage with hypothetical questions about any of the other actors. What they said is judicially noticeable, as is that each of them continued working for Defendants—or rehired after a brief period of penance. Instead, Plaintiff seeks to show that Defendants treated her differently in terminating her when she allegedly acted contrary to their values while maintaining a relationship with others who engaged in similar (and—with respect to James Gunn—objectively worse) conduct. Such questions go to the heart of her discrimination claim, and Defendants should answer them.

Finally, Defendants' reliance on *Marchand v. Mercy Medical Center*, 22 F.3d 933, 938 (9th Cir. 1994), and *Martin v. Loadholt*, No. 1:10-cv-00156-LJO-MJ, 2014 WL 2465560, at *4 (E.D. Cal. June 2, 2014), suffers for different reasons. *Marchand*, for example, provides that "parties should not seek to evade disclosure by quibbling and objection," which has been Defendants' established pattern all along. 22 F.3d at 938. Nor can their conclusory claim that they have "admit[ted] to the fullest extent possible" be credited, as they still have not answered the question that was posed. And though *Martin* says that the rules require "nothing further" than for Defendants to state that they have conducted a "reasonable inquiry," that phrase is not talismanic. 2014 WL 2465560, at *4. It is no answer—nor is it a surprise—that "Defendants [have not] engaged in an analysis of whether" a given social media post was consistent with Defendants' values, as stated by Bob Chapek. The purpose of the RFA is to have Defendants perform such "analysis" now and answer the questions—questions that go to the heart of Plaintiff's claims.

We request that Defendants admit or deny Requests for Admission Nos. 9 to 19 by this Friday, February 7, 2025.

Exhibit 5
31

O'Melveny & Myers LLP
February 3, 2025
Page 4

### *Court's Scheduling Order.*

As we discussed last Wednesday, given the ongoing discovery issues, we no longer believe it is realistic to complete discovery within the deadlines established by the Court. Accordingly, we intend to seek a 90-day extension of all unexpired case deadlines, including discovery, expert disclosures, dispositive motions, and trial. Please let us know Defendants' position on this request and if you are willing to make this a joint motion.

### *Depositions.*

Following up on our December 13, 2024 letter and December 30, 2024 email regarding depositions, including a Rule 30(b)(6) deposition procedure, please let us know Defendants' availability for depositions beginning in late March. Of course, this presumes that the requested and agreed upon documents have been provided in sufficient time to allow us to prepare for those depositions. In addition to the depositions identified in our December 13, 2024 letter, we will also look to depose Pedro Pascal as a co-star of Plaintiff and someone familiar with her social media. If we should work with his agent to obtain his availability rather than your office, please let us know.

### *Date for Local Rule 37-1 Conference.*

As agreed to on January 29, we are requesting a final conference within 10 days of this letter, consistent with Local Rule 37-1, to discuss Defendants' supplemental answers to the Second RFAs. We believe the issues regarding the Interrogatories have been discussed. We also await Defendants' position regarding the remaining 12 RFPs which you agreed to provide by this Wednesday, February 5, 2025. Should any or all of those RFPs need to be discussed again, we are willing to do so during the conference to discuss the RFAs before proceeding with a motion to compel to address the unresolved issues. As before, our position and requested relief is set out in the draft Joint Stipulation previously provided on January 23, 2025. Also, as before, should our conference resolve any of these issues, we will modify the Joint Stipulation accordingly before reserving it according to Local Rule 37-2.

While we have made great strides to clarify and reach an agreement on what information Defendants will produce in response to Plaintiff's discovery requests, these issues remain outstanding and it is clear that a resolution will involve the court's involvement. Indeed, both sides will benefit from the court resolving these last remaining outstanding issues.

Exhibit 5
32

O'Melveny & Myers LLP
February 3, 2025
Page 5

       Please let us know a date and time within the next 10 days when you are available for this final conference on these issues.  We look forward to hearing from you.

Sincerely,

Edward Trent
*Counsel for Gina Carano*

Exhibit 5
33

EXHIBIT 6



O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00430

February 5, 2025

**Molly M. Lens**
D: +1 310 246 8593
mlens@omm.com

Edward H. Trent
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006

Re:    _**Gina Carano v. The Walt Disney Company et al.**_ **(No. 2:24-cv-01009)**

Dear Ed:

We write in response to your February 3 letter and in furtherance of our January 29 meet-and-confer call.  Per your request for a Local Rule 37-1 conference, we are available on February 12 at 2:30 p.m., which will give us time to review in more detail the issues that you've raised.  In the meantime, so as to keep the process moving, we provide the interim updates below.

1.  **Defendants' Responses to Carano's 1st and 2nd Sets of RFPs**.  As you know, we have been working to address your concerns with respect to the RFPs holistically, so as to avoid burdening Defendants with duplicative piecemeal document collection and review.  We appreciate the parties' productive dialogue to date and, consistent therewith, we enclose herewith Defendants' supplemental responses and objections to Carano's First and Second Sets of RFPs, which reflect the many compromises reached so far.

You will see that the enclosed supplemental responses and objections reflect that the parties are continuing to meet and confer with respect to a handful of requests.  Consistent with our January 29 discussion,[1] and in light of the further guidance that you provided during such discussion, Defendants propose the following with respect to these requests:



---

[1] On January 29, we also discussed your January 21 letter regarding Carano's commitments with respect to reviewing and producing social media posts in response to Disney's RFPs.  During that conversation, you reconfirmed that—notwithstanding anything in your January 21 letter suggesting otherwise—you are indeed undertaking a reasonably diligent search of Carano's social media posts consistent with Carano's responses to Disney's RFPs and will produce any posts so identified.  As we discussed further, to the extent we identify any of Carano's posts that Defendants intend to use (including during depositions) that you failed to produce despite reasonable diligence, we will produce such posts, and vice versa.

Austin · Century City · Dallas · Houston · Los Angeles · Newport Beach · New York · San Francisco · Silicon Valley · Washington, DC
Beijing · Brussels · Hong Kong · London · Seoul · Shanghai · Singapore · Tokyo

Exhibit 6
34

O'Melveny

b) <u>Social media</u> (RFPs 42, 44, 46, 48, and 61): These requests seek documents reflecting various forms of corrective action in response to Lucasfilm employees' social media posts. Defendants are willing to produce non-privileged documents relating to any request or requirement that, in response to their social media posts, Pedro Pascal, Mark Hamill, Pablo Hidalgo, Krystina Arielle, or any other Lucasfilm employee (including cast and crew members involved in production) (i) attend HR training, (ii) meet with GLAAD or other social advocacy organizations, (iii) issue a public statement, (iv) alter or delete such posts, or (v) participate in a meeting with a supervisor, in each case in connection with their posts, to the extent that any such documents are identified through a reasonably diligent inquiry.

c) <u>Compensation / financial information</u> (RFPs 31, 52, 62-66): These requests seek financial information that you have indicated Carano's damages experts have requested. Defendants are willing to produce non-privileged documents sufficient to show compensation (including components thereof) to (i) Carl Weathers and other guest actors appearing in more than one episode of Seasons 1 to 3 of *The Mandalorian*, (ii) Pedro Pascal and other series regulars on Star Wars streaming series, including Amandla Stenberg (*The Acolyte*), Diego Luna (*Andor*), and Rosario Dawson (*Ahsoka*), and (iii) any *The Mandalorian & Grogu* actors reprising their roles from *The Mandalorian*.

We'd also note that this compromise is subject to two caveats: (i) you agree to maintaining the documents Attorney's Eyes Only, and (ii) the names of reprising actors in *The Mandalorian & Grogu* are redacted, given the highly sensitive nature of the cast at present (which, as you likely know, is not public). To the extent that you contend you require the names as the case progresses, we are happy to revisit this issue, just as you proposed with respect to Carano's productions.

Finally, as to Carano's requests for budget information, we are prepared to explain why these requests have no relevance to any claim of damages here.

We believe that the above proposals should resolve Carano's stated needs for discovery, and Defendants are standing by to provide further supplemental responses and objections reflecting these positions once we hear back from you.

**2. Defendants' Rule 33(d) Responses.** We were surprised to see the discussion in your letter about Defendants' Rule 33(d) responses. As a reminder, we explained during our January 29 call that we would prioritize getting Defendants' first production out the door by January 31 and would follow up with the Bates-identifying information the following week, *i.e.* this week. And we again acknowledged in our January 31 production letter that this information would follow. Consistent with those representations, and subject to Defendants' right to supplement with additional Bates-identifying information as discovery proceeds, Defendants presently identify **CARANO-DEFS_0000001 through CARANO-DEFS_0008213** as documents they rely upon in response to Interrogatories 5, 6, and 8. As Defendants' rolling document productions progress, Defendants will supplement their responses with Bates-identifying information where applicable.

We'd also note that Defendants' agreement to jointly extend the schedule (*see below*), should also assuage the concerns you raise with respect to timing. That said, as we discussed on our January 29 call, to the extent you have a timely need for witness-identifying information

2

Exhibit 6
35



responsive to Interrogatories 1 and 2 before completion of Defendants' rolling productions, we are happy to discuss proffering that information in a non-verified manner.

3. **Court's Scheduling Order**.  You proposed that the parties agree to jointly move to extend the schedule by approximately 90 days.  Defendants are amenable to a joint motion, which, as we discussed on our January 29 call, will reflect that the parties have been working in good-faith on discovery, including narrowing ongoing discovery disputes.  A 90-day extension, however, of all unexpired case deadlines would see trial pushed to mid-December (to the extent the Court is even available then).  Given the holidays and counsel's conflicting trial commitments in late 2025, we ask that the parties target a February 2026 trial date.  Assuming that works with your schedule, we welcome a proposed revised schedule working backwards from that date.

4. **Other Issues**.  We acknowledge your comments regarding Defendants' Supplemental Responses to Carano's Second RFAs and deposition scheduling, which we are considering and look forward to discussing during our forthcoming call.

As reflected by the parties' progress to date, and the progress reflected herein, the parties have been working productively to narrow their dispute.  In contrast, however, the tone of your February 3 letter, coupled with your improper attempt to serve Defendants a joint stipulation (which you then withdrew after we pointed out that it did not comply with the Local Rules), suggests an improper desire to prematurely raise issues to the Court.  We hope that is not the case, especially given our amicable discussions to date.

We look forward to a productive dialogue on these issues next week.

All rights reserved.

Yours truly,

*[signature: Molly M. Lens]*

Molly M. Lens
of O'MELVENY & MYERS LLP

Enclosure:  Defendants' Supplemental Responses and Objections to Carano's 1st Set of RFPs
                Defendants' Supplemental Responses and Objections to Carano's 2nd Set of RFPs

# EXHIBIT 7



February 10, 2025

Via Email

Molly M. Lens
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

    Re: Defendants' Supplemental Responses to First and Second
       Requests for Production of Documents
       *Gina Carano v. The Walt Disney Co., et al.*
       Case No. 2:24-cv-01009-SPG-SK

Dear Molly:

   We have received your February 5, 2025 letter and Defendants' Supplemental Responses to Plaintiff's First and Second Requests for Production of Documents. The purpose of this letter is to address some of those issues in advance of our call this Wednesday, February 12, 2025.

### *Interrogatory Answers and Fed. R. Civ. P. 33(d)*

   In your letter, you identified over 8,200 pages of documents that contain the information responsive to Interrogatory Nos. 5, 6, and 8. While some of those documents address actions taken against Plaintiff beginning in September 2020 in response to her including "boop/bop/beep" in her social media bio, we do not believe Rule 33(d) contemplates that we wade through such a large number of documents to determine who required or requested Plaintiff (1) undergo media training due to her posts, (2) meet with GLAAD due to her posts, (3) apologize for her posts, or (4) meet with Kathleen Kennedy and a large group of Lucasfilm employees with ties to an LGBT group due to her posts as requested in Interrogatory No. 5. Similarly, requiring Plaintiff to search such a large number of documents for those tasked with monitoring Plaintiff's social media (as requested in Interrogatory No. 6) or certain hashtags associated with Plaintiff (as requested in Interrogatory No. 8) is inconsistent with the Rules. Accordingly, we request that you provide the list of individuals requested in response to Interrogatory Nos. 1, 2, 5, 6, and 8, even if in an unverified manner, so that we can determine what additional depositions will be required or additional documents will need to be requested. That information will allow us to properly evaluate the documents produced to date in light of the requests

---

**Edward H. Trent** | PARTNER
Office (202) 787-1060
Mobile (202) 656-2917
Email etrent@schaerr-jaffe.com

               **SCHAERR** | **JAFFE** LLP
               1717 K Street NW, Suite 900
               Washington, DC 20006
               www.schaerr-jaffe.com

Exhibit 7
37

O'Melveny & Myers LLP
February 10, 2025
Page 2

in Interrogatory Nos. 5, 6, and 8.  We also request that you provide a more specific designation of documents you are relying on pursuant to Rule 33(d) as Defendants' answers to those interrogatories.  With that information, we are willing to remove the issues regarding Defendants' answers to our interrogatories from the anticipated motion to compel to allow Defendants to provide the documents they have agreed to provide and allow the parties to discuss that production should that be necessary.

### *Supplemental Responses to First and Second Requests for Production*

Thank you for providing additional clarity on Defendants' position concerning Requests for Production Nos. ████████████████████████ 42, 44, 46, 48, and 61 (concerning actions taken against others for their social media posts), and 31, 52, 62–66 (actor compensation and production budgets, net and gross profits). We believe your supplemental responses will allow us to resolve, for now, some of these requests pending a review of documents to be produced and better focus on the issues that will need the court's involvement to resolve.  In light of these efforts, we will remove our request for sanctions from the Joint Stipulation as they concern the remaining outstanding requests for production.



2.  <u>Requests for Production Nos. 42, 44, 46, 48, and 61 (actions taken against others for their social media posts)</u>.

We are willing to accept your proposed compromise for these Requests for Production while reserving our right to revisit these issues after reviewing documents produced in response to these requests.

Exhibit 7
38

O'Melveny & Myers LLP
February 10, 2025
Page 3

    3.  <u>Requests for Production Nos. 31, 52, 62–66 (actor compensation and production budgets, net and gross profits)</u>.

    We view your proposal as a potential resolution of Request for Production No. 31 provided that the documents produced include the contracts for the actors identified in that request. We are willing to agree to an Attorneys' Eyes Only designation for those documents provided that permits production to our expert, who has signed the required agreement to abide by the terms of the Court's Protective Order. With the production of these documents, we will likewise consider Request for Production No. 52 as satisfied.

    As for Request for Production No. 66 concerning compensation for actors in *The Mandalorian and Grogu* due to be released next year, we are willing to accept information on those actors who will reprise a role from the Disney+ series in the movie, but the production should also include any other actor in a role of similar prominence as was the role of Cara Dune. We have no way of knowing if there are any such roles, but we do want to be complete in our analysis.

    As for the redaction of names, we believe the Attorneys' Eyes Only designation will provide the necessary protection against any improper or inadvertent disclosure of this information. For our expert to do an analysis of these actors' compensation, the expert will need to know who the actor is and the role the actor plays in the film. As we have discussed previously, we are willing to have further conversations on how such information will be presented in any court filing or trial once our expert has completed his evaluation and prepared his report.

    This leaves Request for Production No. 62 concerning contracts and compensation for Oscar Isaac, John Boyega, and Kelly Marie Tran for their roles in *The Force Awakens*, *The Last Jedi*, and/or *The Rise of Skywalker*, which we believe are comparable to the role Plaintiff expected to have in *The Mandalorian and Grogu*. We believe such information is relevant to Plaintiff's claim for damages in a way similar to the information requested in Request No. 66.

    Finally, there are Requests for Production Nos. 63–65 that seek budget and net and gross profit information related to various Star Wars productions. While we will certainly listen to your explanation of why you believe this information is not relevant to Plaintiff's claim for damages, we believe it is. As we have previously explained, budgets are often related to actor compensation and a comparison of the budgets from various programs with the compensation of paid actors of similar stature is relevant to our expert's analysis of the damages Plaintiff suffered due to her termination. The budgets as well as gross and net profits provide data indicative of a production's success, the likelihood of additional seasons or movies, and insight into future compensation for the key figures in the production. We are willing to

Exhibit 7
39

O'Melveny & Myers LLP
February 10, 2025
Page 4

accept this information on an Attorneys' Eyes Only basis—again assuming that it would permit production to our expert who will evaluate the data.

Based on our prior conversations and your current proposal, we believe it is reasonable to have the court weigh in on this issue and hear both side's concerns. From our numerous discussions of this issue in letter and via video call, it is evident a compromise on the production of this information is unlikely.

### *Court's Scheduling Order.*

Thank you for your willingness to agree to a request for an extension of the unexpired case deadlines. We agree with your suggestion that the trial date be moved to February 2026 assuming that works on the court's schedule. We will send you a draft motion and proposed updated schedule by email as soon as it is ready.

### *Depositions.*

We look forward to working with you on getting depositions scheduled, understanding that we will need to have the documents Defendants have agreed to produce in sufficient time to prepare for the schedule that is ultimately agreed upon. We will send you a proposed schedule so that you can determine witness availability. Our goal will be to have that to you later this week. Given the undoubtedly busy schedule of the various witnesses, getting these on the books now should work to everyone's benefit.

We look forward to speaking with you on Wednesday.

Sincerely,

Edward Trent
*Counsel for Gina Carano*

Exhibit 7
40

# EXHIBIT 8



February 17, 2025

Via Email

Molly M. Lens
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

> Re:  Outstanding Discovery Requests
> *Gina Carano v. The Walt Disney Co., et al.*
> Case No. 2:24-cv-01009-SPG-SK

Dear Molly:

Thank you for your time on Wednesday. The purpose of this letter is to confirm certain agreements reached and address the remaining outstanding discovery issues as they concern Defendants' responses to Plaintiff's written discovery requests served to date.

### *Interrogatory Answers and Fed. R. Civ. P. 33(d)*

As we discussed, you have identified over 8,200 pages of documents as Defendants' response to Interrogatory Nos. 5, 6, and 8. We acknowledge that some of those documents address actions taken against Plaintiff beginning in September 2020 in response to her including "boop/bop/beep" in her social media bio/header. However, as we stated, we do not believe Rule 33(d) contemplates that we wade through such a large number of documents to determine who required or requested certain actions be taken. For Interrogatory No. 5, that would include the request or requirement that Plaintiff (1) undergo media training due to her posts, (2) meet with GLAAD due to her posts, (3) apologize for her posts, or (4) meet with Kathleen Kennedy and a large group of Lucasfilm employees with ties to an LGBT group due to her posts. ██████████████████████████████████████████████

If you can confirm whether any other individuals were materially involved in these decisions, we would appreciate it. Otherwise we must insist on a proper response to these interrogatories and, failing that, will be forced to take up the matter with the Court.

**Edward H. Trent** | PARTNER
Office   (202) 787-1060
Mobile  (202) 656-2917
Email   etrent@schaerr-jaffe.com

**SCHAERR | JAFFE** LLP
1717 K Street NW, Suite 900
Washington, DC 20006
www.schaerr-jaffe.com

Exhibit 8
41

O'Melveny & Myers LLP
February 17, 2025
Page 2

As for Interrogatory Nos. 6 and 8, we discussed whether we are looking for those who actually monitored the social media in question or those who requested that the monitoring take place. After reviewing those interrogatories, our request was for both. Interrogatory No. 6 requests the identity of "each person tasked with monitoring Plaintiff's social media accounts" and of whoever "instructed such person(s) to monitor this social media information[.]" Interrogatory No. 8 likewise requests the identity of "each person tasked with monitoring the hashtags #FireGinaCarano, #weloveGinaCarano, #westandwithGinaCarano, or similar hashtags or posts related to Plaintiff on social media" and of whoever "instructed such person(s) to monitor this social media information[.]"

▮▮▮▮ Accordingly, we ask that you provide a list of any other individuals tasked with monitoring the social media material identified in these interrogatories as well as those who instructed them to do so. Otherwise, once again, we must insist on a proper response to these interrogatories and, failing that, will be forced to take up the matter with the Court.

Similarly, if you would provide a list of names responsive to Interrogatory Nos. 1 and 2 as referenced in your February 5 letter, we would appreciate that as well. Upon receipt of that information, we can remove the interrogatories from what we anticipate will be a far more narrowed motion to compel. We ask that the information be provided by Thursday, February 27, 2025.

### *Second Requests for Admissions*

To address our impasse on Defendants' responses to Plaintiff's Second Requests for Admission, you proposed a stipulation that the requests be considered "procedurally denied." If it is Defendants' position that, based on reasonable inquiry, they have insufficient information to either admit or deny the requests and, therefore, denies the requests for admission, we believe they should say so. If that is your proposed stipulation, please let us know.

As we have discussed, requesting that Defendants admit or deny whether certain social media posts align with their stated values is appropriate under Rule 36. Indeed, Rule 36(a)(1)(A) allows a "party [to] serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: facts, the application of law to fact, or *opinions about either*." (emphasis added). The fact that no one had yet conducted an analysis of the specific social media posts at issue in connection with Defendants' values as articulated by then CEO Bob Chapek is frankly insufficient to justify

Exhibit 8
42

O'Melveny & Myers LLP
February 17, 2025
Page 3

declining to admit or deny the request. Accordingly, on or before February 27, please either confirm that we have properly characterized your proposal above and that you are in agreement that the requests are to be treated as denied, or have your client reconsider its objections and provide an admission or denial to Requests for Admission Nos. 9–19. Otherwise we will be forced to take up the matter with the Court.

### *Responses to First and Second Requests for Production*

The final two issues concern Requests for Production Nos. ████████ ████████████████████ 31, 52, 62–66 (actor compensation and production budgets, net and gross profits). We summarize below our understanding of Defendants' position, our requests, and what remains for the Court to resolve.



Exhibit 8
43

O'Melveny & Myers LLP
February 17, 2025
Page 4



2.  Requests for Production Nos. 31, 52, 62–66 (actor compensation and production budgets, net and gross profits).

Our discussion concerning Request for Production No. 31 centered mostly around the inclusion of actor contracts as part of the compensation information requested. As we discussed, we believe that the contracts requested, along with a compilation as you propose of the compensation received, is significant. The individuals at issue were comparable co-stars to Plaintiff in subsequent seasons of *The Mandalorian* (Carl Weathers) while the others held leading roles in other Star Wars spin-offs on Disney+ similar to the anticipated *Rangers of the New Republic* series that was to feature Plaintiff. As we discussed, even Defendants' own documents confirm that, as of September 24, 2020, "there are plans for the character [Cara Dune] to have her own series." *See* Carano-Defs_0001600. Accordingly, the structure of contracts for the other lead actors requested is relevant to our evaluation and calculation of damages.

The same analysis would apply to Request for Production No. 66 concerning compensation for actors in *The Mandalorian and Grogu* due to be released next year. As mentioned in our February 10, 2025 letter, we are willing to accept information for those actors who will reprise a role from the Disney+ series in the movie, but the production should also include any other actor in a role of similar prominence to Cara Dune. We have no way of knowing if there are any such roles, but we do want to be complete in our analysis. And we are entitled to the information we believe necessary to conduct that analysis.

Exhibit 8
44

O'Melveny & Myers LLP
February 17, 2025
Page 5

The contracts, in addition to a compilation of compensation, are necessary here as well. As we discussed, contracts for actors in feature films are structured differently than those of a guest actor on a Disney+ series, which makes the contracts for those actors with roles in *The Mandalorian and Grogu* particularly relevant.

We do not believe redactions are necessary as we believe the Attorneys' Eyes Only designation (which also applies to experts) will provide the necessary protection against any improper or inadvertent disclosure of this information. If anything, we believe redactions would be counterproductive. After all, for our expert to do an analysis of these actors' compensation, the expert will need to know who the actor is and the role the actor plays in the film. As we have discussed previously, we are willing to have further conversations on how such information will be presented in any court filing or trial once our expert has completed his evaluation and prepared his report—which, again, will redact any confidential information. While we seemed to agree that an Attorneys' Eyes Only designation would permit disclosure to our experts, we did not specifically resolve the redaction issue. Please let us know if you are willing to produce the requested information without redactions while subject to the Attorneys' Eyes Only designation for the reasons set forth here and in our February 10, 2025 letter. Otherwise we will be forced to raise this issue with the Court.

Request for Production No. 62 also remains in dispute. It requests contracts and compensation for Oscar Isaac, John Boyega, and Kelly Marie Tran for their roles in *The Force Awakens*, *The Last Jedi*, and/or *The Rise of Skywalker*, roles that we believe are comparable to the role Plaintiff expected to have in *The Mandalorian and Grogu*. We believe such information is relevant to Plaintiff's claim for damages in a way similar to the information requested in Request No. 66. There has been no indication that Defendants are willing to provide this information, which thus leaves it as an issue for the court to ultimately resolve.

Finally, Requests for Production Nos. 63–65 seek budget and net and gross profit information related to various Star Wars productions. As we discussed, the contracts will tell us if "back end" compensation is a part of comparable contracts Defendants have entered with other actors. And this in turn would provide an insight into the terms of the contracts Plaintiff would have received for her anticipated future work for Defendants in her role as Cara Dune. Further, as we discussed, budgets are often related to actor compensation and a comparison of the budgets from various programs with the compensation of actors of similar stature is relevant to our expert's analysis of the damages Plaintiff suffered due to her termination.

Indeed, from our perspective, the budgets are necessary to put the actor compensation into their proper perspective. We also believe the budgets as well as gross and net profits will provide data indicative of a production's success, the

Exhibit 8
45

O'Melveny & Myers LLP
February 17, 2025
Page 6

likelihood of additional seasons or movies, and insight into future compensation for the key figures in the production. Additionally, as we originally discussed, profits may be relevant to a compensation package and, even if not in a formulaic manner, certainly relevant to whether a series is continued. Having this information for the movies and programs requested gives insight into how those decisions are made by allowing us to compare what happened with the various *Star Wars* programs in light of their financial profitability. As with other information in this category, we are willing to accept this information on an Attorneys' Eyes Only basis—again assuming that it would permit production to our expert who will evaluate the data.

Based on our prior discussions, and as confirmed on Wednesday, it appears it will be necessary to have the court weigh in on this issue and hear both sides' concerns, as a compromise on the production of this information is unlikely. We are willing to give Defendants until Thursday, February 27, 2025, to let us know if the proposals set forth here and as discussed will resolve the matter or if we will need to have the Magistrate Judge decide the issue in a timely fashion to allow us to comply with what we hope will be the new and extended case deadlines.

We appreciate your efforts in addressing the various discovery issues we have discussed over the last several months. We look forward to hearing from you by Thursday, February 27, 2025, so that we may modify the Joint Stipulation accordingly. Finally, we look forward to your next production of documents.

Sincerely,

Edward Trent
*Counsel for Gina Carano*

Exhibit 8
46

EXHIBIT 9

| From: | Edward Trent |
|---|---|
| To: | Lens, Molly M.; Cocchiaro, Salvatore J. |
| Cc: | Joshua Prince; Petrocelli, Daniel M.; Gene Schaerr |
| Subject: | RE: Carano v. Walt Disney Co. |
| Date: | Wednesday, March 5, 2025 5:36:06 AM |

Molly,

We have spent significant amount of time addressing the issues set out in the remaining RFPs.



As for compensation information, we have consistently said a summary of payments was fine rather than all documents showing payments but have also consistently requested copies of contracts. Indeed, we made that clear in our February 10, 2025 letter and discussed during our February 12 meeting. The citation you list below from our November 11 letter concerned Request No. 52 that sought compensation for all actors in *The Mandalorian* (who presumably operated under similar contracts), a request that we are withdrawing upon a response to Request 31. As we discussed on February 12, the contracts for the lead actors in Request 31 and those in movies (Requests 62 and 66) are likely very different form the contracts Gina Carano signed during the first two seasons of *The Mandalorian* and, therefore, we request that in addition to a spreadsheet summary of actual payments (if you so choose), the contracts be provided. We do not see that as a different position.

We do not believe another Rule 37-1 meeting is required. Both sides have set out their positions multiple times. We do look forward to your responsive letter as it may provide clarity on the issues above, requests for admissions and information requested in the interrogatories.

Thanks,

Ed

Exhibit 9
47

**From:** Lens, Molly M. <mlens@omm.com>
**Sent:** Monday, March 3, 2025 11:16 PM
**To:** Edward Trent <etrent@schaerr-jaffe.com>; Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Joshua Prince <jprince@schaerr-jaffe.com>; Petrocelli, Daniel M. <dpetrocelli@omm.com>
**Subject:** RE: Carano v. Walt Disney Co.

Hi Ed –

We disagree that you can serve us with a joint stipulation at this point. We also don't see
how you can disagree that your February 17 letter changes Plaintiffs' position on several
requests.

As another example, for many months the parties have
been discussing Plaintiff's many requests for compensation-related information, with the
foundation of those discussions being the potential production of a summary document by
Defendants. *See, e.g.*, Trent Nov. 11 Ltr. at 4 ("***spreadsheets reflecting compensation* .
. . would suffice"). Yet your February 17 letter now insists that production of the contracts
themselves is required.

You'll have our responses to these new issues later this week. And, to the extent that you
disagree with our positions stated therein, you can send us a Rule 37-1 letter and the
parties can conduct a final meet-and-confer conference. But, especially given the extended
schedule, we trust that Plaintiff will comply with this District's rules.

Molly

**Molly M. Lens**
mlens@omm.com
O: +1-310-246-8593

O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Website | LinkedIn | Twitter | Bio

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that
may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or
use this information. If you have received this transmission in error, please notify the sender immediately by reply
e-mail and then delete this message.*

**From:** Edward Trent <etrent@schaerr-jaffe.com>
**Sent:** Monday, March 3, 2025 9:19 AM
**To:** Lens, Molly M. <mlens@omm.com>; Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Joshua Prince <jprince@schaerr-jaffe.com>

Exhibit 9
48

**Subject:** RE: Carano v. Walt Disney Co.


[EXTERNAL MESSAGE]

Molly,

 We saw the order and also were not concerned with the court's minor modifications.  This should allow us to timely resolve the final discovery disputes and then move forward with depositions.  We will have a proposed schedule to you later this week that should allow you time to confirm witness availability.

 We're not sure how our position has changed on the discovery issues and look forward to your response.  As we have mentioned, we believe the time is right for the court to weigh in on the last few unresolved issues and are prepared to send you our portion of the updated Joint Statement by mid-week.  As we have mentioned before, if any of the issues in the Joint Statement are resolved prior to the filing of a motion to compel, we are happy to remove those issues.

Thanks,

Ed

---

**From:** Lens, Molly M. <mlens@omm.com>
**Sent:** Sunday, March 2, 2025 10:29 PM
**To:** Edward Trent <etrent@schaerr-jaffe.com>; Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Joshua Prince <jprince@schaerr-jaffe.com>
**Subject:** RE: Carano v. Walt Disney Co.

Hi Ed –

As you saw, the Court entered our scheduling stipulation, with a few modest modifications, over the weekend.  Somewhat relatedly, we're still working our way through your February 17 letter, which we received when I was out, as you know.  At least from our perspective, Plaintiff has changed her position as to many of her requests, which, in turn, means we need a bit more time to respond.  In any event, we anticipate having our written response to you this week.

Thanks,

Molly

**Molly M. Lens**
mlens@omm.com
O: +1-310-246-8593
_____

O'Melveny & Myers LLP

Exhibit 9
49

1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067
<u>Website</u> | <u>LinkedIn</u> | <u>Twitter</u> | <u>Bio</u>

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

**From:** Edward Trent <<u>etrent@schaerr-jaffe.com</u>>
**Sent:** Monday, February 17, 2025 8:01 AM
**To:** Lens, Molly M. <<u>mlens@omm.com</u>>; Cocchiaro, Salvatore J. <<u>scocchiaro@omm.com</u>>
**Cc:** Joshua Prince <<u>jprince@schaerr-jaffe.com</u>>
**Subject:** Carano v. Walt Disney Co.

Molly,

 Attached is our recap of our conversation last Wednesday and some additional feedback on a few of the issues we discussed.

Thanks,

Ed

Edward H. Trent
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900 | Washington, DC 20006
Office (202) 787-1060 | Mobile (202) 656-2917
<u>etrent@schaerr-jaffe.com</u> | <u>www.schaerr-jaffe.com</u>
*Admitted to practice in the District of Columbia, Florida, and Tennessee*
*Board Certified in Labor and Employment Law by the Florida Bar*

Exhibit 9
50

| | |
|---|---|
| **From:** | Joshua Prince |
| **To:** | Edward Trent; Lens, Molly M.; Cocchiaro, Salvatore J.; Gene Schaerr |
| **Cc:** | Petrocelli, Daniel M.; Kristina Robinson |
| **Subject:** | Re: Carano v The Walt Disney Company - Joint Stipulation of Discovery Issues, L.R. 37-2 |
| **Date:** | Wednesday, March 12, 2025 8:32:55 AM |
| **Attachments:** | Carano-Jt Stip re Discovery Issues (2025.03.12).docx |
| | Addendum for Jt Stip to Mot to Compel[70].pdf |

Molly,

As Ed promised yesterday, please see attached an updated draft of the Joint Stipulation limited to those requests that seek compensation (including contracts), budgets, and net/gross profits. We appreciate the clarity you provided in your March 7, 2025 letter and the fact that we were able to narrow the issues that remain in dispute further as a result.

Warm regards,

Joshua

Joshua J. Prince
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900 | Washington, DC 20006
Office (202) 787-1060 | Mobile (202) 867-4998
jprince@schaerr-jaffe.com | www.schaerr-jaffe.com

---

**From:** Edward Trent <etrent@schaerr-jaffe.com>
**Date:** Tuesday, March 11, 2025 at 11:40 AM
**To:** Lens, Molly M. <mlens@omm.com>, Cocchiaro, Salvatore J.
<scocchiaro@omm.com>, Joshua Prince <jprince@schaerr-jaffe.com>, Gene Schaerr
<gschaerr@schaerr-jaffe.com>
**Cc:** Petrocelli, Daniel M. <dpetrocelli@omm.com>
**Subject:** RE: Carano v The Walt Disney Company - Joint Stipulation of Discovery Issues,
L.R. 37-2

Molly,

Thank you for the follow up to Sal's March 7 email and letter.  Based on your representations of what will be produced, we will re-serve the joint stipulation removing all requests except for Request for Production Nos. 31, 62-66. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Each of the remaining issues in dispute—those related to budges, profits, and actor compensation (specifically including actor contracts)—have been discussed several times, including at the February 12 meeting. We believe no further conference is necessary before we re-serve the Joint Stipulation.

Exhibit 9
51

It is our plan to re-serve the updated joint stipulation this week, and potentially as early as later today.  The seven-day time period for Defendants to provide their response will not begin until we have re-served the stipulation.

We do welcome a timeline of when the additional material to be produced will be made available.  For example, as to the documents that defendants intend to rely on for their answers to Interrogatory Nos. 1 and 2, we would request that those be produced within the next 10 days.  That is basic information that was requested last July.  Please let us know when you anticipate making the remainder of Defendants' production.

We look forward to receiving the additional information and appreciate your clarification of Defendants' position on the discovery issues set out in last Friday's Joint Stipulation.  This should allow the court to focus on those few issues upon which we have been unable to agree.

Ed

---

**From:** Lens, Molly M. <mlens@omm.com>
**Sent:** Tuesday, March 11, 2025 1:15 PM
**To:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>; Joshua Prince <jprince@schaerr-jaffe.com>; Edward Trent <etrent@schaerr-jaffe.com>; Gene Schaerr <gschaerr@schaerr-jaffe.com>
**Cc:** Petrocelli, Daniel M. <dpetrocelli@omm.com>
**Subject:** RE: Carano v The Walt Disney Company - Joint Stipulation of Discovery Issues, L.R. 37-2

Hi Ed –

We haven't received a response to the below.  As explained below, Plaintiff's joint stipulation is premature and inconsistent with the Central District's rules and Judge Kim's standing order.  We thus ask that you confirm that Plaintiff has withdrawn her portion of the joint stipulation.

Even if you disagree, however, the stipulation needs to be revised to reflect the agreements in our March 7 letter.  *See, e.g.*, Mar. 3 Email from E. Trent ("As we have mentioned before, if any of the issues in the Joint Statement are resolved prior to the filing of a motion to compel, we are happy to remove those issues.").  Accordingly, at a minimum, we understand that a revised joint statement is forthcoming and that our deadline to return our portion will run from service of that revised statement.  (And, for the avoidance of doubt, if that is how Plaintiff elects to proceed, we'll raise our issues with Rule 37 / the meet-and-confer process in our portion of the joint statement.)

Thanks,

Molly

**Molly M. Lens**
mlens@omm.com

Exhibit 9
52

O: +1-310-246-8593

O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Website | LinkedIn | Twitter | Bio

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Sent:** Friday, March 7, 2025 4:27 PM
**To:** Joshua Prince <jprince@schaerr-jaffe.com>; Edward Trent <etrent@schaerr-jaffe.com>; Gene Schaerr <gschaerr@schaerr-jaffe.com>
**Cc:** Lens, Molly M. <mlens@omm.com>; Petrocelli, Daniel M. <dpetrocelli@omm.com>
**Subject:** RE: Carano v The Walt Disney Company - Joint Stipulation of Discovery Issues, L.R. 37-2

Josh,

We are disappointed to have received Plaintiff's premature joint stipulation. Despite your belief that "the time has come" to take these issues the Court, your service of this stipulation is plainly contrary to the parties' ongoing discussions, which, as you acknowledge, have allowed us to "narrow the issues significantly" thus far. Indeed, as we said in our Monday email, we were conferring with our client to provide a written response to the issues raised in your firm's February 17 letter by the end of this week. Per the attached letter response, we understand that Defendants' willingness to further compromise should resolve most of the issues raised in your stipulation. And as to any that may remain, Local Rule 37-1 requires that you send us a Rule 37-1 letter and that the parties conduct a final meet-and-confer conference. If you refuse, we will have no choice but to inform the Court of your failure to conclude the meet-and-confer process.

Best,
Sal

Salvatore J. Cocchiaro
O: +1-212-728-5975
scocchiaro@omm.com

**From:** Joshua Prince <jprince@schaerr-jaffe.com>
**Sent:** Friday, March 7, 2025 12:20
**To:** Lens, Molly M. <mlens@omm.com>; Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Gene Schaerr <gschaerr@schaerr-jaffe.com>; Edward Trent <etrent@schaerr-jaffe.com>
**Subject:** Carano v The Walt Disney Company - Joint Stipulation of Discovery Issues, L.R. 37-2

Molly and Sal,

Please find attached an updated draft of the Joint Stipulation. We are grateful to have been able to narrow the issues significantly since we initially served the Joint Stipulation in January through

Exhibit 9
53

our two Rule 37-1 conferences. But we believe that the time has come that we need to seek judicial resolution, as Ed explained in his email earlier this week. Please let Ed know if you have any questions.

Regards,

Joshua

Joshua J. Prince
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900 | Washington, DC 20006
Office (202) 787-1060 | Mobile (202) 867-4998
jprince@schaerr-jaffe.com | www.schaerr-jaffe.com

Exhibit 9
54

# EXHIBIT 10



O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00430

March 7, 2025

Edward H. Trent
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006

**Molly M. Lens**
D: +1 310 246 8593
mlens@omm.com

Re:    *Gina Carano v. The Walt Disney Company et al.* (No. 2:24-cv-01009)

Dear Ed:

We write in response to your February 17 letter, which, as discussed in our interim correspondence and as detailed below, differs in substance—and tone—from the parties' February 17 discussion.

I.    **Defendants' Rule 33(d) Responses to Carano's 1st Set of Interrogatories**.

We maintain that Defendants have appropriately invoked Rule 33(d) in response to Interrogatory Nos. 1, 2, 5, 6, and 8. Consistent with Defendants' responses and objections, Defendants will continue to produce documents responsive to these Interrogatories and will supplement their responses to include Bates-identifying information upon the completion of their rolling productions. Nevertheless, in an effort to avoid motion practice, the parties have discussed having Defendants provide—on a *non-verified* basis—certain information in response to the interrogatories. As Defendants have explained, this information is being provided on a non-verified basis because Defendants maintain their Rule 33(d) responses are proper. Moreover, especially in light of the number of individuals potentially responsive to each interrogatory, Defendants underscore that the individuals that Defendants identify in this informal way is not intended to limit the individuals identified in the documents that they are producing.

Subject to Defendants' right to update as discovery progresses, our position with respect to the interrogatories at issue follows:

Interrogatory Nos. 1 and 2 request that Defendants identify "each person who made, approved or was consulted (whether or not employed by or affiliated with Defendants or any of them) on the decision to terminate Carano from her role as Cara Dune in The Mandalorian," and "each person and entity responsible for drafting, editing, commenting on, approving, and/or issuing Lucasfilm's public statement made on or about February 10, 2021." Given the breadth of this request (which is really multiple interrogatories), you suggested that we identify the "main" individuals involved in deciding to issue a statement on February 10, 2021. Defendants agree to provide this information, following its conclusion of its review of the corresponding documents.

Interrogatory No. 5 requests that Defendants identify each person who (1) required or requested Carano to participate in media training, (2) required or requested her to meet with representatives of GLAAD (Gay & Lesbian Alliance Against Discrimination), (3) requested or

Austin · Century City · Dallas · Houston · Los Angeles · Newport Beach · New York · San Francisco · Silicon Valley · Washington, DC
Beijing · Brussels · Hong Kong · London · Seoul · Shanghai · Singapore · Tokyo

Exhibit 10
55



suggested that she issue a public apology/statement or (4) requested or suggested that she participate in a Zoom call with Lucasfilm president Kathleen Kennedy and various employees who identify as part of the LBGTQ+ community following her placement of "boop/bop/beep" in her X/Twitter profile in September 2020.  Again, given the breadth of this interrogatory (which, again, is many interrogatories), you have suggested that we identify the "main" individuals with respect to each subpart.

**Interrogatory Nos. 6 and 8** request that Defendants identify "each person tasked with monitoring Plaintiff's social media accounts, [and] who instructed such person(s) to monitor this social media information," and "each person tasked with monitoring the hashtags #FireGinaCarano, #weloveGinaCarano, #westandwithGinaCarano, or similar hashtags or posts related to Plaintiff on social media, who instructed such person(s) to monitor this social media information . . ."  During our February 12 conversation, you indicated that you were interested in the identification of the people who actually did the monitoring (as opposed to the individuals who made the request).  You state in your February 17 letter, however, that you actually want "both."

Based on the parties' prior discussions, we understand resolves the parties' disagreements as to these interrogatories.

## II.    Defendants' Responses to Carano's 2nd Set of RFAs.

While we maintain that Defendants supplemental responses are compliant with Rule 36, consistent with our discussions, we can confirm that you may treat Defendants' responses as denials for procedural purposes only. [1]   Based on the parties' prior discussions, we understand resolves the parties' disagreement as to these requests.

## III.    Defendants' Responses to Carano's 1st and 2nd Sets of RFPs.

Your February 17 letter backpedals on many of the parties' discussions to date and, further still, offers new justifications to support such expanded requests.  Nevertheless, Defendants are committed to resolving the parties' disagreements in good faith, and without the need for court intervention, and thus propose as follows.

---

[1] Your February 17 letter confusingly states "[i]f it is Defendants' position that, based on reasonable inquiry, they have insufficient information to either admit or deny the requests and, therefore, denies the requests for admission, we believe they should say so."  This is not how Rule 36 works.  Rather, Rule 36 permits an answering party to "assert lack of knowledge or information as a reason for failing to admit or deny," which is precisely what Defendants have done.

Exhibit 10
56







O'Melveny

**B.    Compensation / Budget Information (RFPs 31, 52 & 62–66):**  These requests seek financial information that you have indicated Carano's damages experts have requested.

**i.    Compensation (RFPs 31, 52, 62 & 66):**  As discussed, Defendants were willing to produce non-privileged documents sufficient to show compensation (including components thereof) to (i) Carl Weathers and other guest actors appearing in more than one episode of Seasons 1 to 3 of *The Mandalorian*, (ii) Pedro Pascal and other series regulars on Star Wars streaming series, including Amandla Stenberg (*The Acolyte*), Diego Luna (*Andor*), and Rosario Dawson (*Ahsoka*), and (iii) any *The Mandalorian & Grogu* actors reprising their roles from *The Mandalorian*.  This offer was made subject to two caveats: (i) that you agree to maintaining the documents Attorney's Eyes Only, and (ii) that we redact the names of reprising actors in *The Mandalorian & Grogu*, given the highly sensitive nature of the cast list at present.

Here, again though, Plaintiff appears to have walked back the parties' progress to date, which had coalesced around Defendants providing this information in the form of a summary spreadsheet reflecting compensation and its components.  You now claim that contracts for each of the actors within the categories above are "necessary," as "the structure of contracts" is somehow relevant because "contracts will tell [you] if 'back end' compensation is a part of comparable contracts Defendants have entered with other actors."

We fail to see how this information is relevant, let alone "necessary."  You have explained that Plaintiff intends to use this compensation information to compute her own purported damages.  If Defendants were provide the compensation information—as we have proffered to do on a sufficient-to-show basis—Plaintiff would have the information she purportedly needs.  The contracts add nothing.

You also pushed back on our offer to provide summary information for *The Mandalorian & Grogu* film actors on a redacted basis, claiming that an Attorney's Eyes Only basis would assuage Defendants' concerns about this highly sensitive, non-public information.  But in the very same letter, you mentioned that you may "need" to share Attorneys' Eyes Only information with your client, which again entirely undermines the purpose behind such a designation.  Defendants thus have no confidence that producing this information on an Attorneys' Eyes Only basis would adequately protect their legitimate sensitivity around the film's cast.

Defendants propose to produce non-privileged documents sufficient to show compensation (including components thereof) to (i) Carl Weathers and other guest actors appearing in more than one episode of Seasons 1 to 3 of *The Mandalorian*, (ii) Pedro Pascal and other series regulars on certain Star Wars streaming series from 2019 to 2024, including Amandla Stenberg (*The Acolyte*), Diego Luna (*Andor*), and Rosario Dawson (*Ahsoka*), and (iii) any *The Mandalorian & Grogu* actors reprising their roles from *The Mandalorian*.[3]  Defendants

---

[3] You have also requested contracts for the actors contemplated by these Requests, which Defendants remain unwilling to produce.  Likewise, you have also requested production of compensation-related information concerning "any other actor in a role of similar prominence to Cara Dune" in *The Mandalorian & Grogu*, which is impossibly vague.  Accordingly, Defendants cannot, and will not, produce such information.  Defendants are also unwilling to produce information concerning compensation to Oscar Isaac, John Boyega, and Kelly Marie Tran for their roles in *The Force Awakens, The Last Jedi*, and/or *The Rise of Skywalker* (RFP 66).  Even accepting your argument that Plaintiff's damages could extend to a feature film, you are already receiving compensation information relating to *The Mandalorian & Grogu* –

4

Exhibit 10
58



will produce this information on an Attorney's Eyes Only basis, with the names of actors in *The Mandalorian & Grogu* redacted but for individuals publicly confirmed to be featured in the film. Should Defendants make additional casting information public, or Plaintiff's experts be able to articulate a reason to know the actors' identities, we are willing to discuss the redactions further.

**ii.  Budget / Profit Information (RFPs 63–65)**:  You claim that the "budgets as well as gross and net profits will provide data indicative of a production's success, the likelihood of additional seasons or movies, and insight into future compensation for the key figures in the production."  This is not true.  But, regardless, Defendants have already agreed to produce actual compensation information, which renders any conceivably need for this information moot.

<div align="center">*          *          *</div>

We look forward to discussing the outstanding issues with you further.[4]

All rights reserved.

Yours truly,

Molly M. Lens
of O'MELVENY & MYERS LLP

---

and, as you know, there is no argument to be made that Plaintiff would have had any role in the aforementioned films.

[4] For the avoidance of doubt, given your new positions, as well as our responses thereto, the parties must again meet and confer in accordance with Local Rule 37-1, prior to the service of any joint stipulation on Defendants.  As discussed in prior correspondence, Defendants will insist on compliance with this District's rules.

Exhibit 10
59